**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| **TPC GROUP INC.**, *et al.*, | Case No. 22-10493 (___) |
| Debtors.[1] | Joint Administration Requested |

**MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION**
**TAXES AND ASSESSMENTS AND (II) GRANTING RELATED RELIEF**

TPC Group Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

**Background**

1.     On the date hereof (the "**Petition Date**"), the Debtors commenced these chapter 11 cases by filing voluntary petitions with this Court under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2.     The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in these cases. The Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248).  Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77002.

Rule 1015-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Local Rules**").

3.       The Debtors are a leading North American producer and processor of intermediate and specialty chemicals and fuel derivatives.  Their products are critical to a wide range of end-markets and applications, including synthetic rubber, fuels, lubricants, plastics, and surfactants.  Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert Del Genio in Support of Debtors' Chapter 11 Petitions and Related Requests for Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.[2]

## Jurisdiction and Venue

4.       The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for

---

[2]   Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

the relief requested herein are sections 105(a), 363(b), 507(a) and 541 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 and Local Rule 9013-1.

**Relief Requested**

5.      The Debtors seek entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Interim Order**") and **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**"), requesting authority to (i) pay, in the Debtors' sole discretion and in the ordinary course of business, all Taxes (as defined herein) due and owing to the various local, state, federal, and foreign taxing authorities (each, a "**Taxing Authority**") that arose prior to the commencement of these cases, including all Taxes and Assessments subsequently determined by audit or otherwise to be owed for periods prior to the Petition Date and (ii) related relief.

6.      A non-exclusive list of the Taxing Authorities is annexed to the Proposed Orders as Exhibit 1 (the "**Taxing Authorities List**").  Although the Taxing Authorities List is substantially complete, the relief requested herein is requested to be applicable with respect to all Taxing Authorities whether or not included on the Taxing Authorities List.[3]

**Debtors' Prepetition Taxes and Assessments**

7.      In the ordinary course of business, the Debtors collect, withhold, and incur certain Taxes (as defined below).  The Debtors pay or remit Taxes to various Taxing Authorities through checks, electronic wire transfers, and automated clearing house payments that are processed through their banks and other financial institutions on a monthly, quarterly, semiannually, or annual basis, in each case as required by applicable law and regulation.

---

[3] The inclusion of any entity on, or the omission of any entity from, the Taxing Authorities List is not an admission by the Debtors that such entity is or is not a Taxing Authority to which the Debtors owe any amount, and the Debtors reserve all rights with respect to any such determination.

8.    The Debtors estimate that approximately $3.1 million in Taxes relating to the prepetition period will become due and owing to the Taxing Authorities after the Petition Date. The following table describes the various categories of Taxes incurred by the Debtors in the ordinary course of business and includes good faith estimates based on the Debtors' books and records of such Taxes that have accrued as of the Petition Date and remain subject to potential audits and other adjustments:

| Category | Description | Approx. Amount Seeking Authority to Pay on Interim Basis | Approx. Amount Seeking Authority to Pay on Final Basis |
|---|---|---|---|
| **Property Taxes** | Taxes and obligations related to real and personal property holdings | $0 | $39,217 |
| **Sales and Use Taxes** | Taxes on goods and services that are used/consumed or sold and assessed based on the value of those goods and services | $1,040,000 | $1,040,000 |
| **Franchise and Income Taxes** | Taxes incurred in connection with profits generation and taxes required to conduct business within certain states in which the Debtors operate | $0 | $1,875,000 |
| **Excise Taxes** | Taxes incurred on (a) foreign insurance premiums not covered under a tax treaty with the United States and (b) Patient-Centered Outcomes Research Institute (PCORI) fee required for certain specified health insurance policies | $0 | $6,000 |
| **Import and Customs Duties** | Taxes imposed on the Debtors for importing goods into a particular jurisdiction from outside that jurisdiction | $0 | $8,243 |
| **Regulatory Assessments and Other Taxes** | Environmental assessments and fees incurred and as required by governmental regulatory agencies | $0 | $162,667 |
| | **TOTAL** | **$1,040,000** | **$3,131,748** |

**A.      Property Taxes**

9.      The Debtors own certain property in Texas and Louisiana that subjects the Debtors to local ad valorem property taxes (the "**Property Taxes**").  The Property Taxes are assessed in estimated amounts based on the net book value of the Debtors' property, plant, and equipment.  The Debtors remit payments on such estimated amounts to the applicable Taxing Authorities on an annual basis.  During the 12-month period prior to the Petition Date, the Debtors paid approximately $8.9 million in Property Taxes, inclusive of a $3.03 million settlement with Harris County relating to a dispute over tax liabilities for 2021.

10.      As of the Petition Date, the Debtors estimate that $39,217 in Property Taxes have accrued, none of which will become due within the first 21 days of these chapter 11 cases.

**B.      Sales Taxes**

11.      In the ordinary course of business, the Debtors incur, collect, and remit sales taxes to the Taxing Authorities in connection with the Debtors' goods and services that are used/consumed or sold (the "**Sales Taxes**").  Sales Taxes are essentially general consumption taxes charged by the Debtors at the point of sale for certain goods and services, which are usually set by the applicable Taxing Authority as a percentage of the price of the goods or services purchased.

12.      The Debtors remit Sales Taxes on a monthly basis.  During the 12-month period prior to the Petition Date, the Debtors paid approximately $6,988,539 in Sales and Use Taxes to the Taxing Authorities.  As of the Petition Date, the Debtors estimate that $1,040,000 in Sales Taxes have accrued, all of which will become due within the first 21 days of these chapter 11 cases.

**C.      Franchise Taxes**

13.      The Debtors are required to pay taxes assessed for the privilege of doing business within a particular jurisdiction (the "**Franchise Taxes**").  Here, the Debtors pay Franchise

Taxes to the States of Louisiana, and Texas.  During the 12-month period prior to the Petition Date, the Debtors paid approximately $25,000 of Franchise Taxes to the state of Louisiana.

14.     In the ordinary course of business, the Debtors are required to pay federal income taxes, as well as state and local income and franchise taxes in the U.S. (collectively, the "**Franchise and Income Taxes**"). The Franchise and Income Taxes are typically assessed by Taxing Authorities against the Debtors in connection with operating their business within a particular jurisdiction, and the franchise taxes paid by the Debtors are typically based on capital employed. Franchise and Income Taxes are remitted by the Debtors on an estimated and extension basis throughout the year and on an annual basis, in the form of a final return, to the relevant Taxing Authority. As a result of their operations in various domestic jurisdictions, the Debtors incur income taxes that are owed to the Louisiana Department of Revenue and the IRS.  The Debtors believe that, as of the Petition Date, no prepetition income taxes are outstanding or owed. As of the Petition Date, the Debtors estimate that $1,875,000 in Franchise Taxes have accrued, none of which will become due within the first 21 days of these chapter 11 cases.

**D.     Excise Taxes**

15.     In the ordinary course of business, the Debtors are also obligated to pay federal excise taxes or additional fees in the U.S. (the "**Excise Taxes**") as required by the IRS on certain goods and services.  The Excise Taxes assessed by the IRS against the Debtors fall into one of two categories: (1) excise taxes on foreign insurance premiums not covered under a tax treaty with the United States, and (2) fees assessed on the Debtors for being a plan sponsor of certain self-insured health plans.

16.     The Debtors remit Excise Taxes on an annual basis.  As of the Petition Date, the Debtors estimate that the aggregate amount of accrued and unpaid Excise Taxes is

approximately $6,000, none of which will become due within the first 21 days of these chapter 11 cases.

**E.     Import and Customs Duties**

17.     The Debtors are required to pay both import duties and customs duties in the ordinary course of operating their business (collectively, the "**Import and Customs Duties**"). For example, the Debtors incur Import and Customs Duties when they import equipment from another jurisdiction for use at their facilities. The Debtors generally pay Import and Customs Duties as they accrue or on a monthly basis.  In 2021, the Debtors paid approximately $82,431 in Import and Customs Duties. As of the Petition Date, the Debtors estimate that approximately $8,243 in prepetition Import and Customs Duties will have accrued, none of which will become due within the first 21 days of these chapter 11 cases.

**F.     Regulatory Assessments and Other Taxes**

18.     In the ordinary course of business, the Debtors collect, withhold, or incur certain other taxes, fees, and charges, including, but not limited to, other taxes for which the Debtors' directors, officers, or employees may be held personally liable if not paid, regulatory assessments, permitting fees, licensing fees, levies, inspection fees, and other miscellaneous fees and taxes (the "**Regulatory Assessments and Other Taxes**," and together with the Property Taxes, the Sales and Use Taxes, the Franchise Taxes, the Excise Taxes, and the Import and Customs Duties, the "**Taxes**").  As examples, in the ordinary course of business, the Debtors may issue refunds or other payments to customers and vendors that remain uncashed or unclaimed for various reasons.  The Debtors actively monitor whether payments remain uncashed or unclaimed and remind vendors when checks are approaching the 90-day expiration date.  As of the Petition Date, the Debtors do not have any unclaimed checks.

19.     Payment of the Regulatory Assessments and Other Taxes is required under state and federal law, and noncompliance would be a violation of state and federal statutes. Therefore, the continued payment of Regulatory Assessments and Other Taxes, including any amount due and owing on account of Regulatory Assessments and Other Taxes incurred prior to the commencement of these cases, is crucial to the continued operation of the Debtors' business. Regulatory Assessments and Other Taxes are typically paid annually, totaling approximately $184,762 per year.  As of the Petition Date, the Debtors estimate that approximately $162,667 in prepetition Regulatory Assessments and Other Taxes will have accrued, none of which will become due within the first 21 days of these chapter 11 cases.

### Relief Requested Should Be Granted

20.     Ample reasons exist to authorize payment of the prepetition Taxes, including, among other things, that: (i) failure to pay the prepetition Taxes may interfere with the Debtors' continued operations and successful reorganization efforts; (ii) the Debtors' directors, officers, and employees may be held personally liable for nonpayment of certain taxes; (iii) certain of the prepetition Taxes may not be property of the Debtors' estates; (iv) failure to pay prepetition Taxes may increase the scope of secured and priority claims held by the applicable Taxing Authorities against the Debtors' estates; (v) payment of prepetition Taxes affects only the timing of payments, as most, if not all, of the Taxes are afforded priority status under the Bankruptcy Code; and (vi) the Court has authority to grant the requested relief under sections 363(b) and 105(a) of the Bankruptcy Code.

**A.     Failure to Pay Prepetition Taxes May Interfere with Debtors' Continued Operations and Successful Reorganization Efforts**

21.     The Debtors request authority to pay prepetition Taxes to, among other things, prevent the Taxing Authorities from taking actions that may interfere with the Debtors'

continued business operations.  Nonpayment of these obligations may cause Taxing Authorities to take precipitous action including, among other things, asserting liens or seeking relief from the automatic stay, which would disrupt the Debtors' day-to-day operations and could potentially impose significant costs on the Debtors' estates.  Failure to satisfy the prepetition Taxes may jeopardize the Debtors' maintenance of good standing to operate in the jurisdiction in which they do business.

**B.     Debtors' Directors, Officers, and Employees May Be Personally Liable for Nonpayment of Certain Taxes**

22.     Under the laws of certain states in which the Debtors operate, an entity's directors, officers, and employees may be held directly or personally liable for the nonpayment of certain types of taxes.  To the extent any prepetition Taxes remain unpaid by the Debtors, the Debtors' directors, officers, and employees may be held directly or personally liable for such nonpayment of certain Taxes.  The dedicated and active participation of the Debtors' directors, officers, and other employees is not only integral to the Debtors' continued, uninterrupted operations, but essential to the orderly administration of these chapter 11 cases.  The threat of a lawsuit and any ensuing liability would distract the Debtors and their personnel from important tasks, to the detriment of all parties in interest.  Accordingly, the proposed relief is in the best interests of the Debtors and their estates.

**C.     Certain Prepetition Taxes May Not Be Property of the Debtors' Estates**

23.     Certain of the Taxes may not be property of the estate as defined in section 541 of the Bankruptcy Code, as they are collected from third parties and held in trust for payment to Taxing Authorities.  Some of the prepetition Taxes may constitute "trust fund" taxes, which the Debtors are required to collect and/or hold in trust for payment to Taxing Authorities.  Under section 541(d) of the Bankruptcy Code, in relevant part:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtors' legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

24.    To the extent that the Debtors have collected or hold Taxes in trust for payment to the Taxing Authorities, such funds may not constitute property of the Debtors' estates. *See, e.g.*, *Begier v. IRS*, 496 U.S. 53, 60–62 (1990) (holding that excise and withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 96 (3d Cir. 1994) (finding that withholding taxes were subject to a trust); *Al Copeland Enters., Inc. v. Texas*, 991 F.2d 233, 235 (5th Cir. 1993) (debtors' prepetition collection of sales taxes and interest thereon held subject to trust and not property of estate); *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1067–68 (9th Cir. 1989) (under Texas law, state sales taxes collected created statutory trust fund, if traceable, and were not property of the estate); *In re Equalnet Commc'ns. Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("[C]ertain prepetition tax claims, such as sales taxes, could be trust fund claims."); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (holding that funds held in trust for federal excise and withholding taxes are not property of the debtor's estate); *see generally Official Comm. of Unsecured Creditors of the Columbia Gas Transmiss'n Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 997 F.2d 1039, 1059–60 (3d Cir. 1993) (indicating that even if a statute does not establish an express trust, a constructive trust may be found). The Debtors, therefore, generally do not have an equitable interest in such funds, and they should be permitted to pay those funds to applicable Taxing Authorities as they become due.

**D.    Failure to Pay Prepetition Taxes May Increase the Scope of Taxing Authorities' Secured and Priority Claims**

25.    The Debtors submit that payment of prepetition Taxes is necessary for several reasons. The Debtors' failure to pay such Taxes may increase the amount of secured claims

held by Taxing Authorities against the Debtors' estates.  Taxing Authorities may also assert liens

against any personal property for which such Taxes are due and owing.  Moreover, the postpetition

creation and perfection of certain such liens may not be subject to the automatic stay.  *See* 11

U.S.C. §§ 362(b)(3), (18).   Accordingly, nonpayment of certain Taxes may allow for the

inadvertent creation and perfection of additional liens on the Debtors' assets during these chapter

11 cases.

26.     To the extent Taxing Authorities hold oversecured claims, if the prepetition

Taxes are not paid, postpetition interest, fees, penalties, and other charges may accrue.  *See* 11

U.S.C. § 506(b); *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–43 (1989) (holding that

nonconsensual lienholders may receive interest on their claims under section 506(b) of the

Bankruptcy Code).  Even if such Taxes were not treated as secured claims, they may still, as

discussed below, be entitled to priority treatment—as may any penalties assessed by applicable

Taxing Authorities on delinquent taxes owed by the Debtors.  *See* 11 U.S.C. § 507(a)(8).  The

Debtors' failure to pay prepetition Taxes thus may increase the amount of priority claims held by

the Taxing Authorities against the Debtors' estates.

27.     Paying prepetition Taxes now will avoid the potential imposition of liens

and the accrual of interest charges and unnecessary fees and penalties on such claims, thereby

preserving the value of the Debtors' estates and maximizing distributions available for other

economic stakeholders.  Accordingly, the Court should authorize the Debtors to pay prepetition

Taxes because payment will benefit the estates' creditors and all other parties in interest.

**E.      Paying Prepetition Taxes Will Affect Only the Timing of Payments**

28.     Most if not all of the Taxes described herein are afforded priority status

pursuant to section 507(a)(8) of the Bankruptcy Code.  *See* 11 U.S.C. § 507(a)(8)(A) ("a tax on or

measured by income or gross receipts for a taxable year ending on or before the date of the filing

of the petition . . .”); *id.* at (B) (“a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition . . .”); *id.* at (C) (“a tax required to be collected or withheld and for which the debtor is liable in whatever capacity”); *id.* at (G) (“a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss”).

29.     To the extent prepetition Taxes constitute priority claims, they must be paid in full under any chapter 11 plan before any general unsecured obligations of the Debtors may be satisfied.  Sufficient assets exist to pay all of the prepetition Taxes.  Accordingly, the proposed relief would affect only the timing of payment of prepetition Taxes and will not prejudice the rights of any general unsecured creditor or other party in interest.  Therefore, the Court should grant the Debtors authority to pay the prepetition Taxes in the ordinary course of business.

**F.     The Court Has Authority to Grant the Requested Relief Under Sections 363(b) and 105(a) of the Bankruptcy Code**

30.     The payment of Taxes constitutes an ordinary-course transaction.  Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to “use property of the estate in the ordinary course of business without notice or a hearing.”  The purpose of section 363(c)(1) is to provide the debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court.  *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) (“Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate’s assets.”) (citation omitted); *Med. Malpractice Ins. Ass’n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (same).

31.     Under section 363(b)(1) of the Bankruptcy Code, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." And under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a) and the doctrine of necessity, the bankruptcy court may exercise its broad grant of equitable powers to permit the payment of prepetition obligations when such payment is essential to the continued operation of the debtor's business. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to the confirmation of a reorganization plan).

32.     Bankruptcy courts regularly rely on their authority under section 105(a) and the doctrine of necessity to grant debtors the discretionary authority to pay certain prepetition claims "where the payment is necessary to permit the effectuation of the rehabilitative purposes of the Bankruptcy Code." *In re Sharon Steel Corp.*, 159 B.R. 730, 736 (Bankr. W.D. Penn. 1993); see also *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of the debtor); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition claims and explaining that the "ability of a Bankruptcy

Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept"). The rationale for making payments to prepetition creditors under the doctrine of necessity is consistent with the paramount goal of chapter 11: "the continued operation and rehabilitation of the debtor . . . ." *Ionosphere Clubs*, 98 B.R. at 176. To that end, approval of such payments benefits, rather than harms, the Debtors' other creditors. *See, e.g.*, *Sharon Steel*, 159 B.R. at 737 (approving payments of certain prepetition wages under the doctrine of necessity where doing so would maximize the value of the Debtors' assets and noting that payments made pursuant to the doctrine of necessity "must not only be in the best interest of the debtor but also in the best interest of its other creditors"). Moreover, Bankruptcy Rule 6003 itself implies that the payment of prepetition obligations may be permissible within the first twenty-one (21) days of a case where doing so is "necessary to avoid immediate and irreparable harm."

33.     Indeed, the Debtors' failure to pay Taxes could have a material adverse impact on their ability to operate, as the Taxing Authorities could attempt to prevent or delay the Debtors' operations if such Taxes are not paid. Payment of the prepetition Taxes is an exercise of sound business judgment and is necessary to permit a successful reorganization, as the satisfaction of prepetition Taxes enables the Debtors to avoid obstacles to a smooth transition into and through these chapter 11 cases. Significant disruptions of the Debtors' operations of the types described above threaten to irreparably impair the Debtors' ability to conduct a successful reorganization process and thereby maximize the value of the Debtors' estates for the benefit of their economic stakeholders.

34.     For the foregoing reasons, granting the Debtors the authority to pay prepetition Taxes in the ordinary course is necessary, appropriate, and in the best interests of the

Debtors, their estates, and all other parties in interest.  Courts in this district and others have approved payment of prepetition taxes in similarly large and complex chapter 11 cases.  *See, e.g., See, e.g.*, *In re Atrium Corp.*, Case No. 10-10150 (Bankr. D. Del. Feb. 23, 2010); *In re The Majestic Star Casino, LLC*, Case No. 09-14136 (Bankr. D. Del. Nov. 25 2009); *In re Masonite Corp.*, Case No. 09-10844 (Bankr. D. Del. Mar. 17, 2009); *In re Muzak Holdings LLC*, Case No. 09-10422 (Bankr. D. Del. Feb. 12, 2009); *In re Tropicana Entm't LLC*, Case No. 08-10856 (Bankr. D. Del. May 6, 2008); *In re Wickes Holdings, LLC*, Case No. 08-10212 (Bankr. D. Del. Feb. 5, 2008); *In re Pope & Talbot, Inc.*, Case No. 07-11738 (Bankr. D. Del. Nov. 21, 2007); *In re Am. Home Mortg. Holdings, Inc.*, Case No. 07-11047 (Bankr. D. Del. Aug. 7, 2007); *In re Tweeter Home Entm't Grp., Inc.*, Case No. 07-10787 (Bankr. D. Del. June 13, 2007).[4] Such relief is similarly appropriate here.

**G.    Applicable Financial Institutions Should Be Authorized and Directed to Receive, Process, Honor, and Pay Checks Issued and Transfers Requested to Pay Prepetition Taxes**

35.    The Debtors further request that the Court authorize applicable financial institutions (the "**Banks**") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to the prepetition Taxes, to the extent that sufficient funds are on deposit in available funds in the applicable bank accounts to cover such payment.  The Debtors also seek authority to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or funds transfer requests on account of prepetition Taxes dishonored or rejected as a result

---

[4]    Because of the voluminous nature of the orders cited herein, such orders are not attached to the Motion.  Copies of these orders are available on request of the proposed Debtors' counsel.

of the commencement of these chapter 11 cases with respect to prepetition amounts owed in connection with any prepetition Taxes.

## **Bankruptcy Rule 6003(b) Has Been Satisfied**

36.     Bankruptcy Rule 6003 provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition.  As described herein and in the First Day Declaration, the relief requested is essential to avoid immediate and irreparable harm to the Debtors' estates. Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

## **Request for Bankruptcy Rule 6004 Waivers**

37.     The Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

## **Reservation of Rights**

38.     Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's

16

order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**Notice**

39.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to the ABL Agent, (x) Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010, Attn: Charles A Beckham, Jr. (charles.beckham@haynesboone.com), and (y) Haynes and Boone, LLP, 2323 Victory Avenue, Suite 700, Dallas, TX 75219, Attn: J. Frasher Murphy (frasher.murphy@haynesboone.com); (iv) counsel to the Ad Hoc Noteholder Group, Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 (Attn: Kristopher M. Hansen, Jonathan D. Canfield and Gabriel Sasson), and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801 (Attn: Matthew B. Lunn, Sean M. Beach and Robert F. Poppiti, Jr.); (v) the Internal Revenue Service; (vi) the United States Attorney's Office for the District of Delaware; (vii) the Securities and Exchange Commission; (viii) any other party entitled to notice pursuant to Bankruptcy Rule 2002; and (ix) any other party entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 1, 2022
         Wilmington, Delaware

*/s/ Robert J. Dehney*

**BAKER BOTTS L.L.P.**

James R. Prince (*pro hac vice* admission pending)

Kevin Chiu (*pro hac vice* admission pending)

2001 Ross Avenue, Suite 900

Dallas, Texas 75201-2980

Telephone:    (214) 953-6500

Facsimile:    (214) 953-6503

Email: jim.prince@bakerbotts.com
         kevin.chiu@bakerbotts.com

-and-

BAKER BOTTS L.L.P.

Scott R. Bowling (*pro hac vice* admission pending)

30 Rockefeller Plaza

New York, New York 10112

Telephone:    (212) 408-2500

Facsimile:    (212) 259-2501

Email: scott.bowling@bakerbotts.com

-and-

BAKER BOTTS L.L.P.

David R. Eastlake (*pro hac vice* admission pending)

Lauren N. Randle (*pro hac vice* admission pending)

910 Louisiana Street

Houston, Texas 77002

Telephone:    (713) 229-1234

Facsimile:    (713) 229-1522

Email: david.eastlake@bakerbotts.com
         lauren.randle@bakerbotts.com

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

Robert J. Dehney (No. 3578)

Curtis S. Miller (No. 4583)

Daniel B. Butz (No. 4227)

Matthew O. Talmo (No. 6333)

Brian Loughnane (No. 6853)

1201 N. Market Street, 16th Floor

P.O. Box 1347

Wilmington, Delaware 19899-1347

Telephone: (302) 658-9200

Facsimile: (302) 658-3989

Email:    rdehney@morrisnichols.com
          cmiller@ morrisnichols.com
          dbutz@ morrisnichols.com
          mtalmo@ morrisnichols.com
          bloughnane@ morrisnichols.com

*Proposed Attorneys for Debtors
and Debtors in Possession*