**<u>Exhibit B to Motion</u>**

Proposed Final Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| **TPC GROUP INC.**, *et al.*, | Case No. 22-10493 (___) |
| Debtors.[8] | Joint Administration Requested |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) CONTINUE
THEIR EXISTING CASH MANAGEMENT SYSTEM, (B) MAINTAIN
EXISTINGBUSINESS FORMS, (C) CONTINUE INTERCOMPANY
ARRANGEMENTS, (D) CONTINUE USING P-CARDS; AND (E) PAY
BANK FEES (II) GRANTING AN EXTENSION OF TIME TO COMPLY
WITH 11 U.S.C. § 345(b); AND (III) GRANTING RELATED RELIEF**

Upon the motion dated June 1, 2022 (the "**Motion**")[9] of TPC Group Inc. and its
debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), for
(i) authority (but not direction) to (a) continue to operate their existing Cash Management System
and maintain the Bank Accounts listed on **Schedule 1** annexed hereto, (b) maintain existing
Business Forms, (c) continue intercompany transactions (d) continue using P-Cards and pay all
obligations related thereto, each in the ordinary course of business and consistent with the Debtors'
prepetition practices, and (e) pay bank fees; (ii) an extension of time to comply with the
requirements of 11 U.S.C. § 345(b); and (iii) related relief, as more fully set forth in the Motion;
and upon consideration of the First Day Declaration; and the Court having jurisdiction to consider
the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the

---

[8]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313);
Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation
(4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248). Each
Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77042.

[9]     Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in
the Motion.

Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      This Motion is granted on a final basis as set forth in this order (the **"Final Order"**).

2.      Subject to the terms and conditions of this Final Order, the Debtors are authorized pursuant to sections 363(c) and 105(a) of the Bankruptcy Code, but not directed, to continue to manage their cash pursuant to the Cash Management System maintained before the Petition Date, to collect and disburse cash in accordance with the Cash Management System, including through intercompany transactions, and to make ordinary-course changes to their Cash Management System without further order of the Court; *provided, that* the Debtors shall provide seven (7) days' advance notice of any changes to the Cash Management System to counsel for (i) BOA and (ii) ABL DIP Agent, including without limitation the opening of any new Bank Account.

3.      Except as otherwise set forth herein, the Debtors and BOA may, in consultation with the advisors to the Ad Hoc Noteholder Group and without further order of this Court, agree and implement changes to the Cash Management System and procedures in the ordinary course of business.

4.      Subject to the terms and conditions of this Final Order, pursuant to section 105(a) of the Bankruptcy Code, BOA is authorized and directed to continue to honor transfers, as directed by the Debtors, of funds among the Bank Accounts.

5.      The Debtors shall maintain through the use of the Cash Management System accurate, current, and detailed records reflecting all transfers of funds under the terms and conditions provided for by, and in accordance with, the existing cash management agreements, except as modified by this Final Order.  In connection with the ongoing utilization of the Cash Management System, the Debtors shall maintain accurate, current, and detailed records with respect to all transfers, including with respect to postpetition intercompany claims and transactions, so that all payments and transactions can be readily ascertained, traced, properly recorded, and distinguished between prepetition and postpetition transactions.  The Debtors shall make such records available upon request by the U.S. Trustee, counsel to the Ad Hoc Noteholder Group, counsel to BOA, counsel to ABL DIP Agent and the professionals retained by any statutory committee appointed in these Chapter 11 Cases; *provided however*, that the professionals for any such statutory committee, counsel to the Ad Hoc Noteholder Group, counsel to BOA, and counsel to ABL DIP Agent shall keep the records confidential and shall not disclose any of the information in the records to anyone, including any member of such statutory committee or any member of the Ad Hoc Noteholder Group, without the prior written consent of the Debtors.

6.      The Debtors are authorized, but not directed, to (i) designate, maintain, and continue to use any or all of the existing Bank Accounts, including those listed on Schedule 1 annexed hereto, in the names and with the account numbers existing immediately before the Petition Date, (ii) deposit funds in, and withdraw funds from, such accounts by all usual means, including, without limitation, checks, wire transfers, ACH transfers, and other debits, (iii) pay any

Bank Fees or other charges associated with the Bank Accounts, whether arising before or after the Petition Date, and (iv) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts.

7.     The Debtors are authorized, but not directed, to continue using and performing their obligations under the P-Cards in the ordinary course of business and consistent with prepetition practice, including payment of any obligations arising prior to the commencement of these cases or relating to the prepetition period or arising after the commencement of these cases.

8.     The Debtors are authorized, but not directed, to open new or close bank accounts in the ordinary course of business; *provided*, that all accounts opened by any of the Debtors on or after the Petition Date at any bank shall, for purposes of this Final Order, be deemed a Bank Account as if it had been listed on Schedule 1 annexed hereto; *provided*, *further*, that such opening shall be timely indicated on the Debtors' monthly operating reports, and fourteen (14) days' advance notice of such opening or closing shall be provided to the U.S. Trustee, the ABL Agent, any statutory committee appointed in these cases, and counsel to the Ad Hoc Noteholder Group; *provided*, *further*, that any new bank account that the Debtors open will be (i) a Bank Account maintained at BOA or, if consented to by the ABL Agent in writing, a Bank Account maintained with a bank that is organized under the laws of the United States of America or any state therein and that is insured by the FDIC or the Federal Savings and Loan Insurance Corporation, (ii) with an authorized depository designated by the U.S. Trustee, (iii) designated a "Debtor In Possession" account by the relevant bank, and (iv) with a bank that agrees to be bound by the terms of this Final Order.

9.      BOA is authorized, but not directed, to debit the Debtors' accounts in the ordinary course of business and consistent with prepetition practice without the need for further order of this Court for: (i) all checks drawn on the Debtors' accounts which are cashed at BOA's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of the Debtors' accounts with BOA prior to the Petition Date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the commencement of these cases; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as Bank Fees for the maintenance of the Cash Management System.

10.     Each Debtor and BOA, solely in its capacity as bank depository and P-Card issuer, are authorized to continue to perform pursuant to the terms of any prepetition agreement that exists between them relating to any Bank Accounts, the P-Cards, or other cash management services except to the extent otherwise expressly provided in this Final Order, and the parties to such agreements shall continue to enjoy the rights, benefits, liens, offset rights, privileges and remedies afforded to them under such agreements except to the extent expressly modified by the terms of this Final Order; *provided*, that for the avoidance of doubt, any prepetition agreement or any other such agreement referred to in this paragraph 10 will be deemed to exclude the Prepetition Loan Documents as defined in the *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*.  BOA is further authorized to (a) continue to service and administer

5

the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business; (b) receive, process, honor, and pay certain checks issued, or to be issued, whether prepetition or postpetition, and electronic funds transfers requested, or to be requested, by the Debtors relating to such obligations, whether prepetition or postpetition, to the extent that sufficient funds are on deposit in available funds in the applicable bank accounts to cover such payments and none of the Debtors has notified BOA in writing of a stop payment instruction with receipt thereto; and (c) continue processing ACH transfers in accordance with ordinary course practices.

11.    BOA is further authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

12.    The Banks may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and BOA shall not have any liability to any party for relying on such representations by the Debtor as provided for herein, and shall not be liable to any party on account of (a) following the Debtors' representations, instructions, directions, or presentations as to any order of the Court (without any duty of further inquiry); (b) honoring of certain prepetition checks, drafts, wires, or ACH payments in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition check, draft, wire, or ACH payment; or (c) an innocent mistake made despite implementation of reasonable handling procedures.

13.    BOA, solely in its capacity as bank depository and P-Card issuer, shall be authorized to exercise rights of offset with respect to any indebtedness at any time owed by the Debtors to BOA solely to the extent such indebtedness arises directly out of or directly relates to the Cash Management System at BOA, regardless of whether such indebtedness was incurred or arose prior to or after the Petition Date, including, without limitation, indebtedness on account of (a) Bank Fees and expenses (including, without limitation, analysis and overdraft fees or charges) related to the maintenance or administration of any Bank Account or lockbox or the processing of any ACH transfer or wire transfer, (b) checks drawn on the Bank Accounts which were cashed at BOA's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, (c) overdrafts in any Bank Account and any indebtedness arising from returned checks initially deposited in a Bank Account, and (d) amounts payable or reimbursable to BOA at any time in respect of ACH transfers or wire transfers.

14.    Notwithstanding anything to the contrary herein, BOA shall not be obligated to (a) extend credit to any Debtor in connection with the Cash Management System, or (b) honor any check or other payment item drawn on a Bank Account at BOA unless there are sufficient and collected funds in such Bank Account.

15.    Notwithstanding anything else contained herein, (a) the Debtors are authorized to maintain cash collateral up to $200,000 (the "**P-Card Collateral**") with BOA to secure all obligations arising from the P-Card Program; provided, that, to the extent BOA and the Debtors agree to reduce the credit limit under the P-Card Program to less than $200,000, such reduction shall also reduce, on a dollar-for-dollar basis, the amount required to be held as the P-Card Collateral; (b) BOA shall have a valid and perfected, non-avoidable first priority lien in the P-Card Collateral (the "**BOA P-Card Lien**"); (c) the BOA P-Card Lien shall be a valid, binding,

continuing, enforceable, fully-perfected, non-voidable first priority lien and shall not be primed by any lien granted to any prepetition secured creditor for adequate protection or otherwise, or any lien granted to any other person; (d) upon any default under the P-Card Program, BOA may offset the P-Card Program obligations against the P-Card Collateral without further Court order; and (e) the P-Card Collateral shall remain with BOA until: (i) the last date that all obligations under the P-Card Program are paid in full, (ii) the P-Card Program is terminated, and (iii) all related P-Cards are cancelled.

16.     Nothing in this Final Order shall prevent the Debtors from closing any Bank Account(s) in the ordinary course of business and in accordance with their prepetition practice as they may deem necessary and appropriate.  Any relevant Bank is authorized to honor the Debtors' requests to close such Bank Account(s), and the Debtors shall give seven (7) days' prior notice of the closure of any account to the U.S. Trustee, BOA, ABL DIP Agent and to any statutory committee appointed in these cases.

17.     The Debtors are further authorized, but not directed, to continue intercompany transactions in the ordinary course of business and consistent with prepetition practice; *provided* that any intercompany transactions to non-debtor affiliate entities shall be subject to a cap of $50,000 in the aggregate per year.  All intercompany claims against one Debtor by another Debtor arising after the commencement of these cases as a result of intercompany transactions shall have administrative expense priority in accordance with section 503(b) of the Bankruptcy Code.  In connection with the intercompany transactions, the Debtors shall maintain current records with respect to all such transfers so that all intercompany transactions may be readily ascertained, traced, and properly recorded on intercompany accounts and shall make such

records available, upon request, to the U.S. Trustee and any statutory committee appointed in these cases.

18.    The Debtors are further authorized, but not directed to, make the changes to the Cash Management System described in the Motion to comply with the requirement of the ABL DIP Facility.

19.    To the extent that any of the Debtors' Bank Accounts is not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have 45 days, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines or to make such other arrangements as agreed to by the U.S. Trustee; *provided*, that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.  The Debtors may obtain a further extension of the 45-day period referenced above by entering into a written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

20.    The Debtors are authorized to use their existing Business Forms and not print "Debtor In Possession" on any of their Business Forms, and any otherwise applicable requirement that the Debtors print "Debtor In Possession" on any new checks ordered during these cases, or that the Debtors change their system for electronic generation of checks and Business Forms to reflect their status as debtors in possession, is hereby waived; *provided*, that once they have exhausted their existing stock of Business Forms, the Debtors shall ensure that any new Business Forms used are clearly labeled "Debtor In Possession," and with respect to any Business Forms that exist or are generated electronically, the Debtors shall ensure that such electronic

9

Business Forms are clearly labeled "Debtor In Possession" within 10 business days of the entry of this Interim Order.

21.      Neither any provision of this Final Order nor any payment made pursuant to the authority granted by this Final Order is intended to be or shall be deemed (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the rights of the Debtors or any appropriate party in interest to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the rights of the Debtors or any appropriate party in interest under the Bankruptcy Code or any other applicable nonbankruptcy law, or (iv) an approval, adoption, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

22.      Notwithstanding anything in the Motion or this Final Order to the contrary, (a) any payment made or authorization hereunder shall be subject in all respects to the terms and conditions of any orders of this Court authorizing the Debtors to obtain debtor-in-possession financing and/or use cash collateral in these chapter 11 cases (as may be modified, amended, or supplemented, the **"DIP Orders"**), including, without limitation, any budget in connection therewith, and (b) to the extent there is any inconsistency between the terms of the DIP Orders and the Motion or this Final Order, the terms and conditions of such DIP Orders shall control.

23.      Notice of the Motion is adequate under Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules.

24.      Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

25.      The Debtors, BOA, and any other relevant bank are authorized to take all steps necessary or appropriate to carry out the relief granted in this Final Order.

26.     This Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, or enforcement of this Final Order.

**Schedule 1 to Final Order - Bank Accounts**

| Applicable Entity | Account Number | Account Purpose |
|---|---|---|
| **Main Operating Accounts** | | |
| TPC Group LLC | x2999 | Collections account |
| TPC Group LLC | x5528 | Funding account |
| TPC Group LLC | x5252 | Accounts payable account |
| TPC Group LLC | x5544 | Payroll account |
| **Counterparty Escrow Accounts** | | |
| TPC Group LLC | x555.1 | Escrow account established pursuant to processing agreement with BASF TOTAL Petrochemicals LLC to fund capital expenses |
| TPC Group LLC | x556.1 | Escrow account established pursuant to processing agreement with BASF TOTAL Petrochemicals LLC to fund capital expenses |
| **Other Accounts** | | |
| TPC Group LLC | x1525 | Investment account with BOA |
| TP Capital Corp. | x2957 | Dormant account with zero balance |
| Port Neches Fuels, LLC | x6917 | Dormant account with zero balance |
| TPC All for One Foundation (*Non-Debtor*) | x9526 | Deposit account owned by non-Debtor 501(c)(3) non-profit charity but operated using the Debtors' existing banking platform with BOA |
| **Accounts Opened to Facilitate Chapter 11 Cases** | | |
| TPC Group LLC | x2199 | Utility deposit account |
| TPC Group LLC | x2212 | Dormant account with zero balance |