# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| **TPC GROUP INC.**, *et al.*, | Case No. 22-10493 (___) |
| Debtors.[1] | Joint Administration Requested |

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 AND FED. BANKR. P. 6003 AND 6004 FOR ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY COMPANIES, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, (III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE, AND (IV) GRANTING RELATED RELIEF**

TPC Group Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

## Background

1. On the date hereof (the "**Petition Date**"), the Debtors commenced these chapter 11 cases by filing voluntary petitions with this Court under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in these cases.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248). Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77002.

The Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Local Rules**").

3. The Debtors are a leading North American producer and processor of intermediate and specialty chemicals and fuel derivatives. Their products are critical to a wide range of end-markets and applications, including synthetic rubber, fuels, lubricants, plastics, and surfactants. Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert Del Genio in Support of Debtors' Chapter 11 Petitions and Related Requests for Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.[2]

**Jurisdiction and Venue**

4. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

5. Pursuant to sections 363, 366, and 105(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, the Debtors respectfully request the entry of interim and final orders, substantially in the forms attached as **Exhibit A** (the "**Interim Order**") and **Exhibit B** (the "**Final Order**", and together with the Interim Order, the "**Proposed Orders**") (i) approving the Debtors' proposed form of adequate assurance of payment to the Utility Companies (as defined below), (ii) establishing procedures for resolving objections by Utility Companies relating to the adequacy of the proposed adequate assurance provided by the Debtors; (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtors on the basis of the commencement of these chapter 11 cases and/or any outstanding prepetition debts and (iv) granting related relief.

### Utility Companies

6. To operate their businesses and manage their facilities, the Debtors obtain various utility services, including, but not limited to, electricity, natural gas, water, network/internet, waste removal and other services (collectively, the "**Utility Services**") from a number of utility companies (collectively, the "**Utility Companies**"). A nonexclusive list of Utility Companies that provide Utility Services to the Debtors as of the Petition Date is set forth on **Schedule 1** attached to the Interim Order (the "**Utility Services List**").[3]

---

[3] The inclusion of any entity in or omission of any entity from the Utility Services List is not an admission by the Debtors that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights and defenses with respect thereto. For the avoidance of doubt, nothing in the Proposed Order affects the obligations of a Utility Company to comply with section 366 of the Bankruptcy Code, even if it is not included on the Utility Services List.

7. Uninterrupted Utility Services are essential to the Debtors' ongoing business operations and, therefore, to the success of the Debtors' reorganization. Should any Utility Company alter, refuse, or discontinue service, even briefly, the Debtors' business operations could be severely disrupted. The Debtors operate a complex business involving a chemical-processing plant and multiple chemical shipping, logistics, and storage facilities. Interruption of the Utility Services at any of the Debtors' locations would disrupt necessary communication and coordination between and among the Debtors' employees, suppliers, customers, and various regulatory authorities and would prevent the provision of necessary support to these same parties. Such interruption would negatively impact the Debtors' reorganization efforts and all parties in interest.

8. The Debtors have a good historical payment record with the Utility Companies. To the best of the Debtors' knowledge, there are no defaults or arrearages of any significance for the Debtors' undisputed invoices for prepetition Utility Services, other than payment interruptions that may be caused by the commencement of these chapter 11 cases. Prior to the Petition Date, the Debtors spent an average of approximately $5.0 million each month for Utility Services. Based on historical averages, the Debtor's estimate that their cost of Utilities Services for the next 30 days will be approximately $5.0 million.

**Proposed Adequate Assurance**

9. Pursuant to section 366(c)(2) of the Bankruptcy Code, a utility may alter, refuse, or discontinue a debtor's utility service if the utility does not receive "adequate assurance of payment" for postpetition utility services from the debtor within 30 days after the commencement of the debtors' chapter 11 case. Section 366(c)(1)(A) of the Bankruptcy Code defines "assurance of payment" of postpetition charges as "(i) a cash deposit; (ii) a letter of credit;

(iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee."

10.  The Debtors intend to pay all postpetition obligations owed to the Utility Companies in a timely manner and have sufficient funds to do so.  To provide the Utility Companies with adequate assurance pursuant to section 366 of the Bankruptcy Code, the Debtors propose to deposit cash in an amount equal to two (2) weeks' cost of Utility Services, calculated as a historical average over the 12-month period preceding the Petition Date (the "**Adequate Assurance Deposit**"), into a segregated account for the benefit of the Utility Companies (the "**Utility Deposit Account**").  The Adequate Assurance Deposit may be adjusted by the Debtors if the Debtors terminate any of the Utility Services provided by a Utility Company, make other arrangements with a Utility Company for adequate assurance of payment, determine that an entity listed on the Utility Services List is not a utility company as defined by section 366 of the Bankruptcy Code, or supplement the Utility Services List to include additional Utility Companies.  The Adequate Assurance Deposit will be placed into the Utility Deposit Account within 20 days after the Petition Date.  Based on the foregoing, the Debtors estimate that the total amount of the Adequate Assurance Deposit will be approximately $1.34 million.  The Adequate Assurance Deposit will be held by the Debtors in the Utility Deposit Account for the benefit of the Utility Companies on the Utility Services List during the pendency of these cases.  No liens will encumber the Adequate Assurance Deposit or the Utility Deposit Account; provided, however, that the liens granted to the DIP Financing lenders shall extend to the Debtors' and their estates' reversionary interest in the Utility Deposit Account.

11. The Debtors further request that the Adequate Assurance Deposit be automatically available to the Debtors, without further Court order, upon the effective date of a chapter 11 plan for the Debtors. In addition, if the Debtors terminate any of the Utility Services provided by a Utility Company, the Debtors request that they immediately be permitted to reduce the Adequate Assurance Deposit to reflect the termination of such Utility Company.

12. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business (collectively, the "**Proposed Adequate Assurance**"), constitutes sufficient adequate assurance to the Utility Companies in full satisfaction of section 366 of the Bankruptcy Code.

### Proposed Adequate Assurance Procedures

13. To balance the right of each Utility Company to evaluate the Proposed Adequate Assurance for itself and the harm to the Debtors' businesses that would result from any interruption in services provided by the Utility Companies, the Debtors propose the following adequate assurance procedures (the "**Adequate Assurance Procedures**") in the event that any Utility Company is not satisfied with the Proposed Adequate Assurance:

  a) Within three (3) business days after entry of the Interim Order, the Debtors will fax, e-mail, serve by overnight mail, or otherwise expeditiously send a copy of the Interim Order and the Motion to the Utility Companies on the Utility Services List.

  b) Subject to entry of the Interim Order, the Debtors will deposit the Adequate Assurance Deposit, in the aggregate amount of $1.34 million, in the Utility Deposit Account within 20 days after the Petition Date.

  c) The funds in the Utility Deposit Account shall constitute adequate assurance for each Utility Company in the amount set forth for such Utility Company in the column labeled "Proposed Adequate Assurance" on the Utility Services List.

  d) If an amount relating to Utility Services provided postpetition by a Utility Company is unpaid and remains unpaid beyond any applicable grace period, such Utility Company may request a disbursement from the Utility

    Deposit Account by giving notice to: (i) proposed counsel to the Debtors, Baker Botts L.L.P., 2001 Ross Avenue, Suite 900, Dallas, TX 75201 (Attn: James R. Prince); Baker Botts L.L.P., 910 Louisiana St., Suite 3200, Houston, TX 77002 (Attn: David Eastlake); Baker Botts L.L.P., 30 Rockefeller Plaza, New York, NY 10112 (Attn: Scott R. Bowling); and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware, 19899-1347, Attn: Robert J. Dehney (rdehney@morrisnichols.com) and Curtis S. Miller (cmiller@morrisnichols.com); (ii) counsel to the ABL Agent, (x) Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010, Attn: Charles A Beckham, Jr. (charles.beckham@haynesboone.com), and (y) Haynes and Boone, LLP,2323 Victory Avenue, Suite 700, Dallas, TX 75219, Attn: J. Frasher Murphy (frasher.murphy@haynesboone.com); (iii) counsel to the Ad Hoc Noteholder Group, Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 (Attn: Kristopher M. Hansen, Jonathan D. Canfield and Gabriel Sasson), and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801 (Attn: Matthew B. Lunn, Sean M. Beach and Robert F. Poppiti, Jr.); (iv) counsel to the Supporting Sponsors, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020 (Attn: George A. Davis and David A. Hammerman); and (v) counsel to any statutory committee appointed in these chapter 11 cases (collectively, the "**Utility Notice Parties**").  The Debtors shall honor such request within five business days after the date the request is received by the Debtors, subject to the availability of the Debtors and any such requesting Utility Company to resolve any dispute regarding such request without further order of the Court.  To the extent a Utility Company receives such a disbursement from the Utility Deposit Account under such circumstances, the Debtors will replenish the Utility Deposit Account in the amount so disbursed

e)     The portion of the Adequate Assurance Deposit attributable to each Utility Company will be returned to the Debtors on the earlier of (i) reconciliation and payment by the Debtors of the Utility Company's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Company and (ii) the effective date of any chapter 11 plan confirmed in these cases.

f)     Any Utility Company desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "**Additional Assurance Request**") on the Utility Notice Parties.

g)     The Additional Assurance Request must (i) be made in writing; (ii) set forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), and the outstanding balance for each such account; (iii) explain why the Utility Company believes the Adequate Assurance Deposit is not adequate assurance of payment; (iv) summarize

        the Debtors' payment history relevant to the affected account(s); (v) certify the amount that is equal to two weeks of the Utility Services provided by the Utility Company to the Debtors, calculated as a historical average over the 12-month period preceding the Petition Date; and (vi) certify that the Utility Company does not already hold a deposit equal to or greater than two weeks of Utility Services provided by such Utility Company.

h)     An Additional Assurance Request may be made at any time. If a Utility Company does not file and serve an Additional Assurance Request, the Utility Company will be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges or requiring additional assurance of payment other than the Proposed Adequate Assurance.

i)     Upon the Debtors' receipt of an Additional Assurance Request, the Debtors will negotiate with such Utility Company to resolve such Utility Company's Additional Assurance Request.

j)     The Debtors may, without further order of the Court and, in consultation with the DIP Financing lenders, resolve an Additional Assurance Request by mutual agreement with a Utility Company, and the Debtors may, in connection with any such agreement, provide a Utility Company with additional adequate assurance of payment including cash deposits, prepayments, or other forms of security if the Debtors believe that such adequate assurance is reasonable, subject to the terms of any orders approving the Debtors' proposed DIP Financing.

k)     If the Debtors and the Utility Company are not able to reach an alternative resolution within 30 days of the Debtors' receipt of the Additional Assurance Request, the Debtors will request a hearing before the Court at the next regularly scheduled omnibus hearing to determine the adequacy of assurances of payment with respect to a particular Utility Company (the "**Determination Hearing**") pursuant to section 366(c)(3) of the Bankruptcy Code.

l)     Pending resolution of the Determination Hearing, the Utility Company serving such Additional Assurance Request will be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of unpaid charges for prepetition services, a pending Additional Assurance Request or any objections to the Proposed Adequate Assurance.

m)     Notwithstanding anything in these procedures to the contrary, the Debtors will request a hearing (the "Final Adequate Assurance Hearing") to take place no later than 30 days following the Petition Date to resolve outstanding objections to these procedures in the event any are timely filed

by a Utility Company. If no objections are filed at least 24 hours prior to the Final Adequate Assurance Hearing, the Final Adequate Assurance Hearing will be cancelled.

### Subsequent Modification of Utility Services List

14. Although the Debtors have made an extensive, good faith effort to identify all of the Utility Companies and include them on the Utility Services List, certain Utility Companies may not be listed therein. To the extent the Debtors identify additional Utility Companies, the Debtors will promptly file amendments to the Utility Services List and serve copies of the order granting this Motion on any newly identified Utility Companies. In addition, the Debtors will increase the amount of the Adequate Assurance Deposit to account for newly identified Utility Companies. The Debtors request that the Proposed Order bind all Utility Companies, regardless of when the Utility Companies are added to the Utility Services List.

### Basis for Relief Requested

15. The relief requested will ensure the continuation of the Debtors' business at this critical juncture as the Debtors transition into chapter 11. The relief requested also provides the Utility Companies with a fair and orderly procedure for determining requests for additional adequate assurance, without which the Debtors could be forced to address multiple requests by the Utility Companies in a disorganized manner at a critical period in these chapter 11 cases.

16. Section 366 of the Bankruptcy Code is designed with the dual purpose of protecting debtors from being cut off from utility services and providing utility companies with adequate assurance that the debtor will be able to pay for postpetition services. *See* H.R. Rep. No. 95-595, at 350 (1978), *reprinted* in 1978 U.S.C.C.A.N 5963, 6306. To that end, pursuant to section 366(c), during the first thirty (30) days of a chapter 11 case, a utility company may not alter, refuse, or discontinue service to a debtor solely because of unpaid prepetition amounts, but after the first

thirty (30) days, the utility company may alter, refuse or discontinue service if a debtor does not provide "adequate assurance" of payment for postpetition services in satisfactory form.

17. Section 366(c)(3)(B) provides a list of factors that courts are not to consider when evaluating whether a proposed adequate assurance payment is in fact adequate. These factors are: (i) the absence of security before the petition date, (ii) the debtor's history of timely payments, and (iii) the availability of an administrative expense priority. Although section 366(c) clarifies what does and does not constitute "assurance of payment" and what can be considered in determining whether such assurance is adequate, Congress, in enacting that section, did not divest this Court of its power to determine what amount, if any, is necessary to provide adequate assurance of payment to a Utility Company. See 11 U.S.C. § 366(c)(3)(A). Specifically, section 366(c)(3)(A) states that, "[o]n request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment . . . ." Thus, there is nothing to prevent a court from deciding that, on the facts of the case before it, the amount required of the debtor to provide adequate assurance of payment to a utility company should be nominal or even zero. *See, e.g., In re Pac-West Telecomm., Inc.*, Ch. 11 Case No. 07-10562 (BLS) (Bankr. D. Del. May 2, 2007) (Docket No. 39) (approving adequate assurance in the form of one-time supplemental prepayment to each utility company equal to prorated amount of one week's charges).

18. Although section 366(c)(2) of the Bankruptcy Code allows a utility to take action if the debtor fails to provide adequate assurance of payment that is "satisfactory" to the utility, it is the bankruptcy court and not the utility that is the ultimate arbiter of what is "satisfactory" assurance after taking into consideration the needs of the debtor as well as the utility. *See, e.g., In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming the

bankruptcy court's decision that no utility deposit was necessary where such deposits would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already [were] reasonably protected"). Indeed, section 366 only requires that assurance of payment be "adequate" and courts have not construed section 366 to require an absolute guarantee of the debtor's ability to pay. *See, e.g., In re Caldor, Inc. – N.Y.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires the Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'" (citation omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc. – N.Y.,* 117 F.3d 646 (2d Cir. 1997); *In re New Rochelle Tel. Corp.*, 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008) ("Adequate assurance, however, is not a guarantee of payment; rather, it is intended to guard against the utility assuming an unreasonable risk of non-payment."); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment . . . .").

19. Further, courts consider what is "need[ed] of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (emphasis in original); *see also In re Penn Central*, 467 F.2d at 103–04. Indeed, "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full." *In re Great Atlantic & Pacific Tea Co.*, 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011).

20. The Proposed Adequate Assurance is reasonable and satisfies the requirements of section 366 of the Bankruptcy Code. As set forth above, the Debtors fully intend

to pay all postpetition obligations owed to the Utility Providers and expect to have sufficient funds to pay such obligations, especially in light of the liquidity enhancements and accommodations being provided by the Consenting OEMs. Additionally, the Utility Companies are protected through the Adequate Assurance Deposit that will be held in a segregated account, and are afforded flexibility and an opportunity to be heard through the Objection Procedures. Accordingly, the Proposed Adequate Assurance is reasonable and satisfies section 366 of the Bankruptcy Code.

21. Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Proposed Adequate Assurance and the Objection Procedures are necessary and appropriate to carry out the provisions of the Bankruptcy Code and they will ensure that the Utility Services are continued without prejudicing the Utility Companies.

22. In light of the foregoing, the Proposed Adequate Assurance and the Adequate Assurance Procedures are reasonable and the relief requested herein is necessary and appropriate in the best interests of the Debtors' estates and creditors, and should be granted in full.

**Bankruptcy Rule 6003 Is Satisfied**

23. Bankruptcy Rule 6003 provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before 21 days after the filing of the petition. As described herein and in the First Day Declaration, the relief requested herein is necessary for the Debtors to operate their businesses in the ordinary course and to

maximize the value of their estates for the benefit of all stakeholders. Accordingly, the relief requested herein is necessary to avoid immediate and irreparable harm, and the requirements of Bankruptcy Rule 6003 are satisfied.

### Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)

24. To implement the foregoing successfully, the Debtors request that the Court find that notice of this Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) to the extent applicable. As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Thus, ample cause exists to justify finding that the notice requirements of Bankruptcy Rule 6004(a) have been satisfied and to waive the 14-day stay imposed by Bankruptcy Rule 6004(h) to the extent such notice requirements and stay apply.

### Reservation of Rights

25. Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**Notice**

26. Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to the ABL Agent, (x) Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010, Attn: Charles A Beckham, Jr. (charles.beckham@haynesboone.com), and (y) Haynes and Boone, LLP, 2323 Victory Avenue, Suite 700, Dallas, TX 75219, Attn: J. Frasher Murphy (frasher.murphy@haynesboone.com); (iv) counsel to the Ad Hoc Noteholder Group, Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 (Attn: Kristopher M. Hansen, Jonathan D. Canfield and Gabriel Sasson), and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801 (Attn: Matthew B. Lunn, Sean M. Beach and Robert F. Poppiti, Jr.); (v) counsel to the Supporting Sponsors, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020 (Attn: George A. Davis and David A. Hammerman); (vi) the Internal Revenue Service; (vii) the United States Attorney's Office for the District of Delaware; (viii) the Securities and Exchange Commission; (ix) any other party entitled to notice pursuant to Bankruptcy Rule 2002; and (x) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(m) (collectively, the "**Notice Parties**").

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 1, 2022
Wilmington, Delaware

| | |
|---|---|
| **BAKER BOTTS L.L.P.**<br>James R. Prince (*pro hac vice* admission pending)<br>Kevin Chiu (*pro hac vice* admission pending)<br>2001 Ross Avenue, Suite 900<br>Dallas, Texas 75201-2980<br>Telephone:　(214) 953-6500<br>Facsimile:　(214) 953-6503<br>Email: jim.prince@bakerbotts.com<br>　　　　kevin.chiu@bakerbotts.com<br><br>-and-<br><br>BAKER BOTTS L.L.P.<br>Scott R. Bowling (*pro hac vice* admission pending)<br>30 Rockefeller Plaza<br>New York, New York 10112<br>Telephone:　(212) 408-2500<br>Facsimile:　(212) 259-2501<br>Email: scott.bowling@bakerbotts.com<br><br>-and-<br><br>BAKER BOTTS L.L.P.<br>David R. Eastlake (*pro hac vice* admission pending)<br>Lauren N. Randle (*pro hac vice* admission pending)<br>910 Louisiana Street<br>Houston, Texas 77002<br>Telephone:　(713) 229-1234<br>Facsimile:　(713) 229-1522<br>Email: david.eastlake@bakerbotts.com<br>　　　　lauren.randle@bakerbotts.com | */s/ Robert J. Dehney*<br>**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Robert J. Dehney (No. 3578)<br>Curtis S. Miller (No. 4583)<br>Daniel B. Butz (No. 4227)<br>Matthew O. Talmo (No. 6333)<br>Brian Loughnane (No. 6853)<br>1201 N. Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br>Email:　rdehney@morrisnichols.com<br>　　　　cmiller@ morrisnichols.com<br>　　　　dbutz@ morrisnichols.com<br>　　　　mtalmo@ morrisnichols.com<br>　　　　bloughnane@ morrisnichols.com<br><br>*Proposed Attorneys for Debtors and Debtors in Possession* |