## **Exhibit 1**

Proposed Redacted *Debtors' Motion for Entry of an Order (I) Approving the Debtors'*
*Assumption of Commercial Contracts, as Amended, and (II) Granting Related Relief*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| **TPC GROUP INC.**, *et al.*, | Case No. 22-10493 (CTG) |
| Debtors.[1] | Joint Administration Requested |

## DEBTORS' MOTION FOR ENTRY OF AN
## ORDER (I) APPROVING THE DEBTORS' ASSUMPTION OF COMMERCIAL
## CONTRACTS, AS AMENDED, AND (II) GRANTING RELATED RELIEF

TPC Group Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1.     On the date hereof (the "**Petition Date**"), the Debtors commenced these chapter 11 cases by filing voluntary petitions with this Court under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2.     Debtors request the Court's approval to assume certain commercial supply agreements, as amended, with The Dow Chemical Company ("**Dow**"), a critical supplier of crude C4 feedstock to the Debtors, and a revenue-generating customer contract with Dow's affiliate, Union Carbide Corporation ("**Union Carbide**" and together with Dow, the "**Contracting Counterparties**").

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248). Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77002.

3.      No trustee, examiner, or statutory committee has been appointed in these cases.  The Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4.      The Debtors are the leading North American producer and processor of intermediate and specialty chemicals and fuel derivatives.  Their products are critical to a wide range of end-markets and applications, including synthetic rubber, fuels, lubricants, plastics, and surfactants.  Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Del Genio in Support of Debtors' Chapter 11 Petitions and Related Requests for Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.[2]

5.      In addition to the First Day Declaration, this Motion is supported by the *Declaration of Robert A. Del Genio in Support of Debtors' Motion for Entry of an Order (I) Approving Debtors' Assumption of Commercial Contracts, as Amended, and (II) Granting Related Relief* (the "**Contract Assumption Declaration**") attached hereto as **Exhibit A** and incorporated herein by reference.

6.      The Debtors request entry of an order (the "**Order**"), substantially in the form attached hereto as **Exhibit B**: (a) approving their assumption of the Agreements (as defined below); and (b) granting related relief.

---

[2]      Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

2

**Jurisdiction and Venue**

7.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The Debtors consent pursuant to Rule 9013-1(f) of the Bankruptcy Local Rules to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**Relief Requested**

9.      Pursuant to sections 105(a) and 365(a) of title 11 of the Bankruptcy Code and Bankruptcy Rule 6006, the Debtors request approval to assume the Agreements, as defined herein, and all related relief.

**The Agreements**

10.     The Debtors are a leading producer, marketer, and value-added processor of intermediate and specialty chemicals, fuel derivatives, and petroleum byproducts.  Among other things, they are the largest crude C4 processor by installed capacity in North America.  Crude C4 processing is the Debtors' primary revenue-generating segment, accounting for 60% of revenue and 46% of gross profit in 2021.  As a result, continuous access to large quantities of crude C4 is critical to the Debtors' business operations

11.     The Contracting Counterparties are a critical supplier of crude C4 to the Debtors.  Any disruption of the Debtors' supply of crude C4 would not only harm the Debtors' business by directly impacting revenue, cash flow, and liquidity but would also likely result in

adverse impacts on the Debtors' customer relationships resulting from the Debtors' lack of production.

12.    The Debtors and the Contracting Counterparties are parties to the following agreements (collectively, the "**Agreements**"), which govern Dow's supply of crude C4 to the Debtors and the Debtors' supply of butene-1 to Dow's affiliate, Union Carbide:

- The Memorandum of Understanding between The Dow Chemical Company and TPC Group LLC effective May 10, 2022 (the "**MOU**");

- The Master Netting Agreement by and between TPC Group LLC, The Dow Chemical Company, and Union Carbide Corporation effective December 19, 2014 (amended September 1, 2015) (as amended, the "**Master Netting Agreement**");

- The following crude C4 sales contracts whereby Dow agrees to supply crude C4 to TPC (collectively, the "**C4 Supply Agreements**"):

  o Sales Contract by and between The Dow Chemical Company and TPC Group LLC, effective September 1, 2017, regarding crude C4 produced at Dow's Freeport, Texas facility (amended January 1, 2020 and May 18, 2022) (as amended, the "**Freeport C4 Agreement**");

  o Sales Contract by and between The Dow Chemical Company and TPC Group LLC, effective January 1, 2018, regarding crude C4 produced at Dow's Fort Saskatchewan, Alberta, Canada facility (amended May 18, 2022) (as amended, the "**Fort Saskatchewan C4 Agreement**");

  o Sales Contract by and between The Dow Chemical Company and TPC Group LLC, effective August 1, 2019, regarding crude C4 produced at Dow's Sabine River Operations, Orange, Texas facility (amended May 18, 2022) (as amended, the "**Orange C4 Agreement**"); and

- Sales Agreement by and between Union Carbide Corporation and TPC Group LLC, effective January 1, 2010, regarding Debtors' sale of Butene-1 to Union Carbide (amended April 1, 2016; January 1, 2018; and January 1, 2021) (as amended, the "**Butene-1 Agreement**").[3]

---

[3]    A true and correct copy of the MOU is attached hereto as **Exhibit C**. A true and correct copy of the Master Netting Agreement is attached hereto as **Exhibit D**. A true and correct copy of the C4 Supply Agreements are attached hereto as **Exhibit E**. A true and correct copy of the Butene-1 Agreement is attached hereto as **Exhibit F**.

13.     Under the Agreements, Dow supplies crude C4 produced from certain of its plants to the Debtors, and the Debtors, in turn, supply butene-1 to Union Carbide, an affiliate of Dow.  To streamline the invoice and netting procedures and setoff rights under the various supply agreements, the Debtors and the Contracting Counterparties executed the Master Netting Agreement.  The Master Netting Agreement covers the Crude C4 Supply Agreements (except for the Orange C4 Agreement) and the Butene-1 Agreement.

14.     Beyond the Agreements, the Debtors have no other relationships with the Contracting Counterparties.  The Contracting Counterparties do not have any representatives on the Debtors' board of directors, nor do the Contracting Counterparties own any equity interest in the Debtors.  The Contracting Counterparties are not "insiders" within the meaning of section 101(31) of the Bankruptcy Code.

15.     On May 18, 2022, Dow and the Debtors executed amendments to the C4 Supply Agreements (collectively, the "**2022 C4 Amendments**").[4]  These amendments resulted in favorable pricing terms for the Debtors, but the effectiveness of the amendments is conditioned upon entry of a final order approving the Debtors' assumption of the amended Agreements.  By assuming the Agreements, the Debtors seek to obtain the benefit of the amendments as soon as possible.  The 2022 C4 Amendments will improve the Debtors' cash flow, reduce costs, and improve liquidity.  Based on certain assumptions, the Debtors project that, if the 2022 C4 Amendments become effective within the first week of June 2022, the Debtors will save approximately over ███████████ for the remainder of 2022 and ███████████ in 2023 as a result of the amended pricing schedules.  However, delay in the 2022 C4 Amendments becoming effective will result in significant loss of savings.

---

[4]      The 2022 C4 Amendments are attached hereto as **Exhibit G**.

16.     Under paragraph 2.c. of the MOU, although the 2022 C4 Amendments were executed on May 18, 2022, they will not become effective until entry of a final order by this Court providing for assumption of: (1) the C4 Supply Agreements as amended by the 2022 C4 Amendments; (2) the Butene-1 Agreement; and (3) the Master Netting Agreement.  Accordingly, the Debtors request entry of an order approving their assumption of the Agreements as amended by the 2022 C4 Amendments.

17.     The Debtors are not in default under the C4 Supply Agreements.  No cure is required under Section 365(b)(1)(A) of the Bankruptcy Code.  All accrued but unpaid amounts for product purchased by Debtors under the C4 Supply Agreements as of the Petition Date and thereafter will be paid when due in the ordinary course.  Further, the Debtors have a long and consistent history of remaining current on their net payment obligations to Dow under the C4 Supply Agreements and are highly motivated to continue timely paying for raw materials, such as crude C4, which is essential to the Debtors' operations.  The Debtors' unblemished payment history with Dow, projected liquidity under their financing budget, and agreement to pay in the ordinary course provides adequate assurance of future performance.

**<u>Relief Requested Should Be Granted</u>**

18.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor.  *See In re Caribbean Petroleum Corp.,* 444 B.R. 263, 268 (Bankr. D. Del. 2010) ("Courts normally leave the decision to reject a contract to the debtor's sound business judgment."); *In re Armstrong World Indus.*, 348 B.R. 136, 162 (D. Del. 2006) (explaining that courts defer to a debtor's business judgment to reject

6

a contract under 11 U.S.C. § 365(a)).  Debtors are allowed considerable discretion in determining whether to assume or reject an executory contract.  The business judgment standard mandates that a court approve a debtor's business decision unless the decision is the product of "bad faith, or of whim or caprice."  *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001).

19.    Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease.  Further, the business judgment standard is satisfied when a debtor determines that assumption or rejection will benefit the estate.  *See Trans World Airlines*, 261 B.R. at 117–18 (noting that the standard under section 365 requires consideration of the benefit to the debtor's estate); *see also In re TS Indus., Inc.*, 117 B.R. 682, 685 (Bankr. D. Utah 1990) (explaining that section 365 "allows the debtor-in-possession to assume contracts that are beneficial to the estate"); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990) (applying the business judgment standard, which requires a showing that the "contract will be advantageous to the estate").

20.    Here, the Debtors respectfully submit that, for the reasons set forth herein, the assumption of the Agreements is in the best interests of the Debtors' estates.  As an initial matter, the 2022 C4 Amendments are the product of good faith, arm's-length negotiations between the Debtors and the Contracting Counterparties.  Moreover, the assumption of the Agreements would provide numerous benefits to the Debtors' estates.

21.    First, the value of the Debtors' business depends on having a voluminous supply of raw materials, including crude C4, the driver of the Debtors' primary revenue-generating business segment.  Assuming the Agreements ensures an uninterrupted source of supply of crude C4 from a critical supplier.  A disruption in the Debtors' supply of crude C4 would diminish value, adversely impacting not only the Debtors' business but also those of the Debtors' customers and,

7

therefore, would likely damage the Debtors' customer relationships as well as impact the Debtors' revenue and liquidity.

22.    Second, assumption of the Agreements as amended by the 2022 C4 Amendments would substantially benefit the Debtors and their estates.  It would improve cash flow, reduce cost, and improve liquidity.  The 2022 C4 Amendments, which will only become effective upon entry of a final order granting this Motion, would allow the Debtors to obtain crude C4 from Dow at more favorable prices than under the original contracts.  Under the new pricing scheme, the Debtors project, based on certain assumptions, that they will save approximately over ███████████ in the remainder of 2022 an ███████████ in 2023 if the amendments become effective within the first week of June 2022.

23.    Finally, assumption preserves an important business relationship and revenue-generating contract with Union Carbide.

24.    Accordingly, assumption of the Agreements has a more than sound business purpose and benefits the Debtors and their estates.  The Motion should be granted on a final basis.

**Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)**

25.    To implement the foregoing successfully, the Debtors request that the Court find that notice of this Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) to the extent applicable.  As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors by avoiding a forfeiture of value if the effectiveness of the assumption of the Agreements is delayed.  Thus, ample cause exists to justify finding that the notice requirements of Bankruptcy Rule 6004(a) have been

satisfied and to waive the 14-day stay imposed by Bankruptcy Rule 6004(h) to the extent such notice requirements and stay apply.

## Notice

26.     The Debtors provided notice of this Motion to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) the Contracting Counterparties; (iv) counsel to the prepetition ABL Agent, Haynes & Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010 (Attn: Charles A. Beckham, Jr. and Tim Johnston); (v) counsel to the Ad Hoc Group, Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 (Attn: Kristopher M. Hansen, Esq. and Jonathan D. Canfield, Esq.); and (vi) any other party entitled to notice pursuant to Bankruptcy Rule 2002.

## No Prior Request

27.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested in this motion and granting such other and further relief as is appropriate under the circumstances.

[*Signature page follows*.]

Dated: June 1, 2022
      Wilmington, Delaware

/s/ Robert J. Dehney

**BAKER BOTTS L.L.P.**

James R. Prince (*pro hac vice* admission pending)
Kevin Chiu (*pro hac vice* admission pending)
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980
Telephone:    (214) 953-6500
Facsimile:    (214) 953-6503
Email: jim.prince@bakerbotts.com
        kevin.chiu@bakerbotts.com

-and-

BAKER BOTTS L.L.P.
Scott R. Bowling (*pro hac vice* admission pending)
30 Rockefeller Plaza
New York, New York 10112
Telephone:    (212) 408-2500
Facsimile:    (212) 259-2501
Email: scott.bowling@bakerbotts.com

-and-

BAKER BOTTS L.L.P.
David R. Eastlake (*pro hac vice* admission pending)
Lauren N. Randle (*pro hac vice* admission pending)
910 Louisiana Street
Houston, Texas 77002
Telephone:    (713) 229-1234
Facsimile:    (713) 229-1522
Email: david.eastlake@bakerbotts.com
        lauren.randle@bakerbotts.com

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Robert J. Dehney (No. 3578)
Curtis S. Miller (No. 4583)
Daniel B. Butz (No. 4227)
Matthew O. Talmo (No. 6333)
Brian Loughnane (No. 6853)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email:    rdehney@morrisnichols.com
        cmiller@ morrisnichols.com
        dbutz@ morrisnichols.com
        mtalmo@ morrisnichols.com
        bloughnane@ morrisnichols.com

*Proposed Attorneys for Debtors
and Debtors in Possession*

**<u>EXHIBIT A</u>**
Contract Assumption Declaration

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| **TPC GROUP INC.**, *et al.*, | Case No. 22-10493 (CTG) |
| Debtors.[1] | Joint Administration Requested |

**DECLARATION OF ROBERT A. DEL GENIO IN SUPPORT OF DEBTORS' MOTION
FOR ENTRY OF AN ORDER (I) APPROVING THE DEBTORS' ASSUMPTION OF
COMMERCIAL CONTRACTS, AS AMENDED, AND (II) GRANTING RELATED
RELIEF**

I, Robert A. Del Genio, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.    I am a Senior Managing Director and the co-leader of the New York Metro Region for Corporate Finance and Restructuring at FTI Consulting, Inc. (**"FTI"**).  On the date hereof (the **"Petition Date"**), TPC Holdings, Inc. (**"Holdings"**) and certain of its direct and indirect subsidiaries (collectively with Holdings, the **"Debtors"** or the **"Company"**) commenced voluntary cases under chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**). Since November 1, 2021, FTI has been serving as the Company's financial advisor, which is an engagement I lead.  I submit this declaration (the **"Contract Assumption Declaration"**) in support of the Debtors' Motion for Entry of an Order (I) Approving the Debtors' Assumption of

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248).  Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77002.

Commercial Contracts, As Amended, and (II) Granting Related Relief filed herewith (the "**Motion**").[2]

2.      Based on my work with the Company, I am generally familiar with the Debtors' business, financial condition, day-to-day operations and books and records.  Except as otherwise noted, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from my review of the Debtors' business records and from Debtors' employees and retained advisors (including members of my team that report to me) in the ordinary course of my responsibilities.  The Debtors have authorized me to submit this Contract Assumption Declaration on their behalf.  If called upon to testify, I would testify competently as to the facts set forth in this Declaration.

3.      The Debtors are the leading North American producer and processor of intermediate and specialty chemicals and fuel derivatives.  Their products are critical to a wide range of end-markets and applications, including synthetic rubber, fuels, lubricants, plastics, and surfactants.

4.      Among other things, the Debtors are the largest crude C4 processor by installed capacity in North America.  Crude C4 processing is the Debtors' primary revenue-generating segment, accounting for 60% of revenue and 46% of gross profit in 2021.

5.      As such, maintaining an uninterrupted supply of large amounts of crude C4 is critical to the Debtors' business.  Any disruption in supply of crude C4 would adversely impact the Debtors' production.  This would not only negatively impact the Debtors' revenue, cash flow, and liquidity, but would also damage the Debtors' customer relationships.

---

[2]      Capitalized terms used but not defined herein have the same meaning as ascribed to them in the Motion.

6.      The Dow Chemical Company (**"Dow"**) is a critical supplier of crude C4 to the Debtors.  The Debtors, Dow, and Dow's affiliate, Union Carbide Corporation (**"Union Carbide"** and together with Dow, the **"Contracting Counterparties"**) are parties to the following agreements (collectively, the **"Agreements"**):

    a.   The Memorandum of Understanding between The Dow Chemical Company and TPC Group LLC effective May 10, 2022 (the **"MOU"**);

    b.   The Master Netting Agreement by and between TPC Group LLC, The Dow Chemical Company, and Union Carbide Corporation effective December 19, 2014 (amended September 1, 2015) (as amended, the "**Master Netting Agreement**");

    c.   The following crude C4 sales contracts whereby Dow agrees to supply crude C4 to TPC (collectively, the "**C4 Supply Agreements**"):

        i.   Sales Contract by and between The Dow Chemical Company and TPC Group LLC, effective September 1, 2017, regarding crude C4 produced at Dow's Freeport, Texas facility (amended January 1, 2020 and May 18, 2022) (as amended, the "**Freeport C4 Agreement**");

        ii.  Sales Contract by and between The Dow Chemical Company and TPC Group LLC, effective January 1, 2018, regarding crude C4 produced at Dow's Fort Saskatchewan, Alberta, Canada facility (amended May 18, 2022) (as amended, the "**Fort Saskatchewan C4 Agreement**");

        iii. Sales Contract by and between The Dow Chemical Company and TPC Group LLC, effective August 1, 2019, regarding crude C4 produced at Dow's Sabine River Operations, Orange, Texas facility (amended May 18, 2022) (as amended, the "**Orange C4 Agreement**"); and

    d.   Sales Agreement by and between Union Carbide Corporation and TPC Group LLC, effective January 1, 2010, regarding Debtors' sale of Butene-1 to Union Carbide (amended April 1, 2016; January 1, 2018; and January 1, 2021) (as amended, the "**Butene-1 Agreement**").

7.      Under the Agreements, Dow supplies crude C4 produced from certain of its plants to the Debtors.  In turn, the Debtors supply butene-1 to Union Carbide.  To streamline the invoice and netting procedures and setoff rights under the various supply agreements, the Debtors

and the Contracting Counterparties executed the Master Netting Agreement. The Master Netting Agreement covers the Crude C4 Supply Agreements (except for the Orange C4 Agreement) and the Butene-1 Agreement.

8.     The Debtors are not in default under the C4 Supply Agreements. No cure is required. All accrued but unpaid amounts for product purchased by the Debtors under the C4 Supply Agreements as of the Petition Date and thereafter will be paid when due in the ordinary course. Further, the Debtors have a long and consistent history of remaining current on their net payment obligations to Dow under the C4 Supply Agreements and are highly motivated to continue timely paying for raw materials, such as crude C4, which is essential to the Debtors' operations. I believe the Debtors' unblemished payment history with Dow, projected liquidity under their financing budget, and agreement to pay in the ordinary course provides adequate assurance of future performance.

9.     Beyond the Agreements, the Debtors have no other relationships with the Contracting Counterparties. The Contracting Counterparties do not have any representatives on the Debtors' board of directors, nor do the Contracting Counterparties own any equity interest in the Debtors. The Contracting Counterparties are not "insiders" within the meaning of section 101(31) of the Bankruptcy Code.

10.     On May 18, 2022, Dow and the Debtors executed amendments to the C4 Supply Agreements (collectively, the **"2022 C4 Amendments"**). These amendments resulted in more favorable pricing terms for the Debtors. Based on certain assumptions, the Debtors project that, if the 2022 C4 Amendments become effective within the first week of June 2022, the Debtors will save approximately ove ███████████ or the remainder of 2022 and ███████████ in 2023 as a result of the amended pricing schedules.

11.     However, under paragraph 2.c. of the MOU, although the 2022 C4 Amendments were executed on May 18, 2022, they will not become effective until entry of a final order by this Court granting the Motion. By assuming the Agreements, the Debtors seek to obtain the benefit of the amendments as soon as possible. Accordingly, the Debtors request entry of an order approving their assumption of the Agreements as amended by the 2022 C4 Amendments.

12.     I am familiar with the Company's negotiations with the Contracting Counterparties, some of which I participated in with counsel for both parties. I believe the 2022 C4 Amendments and the relief requested in the Motion are the product of good faith, arm's-length negotiations.

13.     Assumption of the Agreements is in the best interests of the Debtors' estates and is supported by a sound business purpose. First, the value of the Debtors' business depends on having a voluminous supply of raw materials, including crude C4, the driver of the Debtors' primary revenue-generating business segment. Assuming the Agreements ensures an uninterrupted source of supply of crude C4 from a critical supplier. A disruption in the Debtors' supply of crude C4 would diminish value. It would adversely impact not only the Debtors' business but also those of the Debtors' customers.

14.     Second, assumption of the Agreements as amended by the 2022 C4 Amendments would substantially benefit the Debtors and their estates. It would improve cash flow, reduce cost, and improve liquidity. The 2022 C4 Amendments, which will only become effective upon entry of a final order granting this Motion, would allow the Debtors to obtain crude C4 from Dow at more favorable prices than under the original contracts.

15.     Finally, assumption preserves an important business relationship and revenue-generating contract with Union Carbide.

5

16.     On behalf of the Debtors, I respectfully request that the Court grant the relief requested in the Motion and such other and further relief as is appropriate.

Pursuant to 28 U.S.C. § 1746, the undersigned makes the forgoing declaration as of the date of its filing under penalty of perjury.

Date: June 1, 2022                          */s/ Robert A. Del Genio*
                                            Robert A. Del Genio

**<u>EXHIBIT B</u>**

Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| **TPC GROUP INC.**, *et al.*, | Case No. 22-10493 (CTG) |
| Debtors.[1] | Joint Administration Requested |

**ORDER (I) APPROVING THE DEBTORS' ASSUMPTION OF COMMERCIAL
CONTRACTS, AS AMENDED, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order (this "**Order**") (i) approving the Debtors' assumption of commercial contracts, as amended, with the Contracting Counterparties and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration and the Contract Assumption Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248). Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77002.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

the Motion and having heard the statements in support of the relief requested therein at a hearing

before this Court (the "**Hearing**"); and this Court having determined that the legal and factual

bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein;

and upon all of the proceedings had before this Court; and after due deliberation and sufficient

cause appearing therefor, it is HEREBY ORDERED THAT:

1.      Pursuant to section 365(a) of the Bankruptcy Code, the Debtors' assumption

of the Agreements, (which includes for the avoidance of doubt, all exhibits, attachments, and other

documents incorporated therein) as amended by the 2022 C4 Amendments, is approved effective

as of the entry of this Order.

2.      The Debtors and the Contracting Counterparties are hereby authorized to

enter into, perform under, execute, and deliver the Agreements, as amended by the 2022 C4

Amendments.

3.      The Debtors are authorized to enter into, perform, execute, and deliver all

other documents, and take all other actions, necessary to immediately effectuate the Agreements,

as amended by the 2022 C4 Amendments, in accordance with the terms, conditions, and

agreements related thereto, all of which are hereby approved, and to otherwise effectuate the relief

granted in this Order in accordance with the Motion.

4.      Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order is

final and shall be immediately effective and enforceable upon its entry.

*[Remainder of page intentionally left blank]*

5.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**<u>Exhibit C through Exhibit G</u>**

[FILED UNDER SEAL]