## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TPC Group Inc., *et al.*,[1] | ) | Case No. 22-10493 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket Nos. 36, 147** |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN SENIOR SECURED PRIMING SUPERPRIORITY POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of TPC Group Inc. ("***TPC***" or "***Borrower***") and each of its affiliates that are debtors and debtors in possession (collectively, the "***Debtors***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "***Bankruptcy Code***"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rule 4001-2 of the Local Rules of Bankruptcy Procedures (the "***Local Bankruptcy Rules***") promulgated by the United States Bankruptcy Court for the District of Delaware (the "***Court***"), seeking entry of an interim order and a final order (this "***Final Order***"), among other things:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248).  Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77002.

[2]    Each capitalized term that is not defined herein shall have the meaning ascribed to such term in the applicable DIP Loan Agreement (as defined below).

(a)     authorizing the Debtors to obtain postpetition financing on a superpriority priming senior secured basis (such facility, the "*Term DIP Loan Facility*", and the loans made or deemed made thereunder, including the New Money Term DIP Loans, the New Money Cash Out DIP Loans and the DIP Roll Up Loans (each as defined below), the "*Term DIP Loans*"), on the terms and conditions set forth in this Final Order and that certain *Senior Secured Super-Priority Priming Term Loan Debtor-In-Possession Credit Agreement*, substantially in the form attached to the Interim Order (as defined below) as **Exhibit 2** and otherwise in form and substance acceptable to the Term DIP Required Lenders (as defined below) and the Debtors (as amended in accordance with the terms of the amendment attached hereto as **Exhibit 2** (the "*Term DIP Loan Amendment*") and as may be further amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "*Term DIP Loan Agreement*", and together with all other agreements, guarantees, pledge, collateral and security documents, control agreements, instruments, certificates, notes and other documents executed, filed and/or delivered in connection therewith, including the Loan Documents (as defined in the Term DIP Loan Agreement) and the DIP Intercreditor Agreement[3] (each as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, and together with the Term DIP Loan Agreement and this Final Order, collectively, and in each case as modified by this Final Order, the "*Term DIP Loan Documents*"), by and among TPC, as Borrower, TPC Holdings, Inc. ("*Holdings*") and each of the direct and indirect subsidiaries of the Borrower (other than TPC Pipeline Holding Company LLC and TPC Pipeline Company LLC), as guarantors (together with Holdings, the "*Guarantors*", and together with the Borrower, the "*Term DIP Loan Parties*"), GLAS USA LLC, as administrative agent (in such capacity, the "*Term DIP Administrative Agent*") and GLAS Americas LLC, as collateral agent (in such capacity, the "*Term DIP Collateral Agent*", and together with the Term DIP Administrative Agent, the "*Term DIP Agents*"), the lenders party thereto from time to time (the "*Term DIP Lenders*", and together with the Term DIP Agents, the "*Term DIP Secured Parties*"), comprised of the following:

(i)     (A) a new money multiple draw term loan facility (the new money term loans thereunder, the "*New Money Term DIP Loans*") in an aggregate principal amount of up to $85 million, pursuant to which (1) in accordance with the Interim Order, an aggregate principal amount of $32 million was borrowed in a single borrowing on the Closing Date (as defined in the Term DIP Loan Agreement), (2) an aggregate principal amount of $25 million shall be available in a single borrowing upon the entry of this Final Order,

---

[3]     The term "*DIP Intercreditor Agreement*" means, from and after the DIP Intercreditor Effective Date (as defined below), the Prepetition ABL/Notes Intercreditor Agreement (as defined below) after giving effect to the joinder of the DIP Agents (as defined below) thereto and the amendments and modifications set forth in paragraph 37(b) of this Final Order, as the same may be further amended, supplemented or otherwise modified from time to time after the DIP Intercreditor Effective Date in accordance with the terms thereof and hereof. Prior to the DIP Intercreditor Effective Date, all references to the DIP Intercreditor Agreement herein shall mean the Prepetition ABL/Notes Intercreditor Agreement.

and (3) thereafter, an aggregate principal amount of $28 million shall be available in a third single borrowing (collectively, together with each borrowing under the New Money Cash Out DIP Loans (as defined below), the "***Term DIP Borrowings***", and each, a "***Term DIP Borrowing***"), in the case of each of the foregoing, subject to the terms and conditions set forth in this Final Order and in the Term DIP Loan Agreement (including, without limitation, any conditions precedent to each of the Term DIP Borrowings set forth therein), and (B) New Money Cash Out DIP Loans; and

(ii) the conversion of all amounts outstanding under the Prepetition Senior Priority Notes (as defined below) to Term DIP Loans (such conversion, the "***Roll Up***", and such converted amounts, the "***DIP Roll Up Loans***"), pursuant to which (1) upon entry of the Interim Order, approximately $59.3 million in obligations arising under the Prepetition Senior Priority Additional Notes (as defined below) issued pursuant to the Supplemental Indentures (as defined below) (consisting of approximately $52.5 million in respect of principal amount outstanding under the Prepetition Senior Priority Additional Notes, approximately $1.7 million of accrued but unpaid interest thereon, and approximately $5.1 million of the Redemption Premium (as defined in the Prepetition Senior Priority Notes Indenture (as defined below)), were deemed "rolled up" and converted into the Term DIP Loan Facility, on a cashless dollar for dollar basis (the "***Initial Roll Up***"), subject to paragraphs 2(d) and (e) of this Final Order, and (2) upon entry of this Final Order, the balance of the obligations arising under the Prepetition Senior Priority Notes (including all remaining principal, the balance of the Redemption Premium, and accrued but unpaid interest thereon through the date thereof) shall be deemed "rolled up" and converted into the Term DIP Loan Facility, on a cashless dollar for dollar basis (the "***Final Roll Up***"), and, upon such conversion, each of the Roll Up DIP Loans shall automatically be deemed to be substituted and exchanged for, and shall be deemed to be, Term DIP Loans for all purposes hereunder (subject to paragraphs 2(d) and (e) of this Final Order); *provided, however*, that Prepetition Senior Priority Additional Notes (in the case of the Initial Roll Up) and other Prepetition Senior Priority Notes (in the case of the Final Roll Up) beneficially held by entities that certify in writing to the Term DIP Agents and the Term DIP Required Lenders, in accordance with the Roll Up Cash Out Procedures (as defined below), that they are unable to effectuate a Roll Up of Prepetition Senior Priority Additional Notes or other Prepetition Senior Priority Notes (as the case may be) beneficially held by such entities due to limitations with respect to holding term loans in the governing documents or internal policies of such entities (the "***Specified Prepetition Senior Priority Noteholders***") shall be repaid in cash, on a dollar for dollar basis, from the proceeds of additional New Money Term DIP Loans to be provided by the Term DIP Lenders, in a principal amount of New Money Term DIP Loans not to exceed approximately $24,752,917.00 in the aggregate (the "***New Money Cash Out DIP Loans***").

(b)     authorizing the Debtors to obtain postpetition financing on a superpriority priming senior secured basis in a form of a revolving credit facility in an aggregate principal amount of up to $200 million (such facility, the "***ABL DIP Loan Facility***", and together with the Term DIP Loan Facility (the "***DIP Facilities***"; the loans advanced under the ABL DIP Loan Facility, the "***ABL DIP Loans***", and together with the Term DIP Loans, the "***DIP Loans***"), providing, among other things, for the refinancing of all amounts outstanding under the Prepetition ABL Loan Agreement (as defined below) pursuant to the executed payoff letter attached to this Final Order as **Exhibit 3** (the "***Prepetition ABL Payoff Letter***"), on the terms and conditions set forth in this Final Order and that certain *Debtor-In-Possession Credit Agreement*, substantially in the form attached to the Interim Order as **Exhibit 3** and otherwise in form and substance acceptable to the ABL DIP Required Lenders[4] and the Debtors (as may be amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "***ABL DIP Loan Agreement***", and, together with this Final Order and all other agreements, guarantees, pledge, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, filed and/or delivered in connection therewith, including the Loan Documents (as defined in the ABL DIP Loan Agreement) and the DIP Intercreditor Agreement (each as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, and together with the ABL DIP Loan Agreement, collectively, and in each case as modified by this Final Order, the "***ABL DIP Loan Documents***", and together with the Term DIP Loan Documents, the "***DIP Loan Documents***"), by and among TPC, as Lead Borrower, the Guarantors (together with TPC, the "***ABL DIP Loan Parties***", and together with the Term DIP Loan Parties, the "***DIP Loan Parties***"), Eclipse Business Capital LLC, as administrative agent and collateral agent (in such capacities, together with its successors and permitted assigns, the "***ABL DIP Agent***", and together with the Term DIP Agents, the "***DIP Agents***"), the lenders party thereto from time to time (the "***ABL DIP Lenders***", and together with the Term DIP Lenders, the "***DIP Lenders***"; the ABL DIP Lenders together with the ABL DIP Agent, the "***ABL DIP Secured Parties***", and together with the Term DIP Secured Parties, the "***DIP Secured Parties***"),  which was available immediately upon entry of the Interim Order, in each case, subject to the terms and conditions set forth in the Interim Order, this Final Order, and the ABL DIP Loan Agreement (collectively, the "***ABL DIP Borrowings***", and each, an "***ABL DIP Borrowing***", and together with the Term DIP Borrowings, the "***DIP Borrowings***", and each, a "***DIP Borrowing***");

(c)     authorizing the applicable borrowers to incur, and the Guarantors (as defined in the Term DIP Loan Agreement and the ABL DIP Loan Agreement, respectively) to jointly and severally, irrevocably and unconditionally, guarantee, on a super-

---

[4]     As used herein, (a) the term "***ABL DIP Required Lenders***" means the "Required Lenders" under the ABL DIP Loan Agreement, (b) the term "***Term DIP Required Lenders***" means the "Required Lenders" under the Term DIP Loan Agreement, and (c) the term "***Required DIP Lenders***" means both the ABL DIP Required Lenders and the Term DIP Required Lenders.

priority basis, the payment in full in cash of all DIP Obligations (as defined below) in accordance with this Final Order and the applicable DIP Loan Documents;

(d)     authorizing the Debtors to use proceeds of the ABL DIP Facility for the ABL Refinancing (as defined below) pursuant to the terms of the Prepetition ABL Payoff Letter, the Interim Order, and this Final Order;

(e)     authorizing the Debtors to: (i) execute, deliver, and perform under the Term DIP Loan Agreement and the ABL DIP Loan Agreement (together, the "***DIP Loan Agreements***"), and each of the respective DIP Loan Documents, (ii) incur all loans, advances, extensions of credit and financial accommodations, and pay all principal, interest, premiums or similar amounts, fees, costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other obligations or amounts, including without limitation, all "Obligations" as defined in the Term DIP Loan Agreement, whether or not such obligations arose before or after the Petition Date, whenever the same shall become due, whether at stated maturity, by mandatory prepayment, declaration, acceleration or otherwise, in each case, in accordance with the Term DIP Loan Documents and this Final Order (collectively, the "***Term DIP Obligations***"), (iii) incur all loans, advances, extensions of credit and financial accommodations, and pay all principal, interest, premiums or similar amounts, fees, costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other obligations or amounts, including without limitation, all "Obligations" as defined in the ABL DIP Loan Agreement, whether or not such obligations arose before or after the Petition Date, whenever the same shall become due, whether at stated maturity, by mandatory prepayment, declaration, acceleration or otherwise, in each case, in accordance with the ABL DIP Loan Documents and this Final Order (collectively, the "***ABL DIP Obligations***", and together with the Term DIP Obligations, the "***DIP Obligations***")), and (iv) perform such other and further acts as may be necessary, required or desirable to implement and effectuate the terms of this Final Order, the DIP Loan Documents and the transactions contemplated hereunder and thereunder;

(f)     authorizing the Debtors to grant to the DIP Agents, for the benefit of themselves and the other DIP Secured Parties, the DIP Liens (as defined below) in all DIP Collateral (as defined below), as set forth in this Final Order, subject to the Carve Out, and subject to the relative priorities set forth in this Final Order and the DIP Intercreditor Agreement;

(g)     authorizing the Debtors to grant to the DIP Agents, for the benefit of themselves and the other DIP Secured Parties, allowed super-priority administrative expense claims against each of the Debtors, on a joint and several basis, in respect of all DIP Obligations, subject in each case to the Carve Out, as set forth in this Final Order;

(h)     authorizing the Debtors to use the proceeds of the DIP Facilities, the DIP Collateral and the Prepetition Collateral (as defined below), including Cash Collateral (as defined below), in accordance with the terms and conditions set forth in the Interim

Order (with respect to the ABL Refinancing), this Final Order, and the DIP Loan Documents, including the Approved Budget (as defined below), subject to any variances expressly permitted under the Term DIP Loan Agreement (the "***Permitted Variances***");

(i)     granting adequate protection, as and to the extent set forth in this Final Order, to the Prepetition Secured Parties (as defined below) to protect against any Diminution in Value (as defined below) of their respective liens and interests in the Prepetition Collateral (including Cash Collateral);

(j)     modifying or vacating the automatic stay imposed by section 362 of the Bankruptcy Code or otherwise, to the extent necessary, required or desirable to implement and effectuate the terms and provisions of this Final Order and the DIP Loan Documents, as set forth herein, waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Final Order, and providing for the immediate effectiveness of this Final Order;

(k)     approving certain stipulations, waivers, and releases by the Debtors with respect to, *inter alia*, (i) the DIP Secured Parties, the DIP Loan Documents, the DIP Liens and the DIP Obligations, and (ii) the Prepetition Secured Parties, the Prepetition Loan Documents, the Prepetition Liens and the Prepetition Secured Obligations (each as defined below), in all instances, subject to the terms and provisions of this Final Order;

(l)     approving the Debtors' waiver of the right to surcharge the DIP Collateral as to the DIP Secured Parties, and the Prepetition Collateral as to the Prepetition Secured Parties, pursuant to section 506(c) of the Bankruptcy Code or otherwise;

(m)     approving (i) the Debtors' waiver of the equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP Collateral as to the DIP Secured Parties, and (ii) the Debtors' waiver of the equitable doctrine of "marshaling" and the Debtors' waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to the Prepetition Collateral as to the Prepetition Secured Parties; and

(n)     authorizing the relief requested in the Motion on a final basis pursuant to this Final Order, which order shall be in form and substance and on terms and conditions acceptable in all respects to the Required DIP Lenders.

The Court, having considered the Motion, the DIP Loan Documents, the exhibits attached thereto, the *Declaration of Robert Del Genio in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 27] (the "***First Day Declaration***"), the *Declaration of Robert Del Genio in Support of the Debtors' Motion for Entry of an Order (I) Authorizing Use of Cash*

*Collateral; (II) Authorizing the Debtors to Obtain Senior Secured, Superpriority Postpetition Financing; (III) Granting Liens and Superpriority Administrative Claims; (IV) Granting Adequate Protection to Prepetition Secured Parties; and (V) Granting Related Relief* (the "***Del Genio Declaration***") and the *Declaration of Zul Jamal in Support of the Debtors' Motion for Entry of an Order (I) Authorizing Use of Cash Collateral; (II) Authorizing the Debtors to Obtain Senior Secured, Superpriority Postpetition Financing; (III) Granting Liens and Superpriority Administrative Claims; (IV) Granting Adequate Protection to Prepetition Secured Parties; and (V) Granting Related Relief* (the "***Jamal Declaration,***" and together with the Del Genio Declaration and the First Day Declaration, the "***DIP Declarations***"), the evidence submitted and arguments proffered or adduced at the interim hearing held before this Court on June 2, 2022 (the "***Interim Hearing***") and the final hearing held before this Court on July 29, 2022 (the "***Final Hearing***"); and due and proper notice of the Interim Hearing and the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001 and 9014 and all applicable Local Bankruptcy Rules; and the Court having entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* on June 3, 2022 [Docket No. 147] (the "***Interim Order***"); and it appearing that no other or further notice need be provided; and all formal and informal objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing and the Final Hearing established just cause for the relief granted herein; and it appearing to the Court that granting the final relief as provided in this Final

Order is necessary to avoid irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors, represents a sound exercise of the Debtors' business judgment, is necessary for the continued operation of the Debtors' businesses and is necessary to preserve and maximize the value of the Debtors and their estates; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[5]**

A.      *Petition Date*. On June 1, 2022 (the "*Petition Date*"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these Chapter 11 Cases.

B.      *Debtors in Possession*. The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.      *Committee Formation*. On June 14, 2022, the Office of the United States Trustee (the "*U.S. Trustee*") appointed an official statutory committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "*Official Committee*").

D.      *Jurisdiction and Venue*. This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. This Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for these Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to

---

[5]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

28 U.S.C. §§ 1408 and 1409. The predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 and Local Bankruptcy Rule 4001-2.

      **E.**     *Debtors' Stipulations, Releases and Acknowledgements Regarding DIP Secured Parties.* In requesting the DIP Facilities, and in exchange for and as a material inducement to the DIP Secured Parties to provide the DIP Facilities, the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree as follows, in each case without limitation to the rights of the Official Committee to the extent set forth in paragraph 2(d) of this Final Order with respect to the DIP Roll Up Loans:

      (a)     *No Control.* None of the DIP Secured Parties (in their capacities as such) control the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted, or is a control person or insider (as defined in the Bankruptcy Code) of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Interim Order, this Final Order, the DIP Facilities, the DIP Liens, the DIP Obligations, the DIP Loan Documents or the transactions contemplated hereunder or thereunder.

      (b)     *No Claims, Defenses, or Causes of Action.* As of the date hereof, there exist no claims, defenses or any other Cause of Action[6] of any nature or description whatsoever that may be asserted by the Debtors, their respective estates, predecessors, successors and assigns, against any of the DIP Secured Parties or any of their respective current, former and future affiliates, subsidiaries, funds or managed accounts, officers, directors, managers, members, equity holders, partners, principals, employees, representatives, agents, attorneys, advisors and other professionals, and the successors and assigns of each of the foregoing (collectively, the "***Representatives***"), in their capacities as such, in each case, arising from, in connection with, or related to the Interim Order, this Final Order, the DIP Liens, the DIP Obligations, the DIP Loan Documents or the DIP Collateral.

---

[6]    The term "***Cause of Action***" means any action, cause of action, claim, counter-claim, cross-claim, defense, account, objection, challenge, offset, setoff, demand, liability, responsibility, dispute, remedy, indebtedness, obligation, guaranty, right, interest, indemnity, assertion, allegation, suit, controversy, proceeding, loss, damage, injury, reimbursement obligation, attorneys' fees, costs, expenses or judgments, whether known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, whether assertable directly or derivatively, including, without limitation, all legal and equitable theories of recovery, arising under the Bankruptcy Code or applicable non-bankruptcy law, whether local, state or federal U.S. or foreign statute, law, rule or regulation, of every nature or description whatsoever.

(c)     *Releases.* Effective as of the date of entry of the Interim Order, the Debtors, on behalf of themselves and their respective estates, hereby absolutely, unconditionally and irrevocably release and forever discharge and acquit the DIP Secured Parties and each of their respective Representatives (in their capacities as such) of and from any and all actions, causes of action, claims, counter-claims, cross-claims, defenses, accounts, objections, challenges, offsets or setoff, demands, liabilities, responsibilities, disputes, remedies, indebtedness, obligations, guarantees, rights, interests, indemnities, assertions, allegations, suits, controversies, proceedings, losses, damages, injuries, reimbursement obligations, attorneys' fees, costs, expenses or judgments of every type, whether known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, rule or regulation or by contract, of every nature or description whatsoever, that the Debtors, their estates, predecessors, successors and assigns at any time had, now have or that their successors and assigns may have against any of the DIP Secured Parties and their respective Representatives for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time prior to the date of this Final Order, in each case, arising under, in connection with or related to the Interim Order, this Final Order, the DIP Facilities, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Loan Documents or the transactions contemplated thereunder or hereunder, including, without limitation, (i) any claim or Cause of Action seeking avoidance, whether under chapter 5 of the Bankruptcy Code, any applicable Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or other similar state statute, common law or otherwise (collectively, the "***Avoidance Actions***"), (ii) any so-called "lender liability" or equitable subordination claims or defenses, (iii) any claims or Causes of Action arising under the Bankruptcy Code, (iv) any claims or Causes of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery or any other challenge arising under the Bankruptcy Code or applicable non-bankruptcy law with respect to the DIP Liens, the DIP Superpriority Claims, the DIP Obligations, the DIP Loan Documents or the DIP Collateral, or (v) any claim or Cause of Action with respect to the validity, enforceability, extent, amount, perfection or priority of the DIP Liens, the DIP Superpriority Claims, the DIP Obligations or the DIP Loan Documents; *provided, however,* that nothing contained in this underline(clause (c)) shall relieve the DIP Secured Parties from fulfilling any of their commitments under the DIP Loan Agreements.

F.     *Debtors' Stipulations, Releases and Acknowledgements Regarding Prepetition Secured Parties.* In requesting the DIP Facilities and the use of Cash Collateral, and in exchange for and as a material inducement to the DIP Secured Parties to provide the DIP Facilities, and in exchange for and in recognition of the priming of the Prepetition Liens and the consent (and/or deemed consent) of the Prepetition Secured Parties to the use of their Cash Collateral (in each case,

as set forth in this Final Order), the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree as follows (in each case, without limitation to the rights of the Official Committee or any other party in interest to the extent set forth in paragraph 25 of this Final Order) (collectively, the admissions, stipulations, and acknowledgments and agreements set forth in this paragraph F, the "***Stipulations***"):

        (a)    *Prepetition ABL Facility.*

        (i)    *Prepetition ABL Credit Agreement.* Pursuant to that certain *Amended and Restated Credit Agreement*, dated as of August 2, 2019 (as amended, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "***Prepetition ABL Loan Agreement***", and together with all other agreements, guarantees, pledge, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, recorded and/or delivered in connection therewith, including, without limitation, the "Loan Documents" (as defined in the Prepetition ABL Loan Agreement) and the Prepetition ABL/Notes Intercreditor Agreement (as defined below), collectively, the "***Prepetition ABL Loan Documents***"), by and among TPC, as the Lead Borrower, Holdings, as guarantor, and the other Debtors as co-Borrowers, (collectively, the "***Prepetition ABL Loan Parties***"), Bank of America, N.A., as administrative agent and collateral agent (in such capacity, the "***Prepetition ABL Agent***"), and the lenders party thereto from time to time (collectively, the "***Prepetition ABL Lenders***", and together with the Prepetition ABL Agent, and any affiliates thereof that provide bank products secured pursuant to the Prepetition ABL Loan Documents, the "***Prepetition ABL Secured Parties***"), the Prepetition ABL Lenders provided a revolving credit facility (the "***Prepetition ABL Facility***") to the Prepetition ABL Loan Parties. Pursuant to the Prepetition ABL Loan Documents, Holdings, among other things, unconditionally and irrevocably guaranteed, on a joint and several basis, the payment in full in cash of all of the Prepetition ABL Secured Obligations (as defined below).

        (ii)    *Prepetition ABL Secured Obligations.* As of the Petition Date, the Prepetition ABL Loan Parties were justly and lawfully indebted to the Prepetition ABL Secured Parties, on a joint and several basis, without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of not less than $105.5 million on account of principal amounts outstanding under the Prepetition ABL Facility, *plus* accrued but unpaid interest (including default interest) thereon, *plus* $51,000.00 under the letter of credit issued and outstanding thereunder, *plus* all fees, costs, expenses (including attorneys', financial advisors' and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), including all "Secured Obligations" (as defined in the Prepetition ABL Loan Agreement), and all other amounts that may be due or owing or secured under the Prepetition ABL Loan Documents, including bank product obligations (collectively, the "***Prepetition ABL Secured Obligations***").

(iii)    *Prepetition ABL Liens.* Pursuant to the Prepetition ABL Loan Documents, each of the Prepetition ABL Loan Parties granted to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Lenders, valid and properly perfected continuing liens and security interests in (the "***Prepetition ABL Liens***") substantially all of the assets of the Prepetition ABL Loan Parties (excluding certain real estate), including, without limitation, all "Collateral" (as defined in the Prepetition ABL Loan Agreement) (collectively, the "***Prepetition ABL Collateral***").

(b)    *Prepetition Senior Priority Notes.*

(i)    *10.875% Senior Secured Notes due 2024.* Pursuant to that certain Indenture, dated as of February 2, 2021, as amended by that certain First Supplemental Indenture, dated as of February 22, 2022 (the "***First Supplemental Indenture***"), as further amended by that certain Second Supplemental Indenture, dated as of March 2, 2022 (the "***Second Supplemental Indenture***") and as further amended by that certain Third Supplemental Indenture, dated as of March 11, 2022 (the "***Third Supplemental Indenture***", and together with the First Supplemental Indenture and the Second Supplemental Indenture, the "***Supplemental Indentures***") (as further amended, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "***Prepetition Senior Priority Notes Indenture***", and together with all other agreements, guarantees, pledge, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, recorded and/or delivered in connection therewith, including, without limitation, the "Note Documents" (as defined in the Prepetition Senior Priority Notes Indenture) and the Prepetition Intercreditor Agreements (as defined below), collectively, the "***Prepetition Senior Priority Notes Loan Documents***"), among TPC, as the Issuer, Holdings and the other guarantors party thereto (the "***Prepetition Senior Priority Notes Guarantors***", and together with the Borrower, the "***Prepetition Senior Priority Notes Loan Parties***"), and U.S. Bank Trust Company, National Association (successor in interest to U.S. Bank National Association), as indenture trustee and collateral agent (in such capacities, the "***Prepetition Senior Priority Notes Trustee***"), the Issuer issued (i) 10.875% senior secured notes due 2024 (the "***Prepetition Senior Priority Initial Notes***", and the holders thereof, the "***Prepetition Senior Priority Initial Noteholders***") on February 2, 2021, (ii) additional 10.875% senior secured notes due 2024 (the "***Prepetition Senior Priority Bridge Notes***") on March 2, 2022, and (iii) additional 10.875% senior secured notes due 2024 (the "***Prepetition Senior Priority Second Bridge Notes***"; together with the Prepetition Senior Priority Bridge Notes, the "***Prepetition Senior Priority Additional Notes***"; together with the Prepetition Initial Senior Priority Notes, the "***Prepetition Senior Priority Notes***"; and the holders of such Prepetition Senior Priority Notes, the "***Prepetition Senior Priority Noteholders***" and together with the Prepetition Senior Priority Notes Trustee, the "***Prepetition Senior Priority Notes Secured Parties***") on March 11, 2022. Pursuant to the Prepetition Senior Priority Notes Loan Documents, each of the Prepetition Senior Priority Notes Guarantors, among other things, unconditionally and irrevocably guaranteed, on a joint and several basis, the payment in full in cash of all of the Prepetition Senior Priority Notes Secured Obligations (as defined below).

(ii)     *Prepetition Senior Priority Notes Secured Obligations*. As of the Petition Date, the Prepetition Senior Priority Notes Loan Parties were justly and lawfully indebted to the Prepetition Senior Priority Notes Secured Parties, on a joint and several basis, without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of not less than $205.5 million on account of principal amounts outstanding under the Prepetition Senior Priority Notes, *plus* accrued but unpaid interest (including default interest) thereon, *plus* not less than $19.9 million in Redemption Premium (as defined in the Prepetition Senior Priority Notes Indenture), *plus* all fees, costs, expenses (including attorneys', financial advisors' and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), including all "Notes Obligations" (as defined in the Prepetition Senior Priority Notes Indenture) and all other amounts that may be due or owing under the Prepetition Senior Priority Notes Loan Documents (collectively, the "***Prepetition Senior Priority Notes Secured Obligations***").

(iii)    *Prepetition Senior Priority Notes Liens.* Pursuant to the Prepetition Senior Priority Notes Loan Documents, the Prepetition Senior Priority Notes Loan Parties (other than Holdings) granted to the Prepetition Senior Priority Notes Trustee, for the benefit of itself and the Prepetition Senior Priority Noteholders, properly perfected continuing liens and security interests in (collectively, the "***Prepetition Senior Priority Notes Liens***") substantially all of the assets of such Prepetition Senior Priority Notes Loan Parties, including, without limitation, all "Collateral" (as defined in the Prepetition Senior Priority Notes Indenture) (the "***Prepetition Senior Priority Notes Collateral***").

(c)     *Prepetition Junior Priority Notes.*

(i)     *10.50% Senior Secured Notes due 2024.* Pursuant to that certain Indenture, dated as of August 2, 2019 as amended by that certain First Supplemental Indenture dated as of February 2, 2021, and as further amended by that certain Second Supplemental Indenture dated as of February 22, 2022 (as further amended, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "***Prepetition Junior Priority Notes Indenture***", and together with all other agreements, guarantees, pledge, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, recorded and/or delivered in connection therewith, including, without limitation, the "Note Documents" (as defined in the Prepetition Junior Priority Notes Indenture) and the Prepetition Intercreditor Agreements, collectively, the "***Prepetition Junior Priority Notes Loan Documents***"), among TPC, as the Issuer, Holdings and the other guarantors party thereto (the "***Prepetition Junior Priority Notes Guarantors***", and together with the Borrower, the "***Prepetition Junior Priority Notes Loan Parties***"), and U.S. Bank Trust Company, National Association (successor in interest to U.S. Bank National Association), as indenture trustee and collateral agent (in such capacities, the "***Prepetition Junior Priority Notes Trustee***"), the Issuer issued 10.50% senior secured notes due 2024 (the "***Prepetition Junior Priority Notes***", and the holders thereof, the "***Prepetition Junior Priority Noteholders***", and together with the Prepetition Junior Priority Notes Trustee, the "***Prepetition Junior Priority Notes Secured Parties***"). Pursuant to the Prepetition Junior Priority Notes Loan Documents, each of the Prepetition Junior Priority Notes Guarantors, among other things, unconditionally

and irrevocably guaranteed, on a joint and several basis, the payment in full in cash of all of the Prepetition Junior Priority Notes Secured Obligations (as defined below).

(ii)    *Prepetition Junior Priority Notes Secured Obligations*. As of the Petition Date, the Prepetition Junior Priority Notes Loan Parties were justly and lawfully indebted to the Prepetition Junior Priority Notes Secured Parties, on a joint and several basis, without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of not less than $930 million on account of principal amounts outstanding under the Prepetition Junior Priority Notes, *plus* accrued but unpaid interest (including default interest) thereon, *plus* not less than $73.2 million in Redemption Premium (as defined in the Prepetition Junior Priority Notes Indenture), *plus* all fees, costs, expenses (including attorneys', financial advisors' and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), including all "Notes Obligations" (as defined in the Prepetition Junior Priority Notes Indenture), and all other amounts that may be due or owing under the Prepetition Junior Priority Notes Loan Documents (collectively, the "***Prepetition Junior Priority Notes Secured Obligations***").

(iii)    *Prepetition Junior Priority Notes Liens.* Pursuant to the Prepetition Junior Priority Notes Loan Documents, the Prepetition Junior Priority Notes Loan Parties (other than Holdings) granted to the Prepetition Junior Priority Notes Trustee, for the benefit of itself and the Prepetition Junior Priority Noteholders, properly perfected continuing liens and security interests in (collectively, the "***Prepetition Junior Priority Notes Liens***") substantially all of such Prepetition Junior Priority Loan Parties' assets, including, without limitation, all "Collateral" (as defined in the Prepetition Junior Priority Notes Indenture)(the "***Prepetition Junior Priority Notes Collateral***").

(d)    *Forbearance Agreement.*

(i)    On February 3, 2022, the Prepetition Senior Priority Notes Loan Parties, the Prepetition Junior Priority Notes Loan Parties, certain Prepetition Senior Priority Noteholders and certain Prepetition Junior Priority Noteholders (collectively, the "***Forbearing Noteholders***") entered into a forbearance agreement (as subsequently amended on March 16, 2022, pursuant to that certain *Amendment No. 1 to Forbearance Agreement*, on April 10, 2022, pursuant to that certain *Amendment No. 2 to Forbearance Agreement*, on April 28, 2022, pursuant to that certain *Amendment No. 3 to Forbearance Agreement,* and on May 11, 2022, pursuant to that certain *Amendment No. 4 to Forbearance Agreement*, and on May 23, 2022 via email correspondence, the "***Forbearance Agreement***"), pursuant to which the Forbearing Noteholders agreed to, among other things, (A) temporarily forbear from exercising rights and remedies with respect to the Specified Defaults (as defined therein), (B) consent to certain supplemental indentures with respect to the Prepetition Senior Priority Notes and the Prepetition Junior Priority Notes to allow for the Borrower to issue additional Prepetition Senior Priority Notes and (C) provide a commitment for the purchase of such additional Prepetition Senior Priority Notes.

(ii)    In connection with the Forbearance Agreement, on March 16, 2022, April 10, 2022, April 28, 2022, May 11, 2022 and May 23, 2022, the Prepetition ABL Loan Parties and the Prepetition ABL Agent entered into those certain "Consent Agreements."

(e)    *Certain Definitions.*

(i)    "***Prepetition Agents***" means the Prepetition ABL Agent, the Prepetition Senior Priority Notes Trustee and the Prepetition Junior Priority Notes Trustee, in their respective capacities as such.

(ii)    "***Prepetition Collateral***" means the Prepetition ABL Collateral, the Prepetition Senior Priority Notes Collateral and the Prepetition Junior Priority Notes Collateral, respectively.

(iii)    "***Prepetition Liens***" means the Prepetition ABL Liens, the Prepetition Senior Priority Notes Liens and the Prepetition Junior Priority Notes Liens, respectively.

(iv)    "***Prepetition Loan Documents***" means the Prepetition ABL Loan Documents, the Prepetition Senior Priority Notes Loan Documents and the Prepetition Junior Priority Notes Loan Documents, respectively.

(v)    "***Prepetition Loan Parties***" means the Prepetition ABL Loan Parties, the Prepetition Senior Priority Notes Loan Parties and the Prepetition Junior Priority Notes Loan Parties, respectively.

(vi)    "***Prepetition Notes Agents***" means the Prepetition Senior Priority Notes Trustee and the Prepetition Junior Priority Notes Trustee, in their respective capacities as such.

(vii)    "***Prepetition Notes Liens***" means the Prepetition Senior Priority Notes Liens and the Prepetition Junior Priority Notes Liens, respectively.

(viii)    "***Prepetition Notes Loan Documents***" means the Prepetition Senior Priority Notes Loan Documents and the Prepetition Junior Priority Notes Loan Documents, respectively.

(ix)    "***Prepetition Notes Secured Obligations***" means the Prepetition Senior Priority Notes Secured Obligations and the Prepetition Junior Priority Notes Secured Obligations, respectively.

(x)    *"**Prepetition Notes Secured Parties**"* means the Prepetition Senior Priority Notes Secured Parties and the Prepetition Junior Priority Notes Secured Parties, in their respective capacities as such.

(xi)    "***Prepetition Secured Obligations***" means the Prepetition ABL Secured Obligations, the Prepetition Senior Priority Notes Secured Obligations and the Prepetition Junior Priority Notes Secured Obligations, respectively.

(xii)    "*Prepetition Secured Parties*" means the Prepetition ABL Secured Parties, the Prepetition Senior Priority Notes Secured Parties and the Prepetition Junior Priority Notes Secured Parties, in their respective capacities as such.

(f)    *Validity and Enforceability of Prepetition Secured Obligations and Prepetition Liens.* As of the Petition Date, (i) the Prepetition Liens in the Prepetition Collateral (A) have been properly recorded and were valid, binding, enforceable, non-avoidable and fully perfected liens and security interests in the Prepetition Collateral, (B) were granted to or for the benefit of the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or the financial commitments and other financial accommodations or consideration secured or obtained thereby, and (C) are senior with priority over any and all other liens on or security interests in the Prepetition Collateral, subject only to (1) liens and security interests that were expressly permitted to be incurred under the Prepetition Loan Documents (solely to the extent such permitted liens and security interests were (x) in existence on the Petition Date, (y) valid, non-avoidable and properly perfected as of the Petition Date (or were properly perfected subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), and (z) senior in priority to the Prepetition Liens (the "*Permitted Prior Liens*")),[7] and (2) the relative rights and priorities set forth in the Prepetition Intercreditor Agreements; (ii) the Prepetition Secured Obligations constitute legal, valid, non-avoidable and binding obligations of each of the Prepetition Loan Parties, enforceable in accordance with the terms of the Prepetition Loan Documents (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code); (iii) no portion of the Prepetition Liens or the Prepetition Secured Obligations, and no payments made at any time to any of the Prepetition Secured Parties, is subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action, including, without limitation, any Avoidance Action or any claim or Cause of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery, or any other claim or Cause of Action of any nature or description, whether arising under the Bankruptcy Code, applicable non-bankruptcy law, any other domestic or foreign statute, law, rule or regulation or otherwise, in each case, that may be asserted by the Debtors, their respective estates or any other person or entity; and (iv) the Prepetition Secured Obligations constitute allowed secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code against each of the Prepetition Loan Parties and their respective estates.

---

[7]    Nothing contained herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing contained herein shall prejudice the rights of any party in interest, including, but not limited to the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, or the Official Committee, in each case, to the extent such party has standing to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien (subject to the terms of this Final Order). For the purposes hereof, any alleged claim arising or asserted as a right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) is not a Permitted Prior Lien.

(g)    *Enforceability of the Prepetition Intercreditor Agreements.*

(i)    The Prepetition ABL Agent and the Prepetition Notes Agents were party to that certain Intercreditor Agreement dated as of August 2, 2019 (as amended, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "***Prepetition ABL/Notes Intercreditor Agreement***"), which set forth the relative payment and lien priorities and other rights and remedies of the Prepetition ABL Secured Parties, on the one hand, and the Prepetition Notes Secured Parties, on the other hand, with respect to "Common Collateral" (as defined therein). From and after the DIP Intercreditor Effective Date (defined below), the Prepetition ABL/Notes Intercreditor Agreement was deemed amended and modified on an interim basis pursuant to the Interim Order and on a final basis pursuant to this Final Order, as more fully set forth in paragraph 37 of this Final Order.

(ii)    The Prepetition Senior Priority Notes Trustee and the Prepetition Junior Priority Notes Trustee are party to that certain Intercreditor Agreement dated as of February 2, 2021 (as amended, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "***Prepetition Notes Intercreditor Agreement***", and together with the Prepetition ABL/Notes Intercreditor Agreement, the "***Prepetition Intercreditor Agreements***", and the Prepetition Intercreditor Agreements together with the DIP Intercreditor Agreement, the "***Intercreditor Agreements***"), which sets forth the relative payment and lien priorities and other rights and remedies of the Prepetition Senior Priority Notes Secured Parties and the Prepetition Junior Priority Notes Secured Parties with respect to "Common Collateral" (as defined therein).

(iii)    Pursuant to section 510(a) of the Bankruptcy Code, the Prepetition Intercreditor Agreements, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Notes Loan Documents, (A) shall remain in full force and effect, (B) continue to govern the relative obligations, priorities, rights, and remedies of the Prepetition Notes Secured Parties with respect to any shared or common Prepetition Collateral, and (C) shall not be deemed to be amended, altered, or modified by the terms of this Final Order except to the extent expressly set forth herein; *provided*, *however*, from and after the DIP Intercreditor Effective Date, the DIP Intercreditor Agreement was deemed pursuant to the Interim Order and shall continue to govern the relative obligations, priorities, rights and remedies of the Prepetition Notes Secured Parties, on the one hand, and DIP Secured Parties, on the other hand, with respect to the Prepetition Collateral and the DIP Collateral.

(h)    *No Claims, Defenses, or Causes of Action.* As of the date hereof, there exist no claims, defenses or any other Cause of Action of any nature or description whatsoever that may be asserted by the Debtors, their respective estates, predecessors, successors and assigns, against any of the Prepetition Secured Parties or any of their respective Representatives, in each case, arising from, in connection with, or related to the Interim Order, this Final Order, the Prepetition Liens, the Prepetition Secured Obligations, the Prepetition Loan Documents or the Prepetition Collateral.

(i)     *Releases.* Effective as of the date of entry of the Interim Order, the Debtors, on behalf of themselves and their respective estates, hereby absolutely, unconditionally and irrevocably release and forever discharge and acquit the Prepetition Secured Parties and each of their respective Representatives (in their capacities as such) of and from any and all actions, causes of action, claims, counter-claims, cross-claims, defenses, accounts, objections, challenges, offsets or setoff, demands, liabilities, responsibilities, disputes, remedies, indebtedness, obligations, guarantees, rights, interests, indemnities, assertions, allegations, suits, controversies, proceedings, losses, damages, injuries, reimbursement obligations, attorneys' fees, costs, expenses or judgments of every type, whether known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, rule or regulation or by contract, of every nature or description whatsoever, that the Debtors, their estates, predecessors, successors and assigns at any time had, now have or that their successors and assigns may have against any of the Prepetition Secured Parties and their respective Representatives for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time prior to the date of this Final Order, in each case, arising under, in connection with or related to the Interim Order, this Final Order, the Prepetition ABL Facility, the Prepetition Senior Priority Notes, the Prepetition Junior Priority Notes, the Prepetition Liens, the Prepetition Collateral, the Prepetition Secured Obligations, Adequate Protection Obligations, the Prepetition Loan Documents, or the transactions contemplated thereunder or hereunder, including, without limitation, (i) any Avoidance Actions, (ii) any so-called "lender liability" or equitable subordination claims or defenses, (iii) any claims or Causes of Action arising under the Bankruptcy Code, (iv) any claims or Causes of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery or any other challenge arising under the Bankruptcy Code or applicable non-bankruptcy law with respect to the Prepetition Liens, the Prepetition Collateral, the Prepetition Secured Obligations or the Prepetition Loan Documents, or (v) any claim or Cause of Action with respect to the validity, enforceability, extent, amount, perfection or priority of the Prepetition Liens, the Prepetition Secured Obligations, the Prepetition Collateral or the Prepetition Loan Documents.

(j)     *Cash Collateral.* Any and all of the Debtors' cash, whether existing on the Petition Date or thereafter, wherever located, including, without limitation, all cash, cash equivalents and other amounts on deposit or maintained by the Debtors in any accounts with any depositary institution (whether as original Prepetition Collateral, arising from the sale or other disposition of Prepetition Collateral, or proceeds of other Prepetition Collateral), constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "***Cash Collateral***").

(k)     *Default.* Prior to the Petition Date, the Prepetition Loan Parties were in default under the Prepetition Notes Loan Documents (subject to the Forbearance Agreement). As of the Petition Date, the aforementioned defaults are continuing, and the Prepetition Loan Parties are also in default under the Prepetition Loan Documents on account of the commencement of the Chapter 11 Cases.

**G.      Findings Regarding Corporate Authority.**

(a)      Each of the Debtors has all requisite power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

**H.      Findings Regarding DIP Facilities and Use of Cash Collateral.**

(a)      *Good Cause*. Good and sufficient cause has been shown for the entry of this Final Order.

(b)      *Need for Postpetition Financing and Use of Cash Collateral*. The Debtors have an immediate and critical need to use Cash Collateral and to obtain the DIP Facilities, in each case, on a final basis, in order to, among other things, permit the orderly continuation and operation of their businesses, maintain business relationships with customers, vendors and suppliers, make payroll, pay the costs of administering the Chapter 11 Cases and satisfy other working capital and operational needs of the Debtors, in the case of each of the foregoing, in accordance with and subject to the terms and conditions of this Final Order and the DIP Loan Documents, including the Approved Budget (subject to Permitted Variances). The Debtors' access to sufficient working capital and liquidity through the incurrence of loans and other financial accommodations under the DIP Facilities and the use of the Prepetition Secured Parties' Cash Collateral are necessary and vital to preserve and maintain the going concern values of the Debtors.

(c)      *No Credit Available on More Favorable Terms.* The Debtors are unable to obtain financing or other financial accommodations from sources other than the DIP Lenders on terms more favorable than those provided under the DIP Facilities, the DIP Loan Documents and this Final Order. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors are also unable to obtain adequate secured credit for money borrowed under sections 364(c)(1), 364(c)(2)

-19-

and 364(c)(3) of the Bankruptcy Code without the Debtors granting (a) the DIP Liens on all DIP Collateral, (b) the DIP Superpriority Claims, (c) the rights, benefits and protections to the DIP Secured Parties, and (d) the Adequate Protection Liens, Adequate Protection Claims and other Adequate Protection Obligations (each as defined below) to the Prepetition Secured Parties, in the case of each of the foregoing, upon the terms and conditions set forth herein and in the DIP Loan Documents. After considering all available alternatives, the Debtors have properly concluded, in the exercise of their sound business judgment, that the DIP Facilities represent the best source of debtor-in-possession financing available to them at this time and is in the best interests of all of their stakeholders.

(d)     *Use of Proceeds of DIP Facilities and Cash Collateral*. As a condition to providing the DIP Facilities and their consent to the use of Cash Collateral, each of the DIP Secured Parties and the Prepetition Secured Parties (as applicable) require, and the Debtors have agreed, that all proceeds of the DIP Loans and all Cash Collateral shall be used and/or applied solely for the purposes expressly permitted in the Approved Budget, including, without limitation, (i) to pay the costs of administration of the Chapter 11 Cases, (ii) for general corporate and working capital purposes, (iii) to pay adequate protection payments to the extent set forth in this Final Order, (iv) to consummate the ABL Refinancing in accordance with the Prepetition ABL Payoff Letter, and (v) to pay professional fees and expenses in accordance with this Final Order, in the case of each of the foregoing, in accordance with and subject to the terms and conditions of this Final Order and the DIP Loan Documents, including the Approved Budget (subject to Permitted Variances).

(e)     *Adequate Protection*. Pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, the Prepetition Secured Parties are entitled to adequate protection, as set forth in this Final Order and the DIP Loan Documents, of their respective liens and interests in

Prepetition Collateral (including Cash Collateral) in an amount equal to the aggregate diminution in value of the Prepetition Secured Parties' respective liens and interests in the Prepetition Collateral (including Cash Collateral) resulting from (i) the use, sale or lease by the Debtors of the Prepetition Collateral (including Cash Collateral), (ii) the imposition of the automatic stay, (iii) the subordination of the Prepetition Liens and the Prepetition Secured Obligations to the Carve Out, the DIP Liens and the DIP Obligations (in each case, as set forth in this Final Order), and/or (vi) any other reason for which adequate protection may be granted under the Bankruptcy Code (collectively, the "***Diminution in Value***"); *provided, however*, that nothing in this Final Order shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral or other Prepetition Collateral other than on the terms expressly set forth in this Final Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the DIP Collateral or the Prepetition Collateral (whether senior, *pari passu* or junior) other than on the terms expressly set forth in this Final Order, or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties (subject to the Prepetition Intercreditor Agreements) to seek new, different or additional adequate protection after the date hereof or assert the interests of any of the Prepetition Secured Parties, or prejudice the right of the Debtors, the Official Committee or any other party in interest to contest any such request for new, different, or additional adequate protection or any such assertion. Based on the Motion, the First Day Declaration, the DIP Declarations and the other evidence filed in support of the Motion, and the record presented to the Court in connection with the Interim Hearing and the Final Hearing, the terms of the adequate protection arrangements and the use of Prepetition Collateral (including Cash Collateral) set forth herein are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair

consideration for the use of Prepetition Collateral (including Cash Collateral); *provided, further*, that (i) the right to adequate protection in regard to the Prepetition ABL Secured Parties immediately and automatically ceased and the Adequate Protection Obligations granted under the Interim Order to the Prepetition ABL Secured Parties were deemed immediately and automatically terminated and released upon the repayment of the "Payoff Amount" (as defined in the Prepetition ABL Payoff Letter) in accordance with the terms of the Prepetition ABL Payoff Letter, which occurred on June 6, 2022 (the "***ABL Refinancing Effective Date***"), and (ii) the right to adequate protection in regard to the Prepetition Senior Priority Notes Secured Obligations shall immediately and automatically cease and the Adequate Protection Obligations granted under the Interim Order or this Final Order to the Prepetition Senior Priority Notes Secured Parties shall be deemed immediately and automatically terminated and released as and when the Prepetition Senior Priority Notes are indefeasibly deemed Paid in Full (as defined below).[8]

(f)      *Consent*. The Prepetition Secured Parties have consented to, or are deemed to have consented pursuant to the provisions of the Prepetition Intercreditor Agreements, to the Debtors' use of Prepetition Collateral (including Cash Collateral) solely to the extent expressly permitted under the Approved Budget (subject to Permitted Variances), the Debtors' entry into the DIP Facilities, the incurrence of the DIP Liens, the DIP Obligations, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims and the other Adequate Protection

---

[8]      For the avoidance of doubt, the adequate protection provided to the Prepetition Senior Priority Notes Secured Parties in respect of their liens and interests in the Prepetition Collateral (including Cash Collateral) shall be tolled upon entry of this Final Order. If no Roll Up Challenge is timely and properly filed by the Official Committee prior to the Challenge Deadline in accordance with paragraphs 2(d) and 25 hereof (or if a Roll Up Challenge is timely and properly filed by the Official Committee by the Challenge Deadline in accordance with paragraphs 2(d) and 25 hereof, but the Court does not rule in favor of the Official Committee, and such ruling becomes final and non-appealable), then such adequate protection shall automatically terminate as the Prepetition Senior Priority Notes shall then be deemed to be fully satisfied and indefeasibly extinguished; if any such Roll Up Challenge by the Official Committee is successful, such adequate protection shall be deemed to be in effect, retroactive to the date of entry of this Final Order, to the extent any portion of the Roll Up is unwound and the Prepetition Senior Priority Notes (or an equivalent thereof) revert to being Prepetition Secured Obligations of any of the Debtors.

Obligations, in each case, in accordance with and subject to the terms and conditions set forth in this Final Order and the DIP Loan Documents.

(g)    *Limitation on Charging Expenses against Collateral; Section 552(b) Waiver.* As a material inducement to the DIP Secured Parties' agreement to provide the DIP Facilities, and in exchange for (i) the DIP Secured Parties' agreement to subordinate their DIP Liens to the Carve Out and Permitted Prior Liens, (ii) the Prepetition Secured Parties' consent (or deemed consent) to the subordination of their Prepetition Liens and Adequate Protection Liens to the DIP Liens and the Carve Out, in each case, as set forth in this Final Order, and (iii) the Prepetition Secured Parties' consent (or deemed consent) to the use of Prepetition Collateral (including Cash Collateral), (a) the Debtors have waived their right to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Secured Parties or the Prepetition Secured Parties upon, the DIP Collateral or the Prepetition Collateral (as applicable), whether pursuant to section 506(c) of the Bankruptcy Code or otherwise, (b) subject to the proviso contained in paragraph 28 of this Final Order, the DIP Secured Parties and the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral (as applicable), and (c) each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Parties or the Prepetition Collateral.

(h)    *Proper Exercise of Business Judgment.* Based on the Motion, the First Day Declaration, the DIP Declarations, and the record presented to the Court at the Interim Hearing and the Final Hearing, (a) the terms of the DIP Facilities as modified by this Final Order, (b) the

terms of adequate protection granted to the Prepetition Notes Secured Parties hereunder, (c) the terms on which the Debtors used Prepetition Collateral (including Cash Collateral) on an interim basis pursuant to the Interim Order and may continue to use Prepetition Collateral (including Cash Collateral) on a final basis pursuant to this Final Order, (i) were negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties and the Prepetition Secured Parties, (ii) are fair, reasonable, and the best available to the Debtors under the circumstances, (iii) reflect the Debtors' exercise of prudent business judgment, and (iv) are supported by reasonably equivalent value and fair consideration. Absent access to the DIP Facilities and the ability to continue to use Cash Collateral upon the terms set forth herein, the Debtors, their estates, their creditors and other parties-in-interest will be seriously and irreparably harmed.

(i)     *Good Faith.* The DIP Facilities and the terms of the DIP Loan Documents, the Interim Order, and this Final Order have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, the Prepetition Secured Parties and each of their respective Representatives, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Facilities, the DIP Loan Documents, the Interim Order, and this Final Order, including, without limitation, all loans, advances, extensions of credit and other financial accommodations made to and guarantees issued by the Debtors pursuant to the DIP Loan Documents, shall each be deemed to have been extended by the DIP Secured Parties, the Prepetition Secured Parties (as applicable) and each of their respective affiliates, in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by sections 364(e) of the Bankruptcy Code, and each of the claims, liens and security interests, rights, remedies, benefits and protections granted to the DIP Secured Parties and the Prepetition Secured Parties (and each of their successors and assigns thereof) pursuant to the

Interim Order, this Final Order and the DIP Loan Documents (including, without limitation, all DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Claims and Adequate Protection Obligations), shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is reversed or modified, on appeal or otherwise.

(j)     *Refinancing of Prepetition ABL Secured Obligations*. The full and immediate payoff, in full, of the Prepetition ABL Secured Obligations with the proceeds of borrowings under the ABL DIP Loan Facility in accordance with the Interim Order (but subject to the provisions of paragraph 25 of this Final Order) and the Prepetition ABL Payoff Letter was necessary because the Prepetition ABL Secured Parties have not otherwise consented to the extension of postpetition credit to fund the Debtors' critical working capital needs. Moreover, as set forth in the Del Genio Declaration, in light of the aggregate net availability to the Debtors under the ABL DIP Loan Facility for the period of the duration of the Approved Budget, the availability of the ABL DIP Loan Facility confers a material benefit upon the Debtors.

(k)     *Roll Up*. The Roll Up is an inextricable component of the Term DIP Facility, and the Prepetition Senior Priority Noteholders and the Prepetition Junior Priority Noteholders would not have otherwise consented to the use of Prepetition Collateral (including Cash Collateral) or the subordination of their Prepetition Liens to the DIP Liens and the Carve Out (in each case as set forth in this Final Order), and the Term DIP Secured Parties would not otherwise be willing to provide the Term DIP Facility or extend credit to the Debtors thereunder, without the inclusion of the Roll Up. Moreover, the Roll Up will enable the Debtors to obtain necessary financing in order to administer these Chapter 11 Cases and fund their operations.

(l)     *Initial Budget*. The Debtors have prepared and delivered to the DIP Secured Parties the initial itemized cash flow forecast set forth on **Exhibit 1** attached to the Interim Order (the "***Initial Budget***", as updated by the Debtors and approved by the Term DIP Required Lenders (as and to the extent required under the Term DIP Loan Agreement) and the ABL DIP Required Lenders (as and to the extent required under the ABL DIP Loan Agreement) from time to time in accordance with the terms of this Final Order and the DIP Loan Documents (as applicable), the "***Approved Budget***"), reflecting, on a line item, cumulative and aggregate basis, (i) the Debtors' projected cash receipts expected to be collected, and necessary disbursements and expenditures (including debt service costs) expected to be incurred or made, by the Debtors, in each case, for each calendar week during the period from the calendar week ending on the Friday of the week in which the Petition Date occurs through and including the end of the thirteenth (13th) calendar week thereafter, (ii) the sum of weekly unused availability under the DIP Facilities, plus unrestricted cash on hand, (iii) the weekly outstanding principal balance of amounts outstanding under the DIP Facilities, and (iv) a professional fee accrual budget with respect to the anticipated professional fees and expenses to be incurred by each of the Professional Persons (as defined below) during such period. The Initial Budget is an integral part of the Interim Order (for purposes of the interim period) and this Final Order, and the DIP Secured Parties and the Prepetition Secured Parties relied, in part, upon the Debtors' agreement to comply (subject to Permitted Variances) with the Approved Budget, in determining to enter into the DIP Facilities and to allow the Debtors' use of proceeds of the DIP Facilities and Cash Collateral in accordance with the terms of the Interim Order (for purposes of the interim period), this Final Order and the DIP Loan Documents.

(m)     *Notice*. Notice of the Motion, the Interim Hearing and the Final Hearing constitutes due, sufficient and appropriate notice and complies with section 102(1) of the

Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and the Local Bankruptcy Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing, the Final Hearing or the entry of this Final Order shall be required.

(n)    *Immediate Entry*. The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Unless the relief set forth in this Final Order is granted, the Debtors' estates will be irreparably harmed. Consummation of the DIP Facilities and the use of Prepetition Collateral (including Cash Collateral) upon the terms set forth in this Final Order and the DIP Loan Documents are necessary to preserve and maximize the value of, and are in the best interests of, the Debtors' estates. Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) and the Local Bankruptcy Rules. The Motion and this Final Order comply with the requirements of Bankruptcy Local Rule 4001-1(b).

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the First Day Declaration and the DIP Declarations, the evidence adduced at the Interim Hearing and the Final Hearing and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Motion Granted*. The Motion is hereby granted, on a final basis, upon the terms and conditions set forth in this Final Order and the DIP Loan Documents. Any objections or other statements with respect to any of the relief set forth in this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights inconsistent with this Final Order, are hereby denied and overruled. This Final Order shall become effective and enforceable immediately upon its entry.

2. *Authorization of DIP Facilities and DIP Loan Documents.*

(a)     *Authorization of DIP Loan Documents.* The DIP Facilities were approved pursuant to the Interim Order and are hereby approved on a final basis. The Debtors were, pursuant to the Interim Order, and are hereby authorized on a final basis, to (i) execute, deliver and perform all of their obligations under the DIP Loan Documents and this Final Order; and (ii) execute, deliver and perform under any and all other instruments, certificates, agreements and other documents (including, without limitation, the execution and/or recordation of collateral, pledge and security documents, mortgages and deeds of trust (if applicable) and financing statements), and perform all such other and further acts that, may be necessary, required or desirable for the Debtors to perform their obligations under the DIP Facilities, the DIP Loan Documents and this Final Order and to implement the transactions contemplated thereunder and hereunder. All actions taken prior to the date hereof by the Debtors, the DIP Secured Parties, the Prepetition Secured Parties and the Debtors' claims agent in reliance upon or in connection with the Interim Order or this Final Order are hereby ratified and approved.

(b)     *Authorization to Borrow.* The Debtors constituting borrowers under the DIP Facilities were pursuant to the Interim Order, and hereby are, authorized, on a final basis, to borrow, and the applicable Guarantors are hereby authorized, on a final basis, to guarantee, on a joint and several basis, such borrowers' obligations with respect to, (x) up to the principal amount of $85 million in New Money Term DIP Loans (plus applicable interest, premiums, fees (including professional fees and expenses), costs, expenses, charges and other amounts payable hereunder and under the Term DIP Loan Documents), subject to the terms and conditions (including any availability limitations and conditions precedent to such Term DIP Borrowing) set forth in the Term DIP Loan Documents and this Final Order, (y) up to the principal amount of $200 million

in ABL DIP Loans (plus applicable interest, premiums, fees (including professional fees and expenses), costs, expenses, charges and other amounts payable hereunder and under the ABL DIP Loan Documents), subject to the terms and conditions (including any borrowing base and availability limitations and conditions precedent to such ABL DIP Borrowing) set forth in the ABL DIP Loan Documents and this Final Order, and (z) the New Money Cash Out DIP Loans, as described in paragraph 2(e) hereof. The Debtors were, pursuant to the Interim Order, and hereby are, on a final basis, authorized to use the proceeds of all DIP Borrowings under the DIP Facilities and all Cash Collateral solely in the manner and for the purposes expressly permitted in the Approved Budget (subject to Permitted Variances), the DIP Loan Documents and this Final Order.

(c)      *DIP Roll Up Loans.* The Roll Up is hereby approved, and (A) upon entry of the Interim Order, approximately $59.3 million in obligations arising under the Prepetition Senior Priority Additional Notes (consisting of (i) $52.5 million of principal amounts outstanding thereunder, (ii) $1.7 million of accrued but unpaid interest thereon, and (iii) approximately $5.1 million of the Redemption Premium) were (subject to paragraph 2(d) hereof) automatically deemed "rolled up" and converted into the Term DIP Loan Facility, on a cashless (subject to paragraph 2(e) hereof) dollar for dollar basis, and were automatically deemed to be substituted and exchanged for, and deemed to be, Term DIP Loans for all purposes hereunder, and shall not be subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action of any nature or description whatsoever (subject to paragraph 2(d) of this Final Order), and (B) upon entry of this Final Order (subject to paragraph 2(e) hereof), the balance of the obligations arising under the Prepetition Senior Priority Notes (including all remaining principal amounts outstanding, the balance of the Redemption Premium, and all accrued but unpaid interest thereon through the date thereof) shall automatically be deemed "rolled up" and converted into the Term

DIP Loan Facility, on a cashless (subject to paragraph 2(d) hereof) dollar for dollar basis and shall automatically be deemed to be substituted and exchanged for, and shall be deemed to be, Term DIP Loans for all purposes hereunder, and shall not be subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action of any nature or description whatsoever (subject to paragraph 2(d) of this Final Order); *provided, however*, that Holdings shall be obligated on any payment obligations on account of the DIP Roll Up Loans only on an unsecured basis; *provided, further, however*, that the DIP Roll Up Loans shall only be secured by DIP Collateral that constituted Prepetition Collateral. Upon the (a) expiration of the Challenge Period (as defined below), and (b) the repayment in full in cash (as and to the extent required under paragraph 2(e) hereof) of the Prepetition Senior Priority Notes held by eligible Specified Prepetition Senior Priority Noteholders, all Prepetition Senior Priority Notes shall be deemed to be indefeasibly and irrevocably Paid in Full.[9.]

(d)  Notwithstanding anything contained in this Final Order or the DIP Loan Documents to the contrary, (A) the Roll Up is approved without prejudice to any and all rights of the Official Committee with requisite standing to seek to Challenge, in accordance with and subject to paragraph 2(d) and paragraph 25 of this Final Order, the validity, enforceability or perfection of the Prepetition Liens and the Prepetition Secured Obligations that are the subject of the Roll Up

---

[9]  For purposes hereof, the term "Paid in Full" or "Payment in Full" means the irrevocable and indefeasible payment in full in cash of all DIP Obligations or Prepetition Secured Notes Obligations, as the case may be, other than contingent indemnification and expense reimbursement obligations for which no claim or demand has been asserted, and all commitments thereunder have been terminated or expired; *provided, however*, for purposes hereof, the Prepetition Senior Priority Notes shall not be deemed "Paid in Full" until (a) the Challenge Period (as defined below) has expired, and (b) the Prepetition Senior Priority Notes held by eligible Specified Prepetition Senior Priority Noteholders are repaid in cash as and to the extent required under paragraph 2(e) hereof. For purposes of the Prepetition ABL/Notes Intercreditor Agreement and the DIP Intercreditor Agreement, the "ABL Obligations Payment Date" shall not be deemed to have occurred with respect to the ABL DIP Secured Obligations as a result of the occurrence of the ABL Refinancing and the refinancing of the Prepetition ABL Secured Obligations with the ABL DIP Secured Obligations.

(the "***Roll Up Challenge***"), it being understood that all rights, claims, counterclaims, cross-claims, defenses and remedies (contractual, equitable or otherwise) of each of the Debtors, the DIP Secured Parties and the Prepetition Secured Parties in connection with any such Roll Up Challenge are hereby expressly preserved, and (B) in the event the Court sustains a Roll Up Challenge, and such ruling becomes final and non-appealable, the Court shall fashion a remedy that the Court deems appropriate to give effect to the successful Roll Up Challenge, following notice and a hearing (which remedy may include, but not be limited to, unwinding or otherwise modifying the Roll Up) in the event the Prepetition Senior Priority Notes are rendered under-secured as a result of such successful Roll Up Challenge, and all rights and remedies of the Debtors, the Official Committee, the DIP Secured Parties and the Prepetition Secured Parties with respect to any such remedy and this Final Order are hereby expressly preserved.[10]

      (e)     *New Money Cash Out DIP Loans.* The Borrower is hereby authorized, on a final basis, to borrow, and the Guarantors are hereby authorized, on a final basis, to guarantee, on a joint and several basis, the Borrower's obligations with respect to, New Money Cash Out DIP Loans in an amount necessary to repay in cash, on a dollar for dollar basis, the Prepetition Senior Priority Additional Notes beneficially held by eligible Specified Prepetition Senior Priority Noteholders in connection with the Roll Up, up to a principal amount of New Money Term DIP Loans not to exceed approximately $24,752,917.00 in the aggregate (plus applicable interest, premiums, fees (including professional fees and expenses), costs, expenses, charges and other amounts payable hereunder and under the Term DIP Loan Documents), subject to the terms and conditions (including any availability limitations and conditions precedent to such Term DIP

---

[10]    For the avoidance of doubt references herein to the Official Committee's rights under paragraph 2(d) of this Final Order shall refer only to the Official Committee, and shall be without prejudice to and shall extend to the rights of the Official Committee under paragraph 25 hereof (subject to the limitations set forth therein).

Borrowing) set forth in the Term DIP Loan Documents and this Final Order. The Debtors, the Debtors' claims agent, the Term DIP Secured Parties, the Prepetition Senior Priority Noteholders and the Prepetition Senior Priority Notes Trustee are authorized and directed to take any and all actions as may be necessary or advisable to effectuate the New Money Cash Out DIP Loans, including the implementation of administrative procedures, in form and substance acceptable to the Term DIP Required Lenders and the Term DIP Administrative Agent, prescribing the process by which Specified Prepetition Senior Priority Noteholders must certify in writing that they are unable to effectuate a Roll Up of Prepetition Senior Priority Notes held by such entities due to limitations with respect to holding term loans in the governing documents or internal policies of such entities, and otherwise administering the New Money Cash Out DIP Loans (the "***Roll Up Cash Out Procedures***"), including, *inter alia*, prescribing the form of such certification, establishing the form of notice to Prepetition Senior Priority Noteholders and designating a deadline by which all such written certifications must be delivered to the Term DIP Administrative Agent and the Term DIP Required Lenders (the "***Certification Deadline***"), and all actions taken by the Debtors, the Debtors' claims agent, the Term DIP Secured Parties, the Prepetition Senior Priority Noteholders and the Prepetition Senior Priority Notes Trustee in reliance upon or in connection with such Roll Up Cash Out Procedures are hereby ratified and approved. Unless a Specified Prepetition Senior Priority Noteholder timely delivers its written certification to the Term DIP Administrative Agent and the Term DIP Required Lenders by the Certification Deadline in accordance with the Roll Up Cash Out Procedures, the Prepetition Senior Priority Notes beneficially held by such Prepetition Senior Priority Noteholder shall not be entitled to be repaid cash in connection with the Roll Up, and upon the expiration of the Certification Deadline, any

Prepetition Senior Priority Notes held by such entity shall automatically be deemed substituted and exchanged for DIP Roll Up Loans on a cashless dollar for dollar basis.

(f)    *Roll Up Process*. The Debtors, the Debtors' claims agent, the Term DIP Secured Parties, the Prepetition Senior Priority Noteholders and the Prepetition Senior Priority Notes Trustee are authorized and directed to take any and all actions reasonably requested by the Term DIP Required Lenders and any other actions as may be necessary or appropriate to effectuate the Roll Up of the Prepetition Senior Priority Additional Notes and the Prepetition Senior Priority Initial Notes into the Term DIP Loan Facility, including, without limitation, the assignment, transfer or designation of such Prepetition Senior Priority Additional Notes and Prepetition Senior Priority Initial Notes (i) into one or more contra-CUSIPs on DTC's ATOP, (ii) for DWAC withdrawal or (iii) pursuant to any alternative procedure that facilitates the cancellation of the Prepetition Senior Priority Notes in connection with the Roll Up (subject to paragraph 2(d) of this Final Order). The Debtors, the Debtors' claims agent, the Term DIP Secured Parties, the Prepetition Senior Priority Noteholders and the Prepetition Senior Priority Notes Trustee are authorized and directed to take such further actions as are necessary or appropriate to implement the Roll Up (subject, in the case of the Roll Up, to paragraph 2(d) of this Final Order).

(g)    *Refinancing of Prepetition ABL Secured Obligations*. Upon entry of the Interim Order and the satisfaction or waiver of all other closing conditions in the ABL DIP Loan Agreement, without any further action by the Debtors, the Court or any other party, the Debtors were (i) authorized to immediately borrow under the ABL DIP Loan Agreement the full amount necessary to fully and immediately repay or cash collateralize all Prepetition ABL Secured Obligations in the amounts and in the manner specified in the Prepetition ABL Payoff Letter, (ii) authorized to execute and perform under the Prepetition ABL Payoff Letter and (iii) authorized to

contemporaneously repay or cash collateralize all Prepetition ABL Secured Obligations in the amounts and in the manner specified in the Prepetition ABL Payoff Letter. On June 6, 2022, the Prepetition ABL Agent and its advisors received the Payoff Amount (as defined in the Prepetition ABL Payoff Letter) and the Debtors were deemed, as of such date, to have fully satisfied and repaid all Prepetition ABL Secured Obligations except to the extent set forth in the Prepetition ABL Payoff Letter (the "***ABL Refinancing***"), and such ABL Refinancing is hereby ratified and approved; *provided, however,* for the avoidance of doubt, solely for purposes of the Prepetition ABL/Notes Intercreditor Agreement and the DIP Intercreditor Agreement, the ABL Refinancing shall be deemed to be a refinancing and replacement of the Prepetition ABL Secured Obligations with the ABL DIP Obligations and shall not constitute an "ABL Obligations Payment Date" thereunder for the purposes of the DIP ABL Obligations. Immediately and automatically, upon the ABL Refinancing Effective Date, (1) all Prepetition ABL Secured Obligations (other than the "Specified LC Obligations", "Specified Bank Product Obligations" and "Continuing Obligations", each as defined and to the extent set forth in the Prepetition ABL Payoff Letter) and Adequate Protection Obligations (including, without limitation, the ABL Adequate Protection Claims) owing to the Prepetition ABL Secured Parties were deemed fully repaid and satisfied in full, (2) all liens and security interests in favor of the Prepetition ABL Secured Parties or in respect of the Prepetition ABL Secured Obligations (including, without limitation, the Prepetition ABL Liens and the ABL Adequate Protection Liens) were deemed released and terminated (other than liens on the "LC Cash Collateral" and "Bank Product Cash Collateral" in accordance with the Prepetition ABL Payoff Letter) and (3) all Prepetition ABL Loan Documents (other than the Prepetition ABL/Notes Intercreditor Agreement and the Prepetition ABL Payoff Letter, including, without limitation, provisions incorporated by reference therein) were deemed terminated.

(h)     The Term DIP Loan Amendment is hereby approved, and the Debtors and the Term DIP Secured Parties are hereby authorized to execute and perform under the Term DIP Loan Amendment and to take all actions necessary or desirable to implement the Term DIP Loan Agreement and the transactions contemplated therein.

3.      *DIP Fees and Expenses; Indemnification.* The Debtors are hereby authorized and directed to pay any and all (a) fees, premiums or other payments payable under the DIP Loan Documents (including those certain commitment letters dated as of May 31, 2022 and of May 31, 2022, respectively, and any separate letter agreements between any of the Debtors, on the one hand, and the DIP Agents and/or the DIP Lenders, on the other hand), including, without limitation, commitment payments, unused facility payments, early termination, prepayment or exit payments, unused facility payments, administrative agent's, collateral agent's or trustee's fees, or other amounts referred to therein, (b) amounts due (or that may become due) to the "Indemnitees" (as defined in the DIP Loan Agreements) in respect of the indemnification obligations under the DIP Loan Documents, which are hereby approved, and (c)(i) the costs, expenses and disbursements of the ABL DIP Secured Parties payable under the ABL DIP Loan Documents and this Final Order, including, without limitation, the reasonable and documented fees and expenses of (A) Goldberg Kohn Ltd., as counsel to the ABL DIP Agent, (B) Potter Anderson & Corroon LLP, as local counsel to the ABL DIP Agent, and (C) any other accountants, consultants, attorneys, advisors, appraisers, or other professionals that may be retained by the ABL DIP Agent with the consent of the Borrower, such consent not to be unreasonably withheld or delayed (which consent of the Borrower shall not be required after the occurrence and during the existence of an Event of Default under and as defined in the ABL DIP Loan Agreement), and (ii) the costs, expenses and disbursements incurred by the Term DIP Secured Parties, in any capacity, in connection with the

-35-

DIP Facilities or the Chapter 11 Cases, including, without limitation, the reasonable and documented fees and expenses of (A) Pryor Cashman, LLP, as counsel to the Term DIP Agents, (B) Morris James LLP, as local counsel to the Term DIP Agents, (C) Paul Hastings LLP, as counsel to the ad hoc group of certain Prepetition Senior Priority Noteholders and certain Prepetition Junior Priority Noteholders (the "***Ad Hoc Noteholder Group***"), (D) Stroock & Stroock & Lavan LLP, as counsel to the Ad Hoc Noteholder Group, (E) Young Conaway Stargatt & Taylor LLP, as local counsel to the Ad Hoc Noteholder Group, (F) Evercore Group L.L.C., as financial advisor to the Ad Hoc Noteholder Group, and (G) any other accountants, consultants, attorneys, advisors, appraisers, or other professionals that may be retained by the Term DIP Agents or the Ad Hoc Noteholder Group, in each case, with the consent of the Borrower and the Term DIP Required Lenders, such consent not to be unreasonably withheld or delayed (which consent of the Borrower shall not be required after the occurrence and during the existence of an Event of Default under and as defined in the Term DIP Loan Agreement) (collectively, the professionals described in the foregoing clauses (c)(ii)(C)-(G), the "***Lender Advisors***"), in the case of each of the foregoing clauses (a)-(c), whether or not such payments, premiums, fees, costs, expenses or other amounts arose before or after the Petition Date, and whether or not the transactions contemplated herein or in the DIP Loan Documents are consummated, without the need to file fee or retention applications with the Court, without the need to comply with the U.S. Trustee's fee guidelines, and without the need to provide notice to any party or obtain further Court approval, and all such payments, premiums, fees, costs, expenses and other amounts are hereby approved (and, to the extent paid prior to the entry of this Final Order, ratified in full), shall be non-refundable and irrevocable, and shall not be subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action, including any Avoidance Action, or any other claim or Cause of Action seeking

the reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, surcharge, recovery, or any other claim or Cause of Action of any nature and description whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise (subject only to the professional fee review procedures set forth in paragraph 12 hereof).

    4.    *DIP Obligations.*

    (a)    Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents constituted and shall continue to constitute valid, binding, enforceable, and non-avoidable obligations of each of the Debtors, and were and shall continue to be fully enforceable against each of the Debtors, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "***Successor Cases***"), in each case, in accordance with the terms of the DIP Loan Documents and this Final Order.

    (b)    Upon execution and delivery of the DIP Loan Documents, the DIP Loan Parties were and shall continue to be jointly and severally liable for all DIP Obligations, including, without limitation, all loans, advances, extensions of credit, financial accommodations, principal, interest, premiums or similar amounts, fees, costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other obligations or amounts (including without limitation, all "Obligations" as defined in the DIP Loan Agreements), whether or not such obligations arose before or after the Petition Date, whenever the same shall become

due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, in each case, which may now or from time to time be owing by any of the Debtors to the DIP Agents, for the benefit of themselves and the other DIP Secured Parties, or any of the DIP Lenders under the DIP Loan Documents or this Final Order. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease, on the DIP Termination Date (as defined below) (subject to the Carve Out and paragraph 22 hereof and subject, solely in the case of the DIP Roll Up Loans, to paragraph 2(d) hereof).

(c)     All obligations incurred, payments made, and transfers or grants of security interests and liens set forth in the Interim Order, this Final Order, and the DIP Loan Documents by the Debtors were pursuant to the Interim Order and hereby are granted for the benefit of the Debtors for fair consideration and reasonably equivalent value and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby. Subject to paragraph 2(d) (with respect to the Roll Up) and paragraph 11(f) (with respect to certain adequate protection payments made hereunder) of this Final Order, no obligation, payment, transfer, or grant of liens or security interests under the Interim Order, this Final Order, or the DIP Loan Documents to the DIP Secured Parties or the Prepetition Secured Parties (including, without limitation, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims or the Adequate Protection Obligations) shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action, including any Avoidance Action or any other claim or Cause of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification,

disgorgement, disallowance, impairment, marshalling, surcharge, recovery, or any other claim or Cause of Action of any nature and description whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise; *provided, however*, that certain professional fees payable hereunder after the Closing Date shall be subject only to the professional fee review procedures set forth in paragraph 12 hereof.

5.     *No Obligation to Extend Credit.* The DIP Secured Parties shall have no obligation to make any loan or advance available under the applicable DIP Loan Documents unless all of the conditions precedent to the making of such loan or advance by the applicable DIP Secured Parties under the applicable DIP Loan Documents and this Final Order have been satisfied in full (or waived) in accordance with the terms of the DIP Loan Documents and this Final Order, as applicable. Notwithstanding anything contained in the Interim Order, this Final Order or the DIP Loan Documents to the contrary, in no event shall (i) the aggregate principal amount of the Term DIP Loans available or outstanding under the Term DIP Loan Agreement at any time (after giving effect to all Term DIP Borrowings previously made or requested) exceed the total New Money Commitments or Roll-Up Backstop Commitments, as the case may be (each as defined in the Term DIP Loan Agreement), (ii) the aggregate principal amount of the ABL DIP Loans available or outstanding under the ABL DIP Loan Agreement at any time (after giving effect to all outstanding ABL DIP Borrowings previously made or requested) exceed the total Revolving Facility Commitments (as defined in the ABL DIP Loan Agreement), (iii) the aggregate principal amount of the Term DIP Loans from any Term DIP Lender exceed such Term DIP Lender's New Money Commitment or Roll-Up Backstop Commitment, as the case may be, or (iv) the aggregate principal amount of the outstanding ABL DIP Loans from any ABL DIP Lender exceed such ABL DIP Lender's Revolving Facility Commitment (as defined in the ABL DIP Loan Agreement).

6.        *No Duty to Monitor Compliance*. None of the DIP Secured Parties or the Prepetition Secured Parties shall have any obligation or responsibility to monitor the Debtors' use of DIP Collateral, the Prepetition Collateral or Cash Collateral, and each of the DIP Secured Parties and Prepetition Secured Parties may rely upon the Debtors' representations that the use of DIP Collateral, Prepetition Collateral and Cash Collateral complies with and is in accordance with the requirements of this Final Order and the DIP Loan Documents.

7.        *DIP Liens.*

(a)        *DIP Liens.* Effective upon entry of the Interim Order, and without the necessity of the execution, recordation or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreements or other action to take possession or control of any DIP Collateral), (x) as security for the prompt and complete payment and performance of all ABL DIP Obligations when due (whether at stated maturity, by required prepayment, acceleration or otherwise), the ABL DIP Agent, for the benefit of itself and the ABL DIP Secured Parties, was pursuant to the Interim Order and hereby is granted, on a final basis, valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "***ABL DIP Liens***") in all DIP Collateral, and (y) as security for the prompt and complete payment and performance of all Term DIP Obligations when due (whether at stated maturity, by required prepayment, acceleration or otherwise), the Term DIP Collateral Agent, for the benefit of itself and the Term DIP Secured Parties, was pursuant to the Interim Order and hereby is granted, on a final basis, valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "***Term DIP***

-40-

Liens", and together with the ABL DIP Liens, the "**DIP Liens**") in all DIP Collateral, in each case of the foregoing underlined clauses (x) and (y), subject and subordinate to the Carve Out, and subject to the relative priorities and provisions set forth in paragraph 7(c) of this Final Order, **Exhibit 1** of this Final Order and the DIP Intercreditor Agreement.

(b)      The term "**DIP Collateral**"[11] means all assets and properties of each of the Debtors and their estates, of any kind or nature whatsoever, whether tangible or intangible, real, personal or mixed, whether now owned or consigned by or to, or leased from or to, or hereafter acquired by, or arising in favor of, any of the Debtors (including under any trade names, styles or derivations thereof), whether prior to or after the Petition Date, and wherever located, including, without limitation, (i) all of the Debtors' rights, title and interests in all "Collateral" (as defined in the DIP Loan Agreements), Prepetition Collateral (including Cash Collateral), ABL Facility Priority Collateral and Notes Priority Collateral (each as defined in the applicable Prepetition Intercreditor Agreements), (ii) all money, cash and cash equivalents, all funds in any deposit accounts, securities accounts, commodities accounts or other accounts (together with and all money, cash and cash equivalents, instruments and other property deposited therein or credited thereto from time to time), all accounts receivable and other receivables (including those generated by intercompany transactions), all rights to payment, contracts and contract rights, all instruments, documents and chattel paper, all securities (whether or not marketable), all goods, furniture, machinery, plants, equipment, vehicles, inventory and fixtures, all real property interests, all interests in leaseholds, all franchise rights, all patents, tradenames, trademarks, copyrights, licenses

---

[11]      DIP Collateral shall not include the "LC Cash Collateral" and "Bank Product Cash Collateral" (each as defined in the Prepetition ABL Payoff Letter); *provided*, *however*, that DIP Collateral shall include any excess or residual amounts in respect of each of the foregoing upon the release (or deemed release) thereof pursuant to the Prepetition ABL Payoff Letter.

and all other intellectual property, all general intangibles, tax or other refunds, or insurance proceeds, all equity interests, capital stock, limited liability company interests, partnership interests and financial assets, all investment property, all supporting obligations, all letters of credit and letter of credit rights, all commercial tort claims, all books and records (including, without limitation, customers lists, credit files, computer programs, printouts and other computer materials and records), and all rents, products, offspring, profits, and proceeds of each of the foregoing and all accessions to, substitutions and replacements for, each of the foregoing, including any and all proceeds of any insurance (including any business interruption and property insurance), indemnity, warranty or guaranty payable to any Debtor from time to time with respect to any of the foregoing, and (iii) the proceeds of or property recovered, whether by judgment, settlement or otherwise, from Avoidance Actions ("*Avoidance Action Proceeds*"); *provided, however,* that DIP Collateral shall exclude any Excluded Property (as defined in the DIP Loan Agreements) but shall include any and all proceeds and products of Excluded Property, unless such proceeds and products otherwise separately constitute Excluded Property; *provided, further however,* that solely for purposes of the liens securing the DIP Roll Up Loans, the term "DIP Collateral" shall exclude the proceeds of or property recovered, whether by judgment, settlement or otherwise, from Specified Avoidance Actions ("*Specified Avoidance Action Proceeds*").[12]

(c)     *Priority of DIP Liens.* The DIP Liens shall have the following ranking and priorities (subject in all cases to the Carve Out):

---

[12]     The term "*Specified Avoidance Actions*" means any Challenge against the Prepetition Secured Parties that is timely and properly commenced by the Official Committee in accordance with paragraph 25 hereof and that is the subject of a final and non-appealable order in favor of the Official Committee, other than any Challenge that seeks (1) any surcharge on or against any Prepetition Collateral, whether arising under Section 506(c) of the Bankruptcy Code or any other legal or equitable doctrine, (2) marshalling of any Prepetition Collateral (subject to the proviso contained in paragraph 28 hereof), or (3) application of the "equities of the case" exception in section 552(b) of the Bankruptcy Code to the Prepetition Secured Parties or the Prepetition Collateral.

(i)        *First Priority Liens on Unencumbered Property.* Pursuant to section 364(c)(2) of the Bankruptcy Code, the ABL DIP Liens and the Term DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected (x) first priority liens and security interests in all Avoidance Action Proceeds (other than with respect to the Term DIP Liens solely in respect of the DIP Roll Up Loans which shall not have recourse to Specified Avoidance Action Proceeds), subject to the relative priority and provisions set forth in the DIP Intercreditor Agreement, and (y) *pari passu* first priority liens and security interests in all other DIP Collateral that is not subject to valid, non-avoidable and properly perfected liens and security interests in existence as of the commencement of the Chapter 11 Cases (or valid and non-avoidable liens in existence as of the commencement of the Chapter 11 Cases but that are perfected subsequent to such commencement as permitted by section 546(b) of the Bankruptcy Code).

(ii)        *Priming Term DIP Liens and Junior Term DIP Liens.* Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, the Term DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected liens and security interests in all DIP Collateral (other than as described in clause (c)(i) of this paragraph 7), which Term DIP Liens (A) shall be subject and subordinate to (1) Permitted Prior Liens, (2) solely with respect to ABL Facility Priority Collateral (as defined in the DIP Intercreditor Agreement) and DIP Collateral of a type that would otherwise constitute ABL Facility Priority Collateral, the ABL DIP Liens, and (3) solely with respect to the assets of Holdings (the "***TPC Holdings Assets***"), the ABL DIP Liens; *provided, however*, that the DIP Roll Up Loans shall not have liens on or security interests in TPC Holdings Assets or any other assets of the Debtors that did not constitute Prepetition Collateral, (B) shall be subject to the DIP Intercreditor Agreement and the priorities set forth in **Exhibit 1** attached hereto, and (C)  shall be senior to any and all other liens and security interests in the DIP Collateral, including, without limitation, all liens and security interests in the Notes Priority Collateral (as defined in the DIP Intercreditor Agreement) or any DIP Collateral that would otherwise constitute Notes Priority Collateral (including, without limitation, any ABL DIP Liens, Senior Priority Notes Adequate Protection Liens, Junior Priority Notes Adequate Protection Liens, Prepetition Senior Priority Notes Liens or Prepetition Junior Priority Notes Liens in Notes Priority Collateral).

(iii)        *Priming ABL DIP Liens and Junior ABL DIP Liens.* Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, the ABL DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected liens and security interests in all DIP Collateral (other than as described in clause (c)(i) of this paragraph 7), which ABL DIP Liens (A) shall be subject and subordinate to (1) Permitted Prior Liens, and (2) solely with respect to Notes Priority Collateral and DIP Collateral of a type that would otherwise constitute Notes Priority Collateral, the Term DIP Liens, the Senior Priority Notes Adequate Protection Liens (until the Prepetition Senior Priority Notes Secured Obligations are deemed to be Paid in Full) and the Prepetition Senior Priority Notes Liens (until the Prepetition Senior Priority Notes Secured Obligations are deemed to be Paid in Full), the Junior Priority Notes Adequate Protection Liens, the Prepetition Junior Priority Notes Liens, (B) shall be subject to the DIP Intercreditor Agreement and the priorities set forth in **Exhibit 1** attached hereto, and (C)  shall be senior to any and all other liens and security interests in the DIP Collateral, including, without

limitation, all liens and security interests in the ABL Facility Priority Collateral (as defined in the DIP Intercreditor Agreement) or any DIP Collateral that would otherwise constitute ABL Facility Priority Collateral (including, without limitation, any Term DIP Liens, Senior Priority Notes Adequate Protection Liens, Junior Priority Notes Adequate Protection Liens, Prepetition Senior Priority Notes Liens or Prepetition Junior Priority Notes Liens in ABL Facility Priority Collateral).

(iv) *DIP Liens Senior to Other Liens.* Except to the extent expressly permitted hereunder, the DIP Liens, the DIP Superpriority Claims (as defined below), the Adequate Protection Liens and the Adequate Protection Claims shall not be made subject or subordinate to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, including any lien, security interest or claim granted in favor of any federal, state, municipal, or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors, (B) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, (C) any intercompany or affiliate claim, lien or security interest of the Debtors or their affiliates, or (D) any other lien, security interest or claim arising under section 363 or 364 of the Bankruptcy Code granted on or after the date hereof.

8. *DIP Superpriority Claims.* Pursuant to sections 364(c)(1) and 364(e) of the Bankruptcy Code, (A) the ABL DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors in each of the Chapter 11 Cases and any Successor Cases on account of the ABL DIP Obligations, with priority (except as set forth in <u>clause (C)</u> of this paragraph 8, over any and all other administrative expense claims and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, the Adequate Protection Claims and all administrative expense claims of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (the "***ABL DIP Superpriority Claims***"), (B) the Term DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors in each of the Chapter 11 Cases and any Successor Cases on account of the Term DIP Obligations, with priority (except as set forth in <u>clause (C)</u> of this paragraph 8 and, subject, in the

case of the DIP Roll Up Loans, to paragraph 2(d) hereof) over any and all other administrative expense claims and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, the Adequate Protection Claims and all administrative expense claims of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (the "***Term DIP Superpriority Claims***", and together with the ABL DIP Superpriority Claims, the "***DIP Superpriority Claims***"), and (C) the priority of the ABL DIP Superpriority Claims shall be *pari passu* with the priority of the Term DIP Superpriority Claims. The DIP Superpriority Claims shall be payable by each of the Debtors, on a joint and several basis, and shall have recourse to all DIP Collateral, except as otherwise expressly limited in paragraphs 7(b) and 7(c) of this Final Order, subject only to the Carve-Out. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, including in the event that this Final Order or any provision hereof is reversed or modified, on appeal or otherwise.

9.    *Use of DIP Collateral, Prepetition Collateral and Cash Collateral.*

(a)    The Debtors were pursuant to the Interim Order and are hereby authorized on a final basis to use the proceeds of DIP Loans and all Cash Collateral solely to the extent expressly permitted under the Approved Budget (subject to Permitted Variances) and subject to the terms and conditions set forth in the DIP Loan Documents (including the DIP Intercreditor Agreement) and this Final Order; *provided, however*, that the amount of administrative expense claims that may be asserted on account of Allowed Professional Fees (as defined below) of

Professional Persons (as defined below) benefiting from the Carve Out shall not be capped or deemed capped by any Approved Budget.

(b)    Without the prior written consent of the Required DIP Lenders, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so), except as may be expressly permitted by the DIP Loan Documents and this Final Order or as otherwise contemplated under the DIP Intercreditor Agreement. All collection and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnation, or otherwise, that constitute DIP Collateral will be deposited and applied as required by the DIP Intercreditor Agreement, this Final Order and the DIP Loan Documents (subject to paragraph 37 hereof). Except as may be provided in the DIP Loan Documents, the Debtors are authorized and directed, upon the closing of a sale of any of the DIP Collateral, to immediately pay all proceeds of any such sale to the applicable DIP Agents, for the benefit of themselves and the applicable DIP Secured Parties, to satisfy the DIP Obligations in accordance with this Final Order, the DIP Intercreditor Agreement and the DIP Loan Documents until Paid in Full, and any order approving the sale of such DIP Collateral shall provide that the sale is conditioned upon the payment of such DIP Obligations (except to the extent otherwise agreed in writing by the Term DIP Required Lenders and/or the ABL DIP Required Lenders, in respect of the applicable obligations owed to them).

10.    *Approved Budget.* Each Updated Budget (as defined in the DIP Loan Agreements) shall be subject to the consent (or deemed consent) of the Term DIP Required Lenders, as and to the extent expressly set forth in the Term DIP Loan Agreement, and the ABL DIP Required Lenders, as and to the extent expressly set forth in the ABL DIP Loan Agreement, and any Approved Budget may not be amended or modified without the prior written consent of the Term

-46-

DIP Required Lenders, as and to the extent expressly set forth in the Term DIP Loan Agreement, and the ABL DIP Required Lenders, as and to the extent expressly set forth in the ABL DIP Loan Agreement.

11.    *Adequate Protection*. The Prepetition Notes Secured Parties are entitled, pursuant to sections 361, 362, 363(e) and 507 of the Bankruptcy Code, to adequate protection of their respective liens and interests in Prepetition Collateral (including Cash Collateral), as follows (the liens, security interests, payments and other obligations set forth in this paragraph 11, are collectively referred to herein as the "***Adequate Protection Obligations***"):

(a)    *Adequate Protection for Prepetition ABL Secured Parties.* In accordance with the Interim Order, upon the ABL Refinancing Effective Date, the ABL Adequate Protection Claims, ABL Adequate Protection Liens, and Adequate Protection Obligations (each as defined in the Interim Order) granted to the Prepetition ABL Secured Parties pursuant to the Interim Order were automatically released and terminated.

(b)    *Adequate Protection for Prepetition Senior Priority Notes Secured Parties.* Prior to and until all of the Prepetition Senior Priority Notes Secured Obligations are indefeasibly and irrevocably deemed Paid in Full in connection with the Roll Up, the Prepetition Senior Priority Notes Secured Parties are hereby granted the following adequate protection of their liens and interests in the Prepetition Senior Priority Notes Collateral (including Cash Collateral):[13]

(i)    *Senior Priority Notes Adequate Protection Claims.* The Prepetition Senior Priority Notes Trustee, for the benefit of itself and the Prepetition Senior Priority Noteholders, is hereby granted, to the extent and in the amount of any Diminution in Value of the Prepetition Senior Priority Notes Secured Parties' liens and interests in the Prepetition Senior Priority Notes Collateral (including Cash Collateral), superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against each of the Debtors (other than Holdings) in each of the Chapter 11 Cases and any Successor Cases (the "***Senior Priority Notes Adequate Protection Claims***"), which shall be payable by each of the Debtors, on a joint and several basis, and shall have recourse to

---

[13]  See, supra, fn 8.

all DIP Collateral (other than TPC Holdings Assets). The Senior Priority Notes Adequate Protection Claims shall be (a) subject and subordinate to the Carve Out and the DIP Superpriority Claims, (b) subject to the relative priorities set forth in **Exhibit 1** attached hereto, and (c) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature.

(ii)     *Senior Priority Notes Adequate Protection Liens.* The Prepetition Senior Priority Notes Trustee, for the benefit of itself and the Prepetition Senior Priority Noteholders, is hereby granted, effective and automatically perfected as of the Petition Date, and without the necessity of the execution, recordation or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreement or other action to take possession or control of any DIP Collateral), to the extent and in the amount of any Diminution in Value of the Prepetition Senior Priority Notes Secured Parties' liens and interests in the Prepetition Senior Priority Notes Collateral, valid, binding, enforceable and perfected post-petition liens and security interests in all DIP Collateral (other than TPC Holdings Assets) (the "***Senior Priority Notes Adequate Protection Liens***"). The Senior Priority Notes Adequate Protection Liens shall be (a) subject to the Carve Out, the DIP Liens, and the Permitted Prior Liens, (b) subject to the DIP Intercreditor Agreement and the relative priorities set forth in **Exhibit 1** attached hereto, and (c) senior to any and all other liens and security interests in the DIP Collateral.

(c)     *Additional Adequate Protection for Prepetition Senior Priority Notes Secured Parties.* Prior to and until all of the Prepetition Senior Priority Notes Secured Obligations are indefeasibly and irrevocably deemed Paid in Full in connection with the DIP Roll Up, as additional adequate protection of their liens and interests in the Prepetition Senior Priority Notes Collateral (including Cash Collateral), the Debtors are hereby authorized to provide, and the Prepetition Senior Priority Notes Secured Parties are hereby granted, additional adequate protection in the form of the following:[14]

(i)     *Interest Due Under Prepetition Senior Priority Notes Indenture.* The Prepetition Senior Priority Notes Trustee, on behalf of the Prepetition Senior Priority Noteholders, shall receive (x) promptly upon the entry of the Interim Order, all interest due (at the non-default rate) under the Prepetition Senior Priority Notes Indenture that accrued but was unpaid as of the Petition Date, payable in kind by adding the amount of such accrued but unpaid interest to the outstanding aggregate principal balance of the Prepetition Senior Priority Notes as of the Petition Date, and (y) thereafter, all interest due (at the non-

---

[14] See, supra, fn 8.

default rate) under the Prepetition Senior Priority Notes Indenture on any outstanding Prepetition Senior Priority Notes that were not converted into Term DIP Loans pursuant to the Roll Up, payable in kind by adding the amount of such accrued but unpaid interest to the outstanding aggregate principal balance of the Prepetition Senior Priority Notes from and after the Petition Date, on a quarterly basis, in each case, subject to paragraph 11(f) hereof.

(ii)    *Fees and Expenses.* The Debtors are authorized and directed to pay, without the necessity of filing fee applications with the Court or compliance with the U.S. Trustee's fee guidelines, whether arising prior to or after the Petition Date, (A) the out-of-pocket costs and expenses of the Prepetition Senior Priority Notes Trustee, including, without limitation, the reasonable and documented fees and expenses of Foley & Lardner LLP and one local counsel, as counsel to the Prepetition Senior Priority Notes Trustee (the "***Senior Priority Notes Trustee Fees and Expenses***"), and (B) the out-of-pocket fees and expenses of the members of the Ad Hoc Noteholder Group, including, without limitation, the reasonable and documented fees and expenses of the Lender Advisors (collectively, the "***Ad Hoc Noteholder Group Fees and Expenses***", and together with the Senior Priority Notes Trustee Fees and Expenses, the "***Senior Priority Notes Fees and Expenses***"), in each case, as follows: (1) promptly following the entry of the Interim Order, the Debtors shall pay in full in cash all Senior Priority Notes Fees and Expenses arising on or prior to the Petition Date, (2) upon the Closing Date, the Debtors shall pay in full in cash all Senior Priority Notes Fees and Expenses arising through and including the Closing Date, and (3) thereafter, subject to the professional fee review procedures set forth in paragraph 12 of this Final Order, the Debtors shall pay in full in cash all Senior Priority Notes Fees and Expenses that arise following the Closing Date.

(iii)    *Reporting.* The Debtors shall provide the Prepetition Senior Priority Notes Trustee, the Ad Hoc Noteholder Group and the Official Committee (and their respective advisors) with all reports, documents and other information required to be delivered to the DIP Secured Parties under the DIP Loan Documents and this Final Order contemporaneously with the delivery of such information to the DIP Secured Parties.

(iv)    *Cash Management Covenant.* The Debtors shall maintain their cash management arrangements in a manner consistent with those described in the applicable "first day" order, which shall be in form and substance reasonably acceptable to the Ad Hoc Noteholder Group and the ABL DIP Agent.

(d)    *Adequate Protection for Prepetition Junior Priority Notes Secured Parties.*

The Prepetition Junior Priority Notes Secured Parties are hereby granted the following adequate

protection of their liens and interests in the Prepetition Junior Priority Notes Collateral (including

Cash Collateral) solely to the extent of any Diminution in Value:

(i)    *Junior Priority Notes Adequate Protection Claims.* The Prepetition Junior Priority Notes Trustee, for the benefit of itself and the Prepetition Junior Priority

Noteholders, is hereby granted, to the extent and in the amount of any Diminution in Value of the Prepetition Junior Priority Notes Secured Parties' liens and interests in the Prepetition Junior Priority Notes Collateral (including Cash Collateral), superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against each of the Debtors (other than Holdings) in each of the Chapter 11 Cases and any Successor Cases (the "***Junior Priority Notes Adequate Protection Claims***", and together with the Senior Priority Notes Adequate Protection Claims, the "***Adequate Protection Claims***"), which shall be payable by each of the Debtors, on a joint and several basis, and shall have recourse to all DIP Collateral (other than TPC Holdings Assets). The Junior Priority Notes Adequate Protection Claims shall be (a) subject and subordinate to the Carve Out and the DIP Superpriority Claims, (b) subject to the relative priorities set forth in **Exhibit 1** attached hereto, and (c) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever.

(ii)    *Junior Priority Notes Adequate Protection Liens.* The Prepetition Junior Priority Notes Trustee, for the benefit of itself and the Prepetition Junior Priority Noteholders,  is hereby granted, effective and perfected as of the Petition Date, without the necessity of the execution, recordation or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreement or other act to take possession or control of any DIP Collateral), to the extent and in the amount of any Diminution in Value of the Prepetition Junior Priority Notes Secured Parties' liens and interests in the Prepetition Junior Priority Notes Collateral, valid, binding, enforceable and automatically perfected post-petition liens and security interests in all DIP Collateral other than TPC Holdings Assets (the "***Junior Priority Notes Adequate Protection Liens***", and together with the Senior Priority Notes Adequate Protection Liens, the "***Adequate Protection Liens***"), which Junior Priority Notes Adequate Protection Liens shall be (a) subject to the Carve Out, the DIP Liens and the Permitted Prior Liens, (b) subject to the DIP Intercreditor Agreement and the relative priorities set forth in **Exhibit 1** attached hereto, and (c) shall be senior to any and all other liens and security interests in the DIP Collateral.

(e)    *Additional Adequate Protection for Prepetition Junior Priority Notes Secured Parties.* As additional adequate protection of the liens and interests of the Prepetition Junior Priority Notes Secured Parties in the Prepetition Junior Priority Notes Collateral (including Cash Collateral), the Debtors are hereby authorized to provide, and the Prepetition Junior Priority Notes Secured Parties are hereby granted, additional adequate protection in the form of the following:

(i)      *Interest Due Under Prepetition Junior Priority Notes Indenture.* The Prepetition Junior Priority Notes Trustee, on behalf of the Prepetition Junior Priority Noteholders, shall receive (x) promptly upon the entry of the Interim Order, all interest due (at the non-default rate) under the Prepetition Junior Priority Notes Indenture that accrued but was unpaid as of the Petition Date, payable in kind by adding the amount of such accrued but unpaid interest to the outstanding aggregate principal balance of the Prepetition Junior Priority Notes as of the Petition Date, and (y) thereafter, all interest due (at the non-default rate) under the Prepetition Junior Priority Notes Indenture, payable in kind by adding the amount of such accrued but unpaid interest to the outstanding aggregate principal balance of the Prepetition Junior Priority Notes from and after the Petition Date, on a quarterly basis, in each case, subject to paragraph 11(f) hereof.

(ii)      *Fees and Expenses.* The Debtors are authorized and directed to pay, without the necessity of filing fee applications with the Court or compliance with the U.S. Trustee's fee guidelines, whether arising prior to or after the Petition Date, (A) the out-of-pocket costs and expenses of the Prepetition Junior Priority Notes Trustee, including, without limitation, the reasonable and documented fees and expenses of Foley & Lardner LLP and one local counsel, as counsel to the Prepetition Junior Priority Notes Trustee (the "***Junior Priority Notes Trustee Fees and Expenses***"), and (B) the Ad Hoc Noteholder Group Fees and Expenses (together with the Junior Priority Notes Trustee Fees and Expenses, the "***Junior Priority Notes Fees and Expenses***"), in each case, as follows: (1) promptly following the entry of the Interim Order, the Debtors shall pay in full in cash all Junior Priority Notes Fees and Expenses arising on or prior to the Petition Date, (2) upon the Closing Date, the Debtors shall pay in full in cash all Junior Priority Notes Fees and Expenses arising on and through and including the Closing Date, and (3) thereafter, subject to the professional fee review procedures set forth in paragraph 12 of this Final Order, the Debtors shall pay in full in cash all Junior Priority Notes Fees and Expenses that arise following the Closing Date.

(iii)      *Reporting.* The Debtors shall provide the Prepetition Junior Priority Notes Trustee, the Ad Hoc Noteholder Group and the Official Committee (and their respective advisors) with all reports, documents and other information required to be delivered to the DIP Secured Parties under the DIP Loan Documents and this Final Order at the same time that such information is delivered to the DIP Secured Parties.

(iv)      *Cash Management Covenant.* The Debtors shall maintain their cash management arrangements in a manner consistent with those described in the applicable "first day" order, which shall be in form and substance reasonably acceptable to the Ad Hoc Noteholder Group and the ABL DIP Agent.

(f)      *Reservation of Rights.* Any adequate protection payments of "payable-in-kind" interest under paragraphs 11(c)(i) or 11(e)(i) hereunder shall be without prejudice to, and with a full reservation of rights of, the Official Committee as to whether such payments (net of any Diminution in Value of the Prepetition Secured Parties' liens and interests in Prepetition

Collateral) should be unwound or recharacterized, as and to the extent required under the Bankruptcy Code, in the event the Prepetition Senior Priority Notes or the Prepetition Junior Priority Notes (as the case may be) are determined to be under-secured, in each case, as determined, upon notice and a hearing, by a final non-appealable order of this Court. For the avoidance of doubt, the foregoing shall not affect the burden of proof under the Bankruptcy Code in connection with determining whether there has been any Diminution in Value, and all rights and arguments of the Debtors, the Official Committee and the Prepetition Secured Parties in connection therewith are expressly preserved.

12.    *Fees and Expenses.* The invoices with respect to the professional fees and expenses payable after the Closing Date in accordance with paragraphs 3, 11(c)(ii)(3) and 11(e)(ii)(3) of this Final Order shall not be required to comply with the U.S. Trustee's fee guidelines, nor shall the applicable professionals be required to file fee applications with the Court with respect to any fees or expenses payable hereunder, and all invoices therefor may be in summary form only (and shall not be required to contain individual time entries, and may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall be provided to counsel to the Debtors, counsel to the Official Committee and the U.S. Trustee (the "***Fee Notice Parties***"); *provided*, *however*, if no formal objection to payment of the requested fees and expenses is made in writing by any of the Fee Notice Parties within ten (10) calendar days after delivery of such invoices (the "***Fee Objection Period***"), then, upon the expiration of the Fee Objection Period, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be

promptly paid by the Debtors and, in any event, no later than three (3) Business Days after expiration of the Fee Objection Period; *provided, further, however,* if a formal objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, the undisputed portion shall promptly be paid by the Debtors, and the disputed portion shall only be paid upon resolution of such objection by the applicable parties or by order of the Court. Any hearing on an objection to the payment of any fees, costs or expenses set forth in a professional fee invoice shall be limited to reasonableness of the fees, costs and expenses that are the subject of such objection. Subject to paragraph 2(d) (in the case of the Roll Up), paragraph 11(f) (in the case of certain adequate protection payments made hereunder), and the professional fee review procedures set forth in this paragraph 12 (in the case of certain adequate protection payments of professional fees made hereunder), none of the adequate protection payments made pursuant to this Final Order shall be subject to claim, counterclaim, challenge, setoff, subordination, recharacterization, defense, avoidance or disgorgement in the Chapter 11 Cases or any Successor Cases.

13.    *Adequate Protection Reservation of Rights of Prepetition Notes Secured Parties.* Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Notes Secured Parties pursuant to this Final Order shall not be deemed an admission that the interests of such Prepetition Notes Secured Parties are indeed adequately protected, and is without prejudice to the right of the Prepetition Notes Secured Parties (subject to the Intercreditor Agreements) to seek additional relief with respect to the use of Prepetition Collateral (including Cash Collateral), or to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors, the Official Committee or any other party in interest to contest any such modification.

-53-

Except to the extent expressly set forth in this Final Order, nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Prepetition Notes Secured Parties under the Prepetition Notes Loan Documents, the Intercreditor Agreements, or under applicable law, and the Prepetition Notes Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Prepetition Notes Loan Documents, the Intercreditor Agreements, and applicable law. Without limiting the foregoing, nothing contained in this Final Order shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate the Prepetition Notes Secured Parties for any Diminution in Value during the Chapter 11 Cases.

14.      *Reservation of Rights.* Notwithstanding anything herein to the contrary, the entry of the Interim Order and this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the DIP Secured Parties or the Prepetition Notes Secured Parties (subject to the Intercreditor Agreements and this Final Order) to seek any other or supplemental relief in respect of the Debtors; (b), the rights of the DIP Secured Parties or the Prepetition Notes Secured Parties under the DIP Loan Documents or the Prepetition Notes Loan Documents (including the Intercreditor Agreements), the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code; (ii) request dismissal of any of the Chapter 11 Cases, conversion of any or all of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers; or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties or the Prepetition

Notes Secured Parties (in each case, subject to the Intercreditor Agreements); *provided, however,* that to the extent any such request by the DIP Secured Parties is granted, and such relief would otherwise constitute an Event of Default under the DIP Facility to which such DIP Secured Parties are a party, the granting thereof shall not result in an Event of Default under such DIP Facility. Notwithstanding anything contained herein to the contrary, the entry of the Interim Order and this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the Official Committee's or any party in interest's right to oppose (on an emergency basis if need be) any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Final Order and the Intercreditor Agreements.

15.    *Amendments.* Without the need for further notice to or approval of this Court, the Debtors are authorized and directed to execute, deliver and perform under, one or more amendments, waivers, consents, or other modifications (including, for the avoidance of doubt, the payment of any amendment fee, consent fee, waiver fee or similar fee paid or payable in connection therewith) to and under the DIP Loan Documents, in each case, in accordance with the provisions of the DIP Loan Agreement governing amendments thereto (and otherwise in form and substance acceptable to the ABL DIP Required Lenders and the Term DIP Required Lenders, as applicable); *provided, however,* that any amendment to the DIP Loan Documents shall require the prior written consent of the Term DIP Required Lenders and the ABL DIP Required Lenders; *provided, further, however,* that any material amendment to the DIP Loan Agreements (each, a "***Material DIP Amendment***") shall be provided (which may be by electronic mail) to counsel for the other DIP Agents, counsel to the Official Committee, counsel to the Prepetition Junior Priority Noteholders represented by Proskauer Rose LLP, Selendy Gay Elsberg PLLC and, separately, Sidley Austin LLP (subject to the execution of confidentiality agreements reasonably acceptable to the Debtors),

and the U.S. Trustee no later than three (3) Business Days prior to the anticipated date of effectiveness of any such Material DIP Amendment, and if no formal objection to the Material DIP Amendment is made by such parties within such three (3) Business Day period, then, without further notice or approval of the Court, such Material DIP Amendment shall automatically be deemed approved and effective; *provided, however*, if a formal objection is made by any such parties within such three (3) Business Day period, then such Material DIP Amendment shall be subject to approval of the Court.

16.     *Modification of Automatic Stay.* The automatic stay imposed by section 362(a) of the Bankruptcy Code was pursuant to the Interim Order and hereby is vacated and modified, without further notice to or order of this Court, to permit: (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Secured Parties may request to assure the perfection and priority of the DIP Liens; (b) the Debtors to incur all liabilities and obligations, including all of the DIP Obligations, to the DIP Secured Parties as contemplated under the Interim Order, this Final Order, and the DIP Loan Documents; (c) the Debtors to grant the Adequate Protection Liens and the Adequate Protection Claims, and to perform such acts as the Prepetition Notes Agents may request to assure the perfection and priority of the Adequate Protection Liens; (d) the Debtors to incur all liabilities and obligations, including all Adequate Protection Obligations, to the Prepetition Secured Parties as contemplated under the Interim Order, this Final Order, and the DIP Loan Documents; (e) the Debtors to pay all amounts required hereunder and under the DIP Loan Documents, including the ABL Refinancing; (f) the DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments made in accordance with the terms of the Interim Order, this Final Order, the Intercreditor Agreements and the DIP Loan Documents (including, without limitation, the ABL Refinancing and amounts

received by the ABL DIP Agent pursuant to the exercise of cash dominion (or the exercise of rights under any deposit account control agreements in connection therewith), in each case, as, to the extent and for so long as expressly permitted in the ABL DIP Loan Agreement); (g) subject to paragraph 22(b) of this Final Order and the Intercreditor Agreements, the DIP Secured Parties and the Prepetition Secured Parties to exercise, upon the occurrence and during the continuance of any DIP Termination Event (as defined below), all rights and remedies provided for in this Final Order, the DIP Loan Documents, the Prepetition Secured Loan Documents or applicable law; (h) to perform under this Final Order and the DIP Loan Documents, and to take any and all other actions that may be required, necessary, or desirable for the performance by the Debtors under this Final Order and the DIP Loan Documents and the implementation of the transactions contemplated hereunder and thereunder, and (i) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Final Order and the DIP Loan Documents.

17.    *Perfection of DIP Liens and Adequate Protection Liens*.

(a)    This Final Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted under the Interim Order, this Final Order and under the DIP Loan Documents, including, without limitation, the DIP Liens and the Adequate Protection Liens, without the necessity of the execution, recordation or filing of any pledge, collateral or security agreements, mortgages, deeds of trust, lockbox or control agreements, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any DIP Collateral), to attach, validate, perfect or prioritize such liens and security interests, or to entitle the DIP Secured Parties and the Prepetition Notes Secured Parties to the

priorities granted herein (each, a "***Perfection Act***") (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach, validate, perfect or prioritize such liens).

(b)    Without in any way limiting the automatically effective perfection of the liens granted under the Interim Order, this Final Order and the DIP Loan Documents (including, without limitation, the DIP Liens and the Adequate Protection Liens), the DIP Agents and the Prepetition Notes Agents, respectively, were pursuant to the Interim Order and hereby are authorized, but not required, as they in their sole discretion may determine for any reason, to execute, file and record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of submission, to the maximum extent permitted under applicable law) or otherwise effectuate any Perfection Act or to take any other action in order to attach, validate, perfect, preserve and enforce the liens and security interests granted to them hereunder or under the DIP Loan Documents to otherwise evidence such liens and security interests in all DIP Collateral; *provided, however,* that, whether or not the DIP Agents or the Prepetition Notes Agents determine, in their sole discretion, to execute, file, record or otherwise effectuate any Perfection Act with respect to any liens or security interests granted under the Interim Order and/or this Final Order, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to objection, challenge, dispute, avoidance, recharacterization or subordination (subject in the case of the Roll Up to paragraph 2(d) of this Final Order). Upon the request of any of the DIP Agents, without any further consent of any party, such DIP Agent and the Debtors are authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable such DIP Agent, for the benefit of itself and the applicable DIP Secured Parties, to further validate, perfect,

preserve and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed as of the entry of the Interim Order.

(c)     A certified copy of the Interim Order or this Final Order may, as the DIP Agents or Prepetition Agents may determine in their discretion, be filed with or recorded in filing or recording offices in addition to or in lieu of any security documents, and all filing offices are hereby authorized to accept such certified copy of the Interim Order or this Final Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agents or the Prepetition Agents to take all actions, as applicable, referenced in this paragraph 17.

18.     *Protection of DIP Lenders' Rights.*

(a)     Until the DIP Obligations are Paid in Full (except with respect to the rights of the Prepetition ABL Secured Parties against the "LC Cash Collateral" and "Bank Products Cash Collateral" (each as defined in the Prepetition ABL Payoff Letter), which shall be subject to the terms set forth in the Prepetition ABL Payoff Letter), the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens or security interests granted to the Prepetition Secured Parties pursuant to the Prepetition Loan Documents, the Interim Order or this Final Order or otherwise seek to exercise or enforce any rights or remedies against any DIP Collateral, Prepetition Collateral or Prepetition Loan Party (as applicable), including, without limitation, any exercise of setoff or recoupment; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens or claims on, such DIP Collateral or and the proceeds thereof, to the extent such transfer, disposition, sale, or release is authorized hereunder, under the applicable DIP Loan Documents or by the applicable "Senior Secured Parties" (as defined in and in accordance with the DIP Intercreditor Agreement); (iii) not

file any further financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral unless solely as to this <u>clause (iii)</u>, any of the applicable DIP Secured Parties have filed financing statements or other documents in respect of the liens granted pursuant to this Final Order or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or securities interests as of the Petition Date; or (iv) deliver or cause to be delivered, at the Debtors' cost and expense (for which the Prepetition Agents shall be reimbursed upon submission to the Debtors of invoices or billing statements), any termination statements and/or releases in favor of the DIP Agents and the DIP Secured Parties or other documents necessary to effectuate and/or evidence the release and/or termination of liens on any portion of DIP Collateral subject to any sale or disposition authorized hereunder or under the DIP Loan Documents or any release and/or termination of liens, obligations or other claims contemplated under the Prepetition ABL Payoff Letter in connection with the ABL Refinancing. No Prepetition Secured Party may, directly or indirectly, (A) contest, or support any other Person in contesting, in any proceeding, the extent, validity, attachment, priority, or enforceability of any DIP Lien held by or on behalf of any of the DIP Secured Parties in the DIP Collateral (or the extent, validity, allowability, or enforceability of any DIP Obligations secured thereby or purported to be secured thereby) or the provisions of the DIP Loan Documents, the DIP Intercreditor Agreement or this Final Order, (B) take any action that would restrain, hinder, limit, delay or otherwise interfere with the exercise of any rights or remedies by any of the DIP Secured Parties, or (C) contest, object to or support any other Person in contesting or objecting to the manner in which any DIP Secured Party seeks to enforce or collect the DIP Obligations, the DIP Superpriority Claims or the DIP

Liens or any amendment, waiver or modification of any DIP Loan Document (including **Exhibit 1** attached hereto).

(b)    To the extent any Prepetition Secured Party has been noted as a secured party on any security document or otherwise has possession of or control with respect to any Prepetition Collateral, then (i) such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the ABL DIP Agent and the Term DIP Collateral Agent, for the benefit of themselves and the applicable DIP Secured Parties, and such Prepetition Secured Party shall comply with the instructions of such DIP Agent, at the direction of the ABL DIP Required Lenders or the Term DIP Required Lenders, as applicable, with respect to the exercise of such possession or control, and (ii) the ABL DIP Agent and the Term DIP Collateral Agent, for the benefit of themselves and the applicable DIP Secured Parties, shall also be deemed to be the secured party under each such security document and shall have all the rights and powers attendant to that position (including, without limitation, rights of enforcement), and shall act in that capacity, and distribute any proceeds recovered or received, in accordance with the terms of this Final Order, the Intercreditor Agreements and the DIP Loan Documents (subject to paragraph 37 hereof).

(c)    Except as expressly permitted in this Final Order or the DIP Loan Documents, in the event that any person or entity that holds a lien on or security interest in DIP Collateral that is junior or otherwise subordinate to the DIP Liens receives any DIP Collateral or proceeds of DIP Collateral, or receives any payment on account of such lien or security interest in the DIP Collateral (whether in connection with the exercise of any right or remedy (including setoff), any payment or distribution from the Debtors, mistake, or otherwise) prior to the Payment in Full of all DIP Obligations, such person or entity shall be deemed to have received, and shall

hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Secured

Parties, and shall immediately turn over all such proceeds to the Term DIP Collateral Agent and/or

the ABL DIP Agent (as specified in the DIP Intercreditor Agreement), for the benefit of themselves

and the DIP Secured Parties, in the same form as received, with any necessary endorsements, for

application in accordance with the DIP Loan Documents, the DIP Intercreditor Agreement and

this Final Order.

(d)     Except as expressly provided herein or in the DIP Loan Documents, no

claim or lien having a priority senior to or *pari passu* with those granted to any of the DIP Secured

Parties or Prepetition Secured Parties by this Final Order shall be granted or permitted while any

of the DIP Obligations or Adequate Protection Obligations, respectively, remain outstanding.

Except as expressly provided in this Final Order, the Intercreditor Agreements or the DIP Loan

Documents, each of the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens

and the Adequate Protection Claims: (A) shall not be made junior or subordinated to or *pari passu*

with (i) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter

11 Cases or any Successor Cases, whether under section 364(d) of the Bankruptcy Code or

otherwise, (ii) any lien that is avoided and preserved for the benefit of the Debtors and their estates

under section 551 of the Bankruptcy Code or otherwise, (iii) any lien arising after the Petition Date

including, without limitation, any lien or security interests granted in favor of any federal, state,

municipal or other domestic or foreign governmental unit (including any regulatory body),

commission, board or court for any liability of the Debtors, or (iv) any intercompany or affiliate

lien or claim; and (B) shall not be subject to sections 506(c), 510, 549, 550 or 551 of the

Bankruptcy Code (subject, in the case of the DIP Roll Up Loans, to paragraph 2(d) hereof).

19.     *Maintenance of DIP Collateral.* Until such time as all DIP Obligations are Paid in Full (or as otherwise agreed in writing by the ABL DIP Required Lenders or the Term DIP Required Lenders, as applicable, in respect of the applicable obligations owed to them), the Debtors shall continue to maintain all property, operational, and other insurance as required and as specified in the DIP Loan Documents. Upon the entry of this Final Order, the ABL DIP Agent and the Term DIP Collateral Agent, for the benefit of themselves and the applicable DIP Secured Parties, shall automatically be deemed to be named as additional insured and lender loss payee under each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral (including all property damage and business interruption insurance policies of the Debtors, whether expired, currently in place, or to be put in place in the future), and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, *first*, to the Payment in Full of all DIP Obligations (subject to paragraph 2(d) with respect to the Roll Up DIP Loans and subject to the DIP Intercreditor Agreement and paragraph 37 hereof), and, *second*, upon further order of the Court, to the payment of the Prepetition Secured Obligations (subject to paragraph 25 hereof) in accordance with and subject to the Prepetition Intercreditor Agreements. Notwithstanding the foregoing, the Debtors and/or the Prepetition Agents shall take any actions reasonably requested by any DIP Agent to have the ABL DIP Agent and the Term DIP Collateral Agent, each on behalf of itself and the applicable DIP Secured Parties, added as an additional insured and lenders loss payee on each such insurance policy.

20.     *Cash Management.* Until such time as all DIP Obligations and Prepetition Secured Obligations are Paid in Full, the Debtors shall also maintain the cash management system in effect as of the Petition Date, as modified by this Final Order and any order of the Court authorizing the continued use of the cash management system that is acceptable to the Required DIP Lenders and

the DIP Agents. The Debtors shall not open any new deposit or securities account that is not subject to the liens and security interests of each of the DIP Secured Parties and the Prepetition Notes Secured Parties (in which case they shall be subject to the lien priorities and other provisions set forth in this Final Order).

21.     *Reporting.* Without limiting the requirements contained herein or in the DIP Loan Documents, the Debtors and their Representatives shall (a) provide the DIP Agents (and their advisors), the Required DIP Lenders, the Ad Hoc Noteholder Group and the Official Committee (and each of their respective advisors) with (i) all reports, documents, and information required to be delivered under the DIP Loan Documents (contemporaneously when the same is required to be delivered thereunder), and (ii) reasonable access, upon reasonable notice and during regular business hours, to the Debtors' books and records, assets and properties, for purposes of monitoring the Debtors' businesses and operations and the value of the DIP Collateral, and (b) reasonably cooperate and consult with, and provide information reasonably requested by any DIP Agents, the Ad Hoc Noteholder Group or the Official Committee (and their respective advisors) concerning the Debtors' businesses, financial condition, properties, business operations and assets, and the Debtors hereby authorize their Representatives to cooperate and consult with, and promptly provide to the such parties (in each case, together with their respective advisors), such information.

22.     *DIP Termination Events; Exercise of Remedies.*

(a)     *DIP Termination Events.* The occurrence of any of the following shall constitute a "DIP Termination Event" under this Final Order (each a "***DIP Termination Event***", and the date upon which such DIP Termination Event occurs, the "***DIP Termination Date***"), unless waived in writing by the ABL DIP Required Lenders and/or the Term DIP Required

Lenders, as applicable: (a) the occurrence of an "Event of Default" under and as defined in the ABL DIP Loan Agreement or the Term DIP Loan Agreement; *provided* that sections 7.01(k)(iv)(b) and 7.01(k)(xviii) of the Term DIP Loan Agreement shall not apply with respect to any successful Specified Avoidance Action by the Official Committee (it being understood that sections 7.01(k)(xvii) and 7.01(k)(xxvi) of the Term DIP Loan Agreement are not affected by this paragraph 22); (b) the occurrence of the "Maturity Date" (under and as defined in the ABL DIP Loan Agreement or the Term DIP Loan Agreement), (c) the consummation of any sale of all or substantially all the assets of or equity interests in the Debtors (unless, immediately upon the consummation of such sale, the DIP Obligations and the Adequate Protection Obligations are Paid in Full with the cash proceeds of such sale), (d) the effective date of a chapter 11 plan of any of the Debtors, (e) any of the Debtors seeks authorization from the Court for (or the Court enters an order authorizing or approving) any amendment, modification, or extension of this Final Order or the DIP Loan Documents without the prior written consent of the Required DIP Lenders (and no such consent shall be implied by any other action, inaction, or acquiescence of any of the DIP Secured Parties), (f) the failure of the Debtors to make any payment required under this Final Order or the DIP Loan Documents to any of the DIP Secured Parties or the Prepetition Secured Parties as and when due and payable hereunder or thereunder; or (g) the failure by any of the Debtors to timely perform or comply with any of the other terms, provisions, conditions or other obligations under this Final Order.

(b) *Remedies Upon DIP Termination Event.* Upon the occurrence and during the continuation of a DIP Termination Event, without further notice to, hearing, or order from the Court, the automatic stay provisions of Section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the ABL DIP Agent, acting at the request of the ABL

DIP Required Lenders and the Term DIP Agents, acting at the request of the Term DIP Required Lenders, subject to the applicable Intercreditor Agreements, to (i) deliver to counsel to the Borrower, with a copy to counsel to the Official Committee, a notice declaring the occurrence of a DIP Termination Event, (ii) declare the termination, reduction or restriction of the commitments under the applicable DIP Facility (to the extent any such commitment remains), (iii) declare the Term DIP Obligations or the ABL DIP Obligations, as applicable, then outstanding to be due and payable, (iv) declare the termination of the applicable DIP Facility and the applicable DIP Loan Documents as to any further liability or obligation thereunder, but without affecting the DIP Liens or the DIP Obligations, (v) declare the reduction or restriction on the applicable DIP Facility or the applicable DIP Loan Documents, (vi) declare the termination, restriction or revocation of the ability of the Debtors to use Cash Collateral, (vii) charge interest at the default rate under the DIP Facilities, (viii) freeze all monies or balances in any deposit accounts of the Debtors, (ix) immediately exercise any and all rights of set-off, (x) exercise any right or remedy against the DIP Collateral, including, without limitation, the disposition of DIP Collateral for application towards the DIP Obligations, or (xi)  take any other action or exercise any other right or remedy permitted under the DIP Loan Documents, this Final Order or applicable law; *provided, however,* that in the case of the enforcement of rights against the DIP Collateral pursuant to clauses (ix), (x) and (xi) of this paragraph 22(b), the applicable DIP Agent, acting at the request of the ABL DIP Required Lenders or the Term DIP Required Lenders, as applicable, shall provide the other DIP Agents, counsel to the Debtors, counsel to the Official Committee and the U.S. Trustee five (5) Business Days' prior written notice (the "***Remedies Notice***")[15] (which may be provided by email

---

[15]    For the avoidance of doubt, the Remedies Notice, or any other notice contemplated under this paragraph may be included in the Carve Out Trigger Notice (as defined below).

or other electronic means) of the occurrence of the DIP Termination Event, and during such five (5) Business Day notice period (the "***Remedies Notice Period***"), the Debtors and/or the Official Committee shall be permitted to request an emergency hearing before the Court (which request must be made prior to the conclusion of the Remedies Notice Period, and shall seek consideration of such request on an expedited basis); *provided*, *further*, *however*, that during the Remedies Notice Period, the Debtors are permitted to use Cash Collateral solely to fund expenses critically necessary to preserve the value of the Debtors' businesses, as determined by the Required DIP Lenders, and the Carve Out Reserves; *provided*, *further*, *however*, that the ABL DIP Agent may continue to exercise cash dominion (or the exercise of rights under any deposit account control agreements in connection therewith) (other than on account of clause (b) of the definition of "Cash Dominion Period" in the ABL DIP Loan Agreement pursuant to which the ABL DIP Agent has also elected to terminate the "Commitments" under the ABL DIP Loan Agreement) during the Remedies Notice Period, to the extent the ABL DIP Agent has already done so prior to the commencement of the Remedies Notice Period, in each case, as, to the extent and for so long as expressly permitted under the terms of the ABL DIP Loan Agreement.

        (c)      Unless the Court finds otherwise during the Remedies Notice Period, following the expiration of the Remedies Notice Period, without further notice to, hearing or order from the Court, the automatic stay of section 362 of the Bankruptcy Code shall automatically be vacated and modified for the purposes of (i) permitting the applicable DIP Secured Parties to exercise, subject to the DIP Intercreditor Agreement, any and all rights and remedies available to them under this Final Order, the DIP Loan Documents and applicable law (including, without limitation, the enforcement of rights against DIP Collateral pursuant to clauses (ix), (x) and (xi) of paragraph 22(b)), and, (ii) following the funding of the Carve Out Reserves and the Payment in

Full of the DIP Obligations (unless the ABL DIP Required Lenders and/or the Term DIP Required Lenders have otherwise agreed in writing as to the applicable obligations owed to them), permitting the Prepetition Agents (acting the request of the Prepetition Secured Parties) to exercise all rights and remedies available under the Prepetition Loan Documents or applicable law with respect to Prepetition Collateral (subject to the Prepetition Intercreditor Agreements) (unless the requisite Prepetition Secured Parties have otherwise agreed in writing as to the applicable obligations owed to them).

(d)    The Debtors shall cooperate with the DIP Secured Parties and/or the Prepetition Secured Parties in their efforts to enforce their liens and security interests in the DIP Collateral or the Prepetition Collateral, as applicable, and (other than the right to contest whether a DIP Termination Event has occurred and is continuing) the Debtors shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such party from enforcing its rights or remedies in the DIP Collateral or the Prepetition Collateral, as applicable.

23.    *No Waiver by Failure to Seek Relief.* The rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties specified herein, are cumulative and not exclusive of any rights or remedies that the DIP Secured Parties or the Prepetition Secured Parties may have under the DIP Loan Documents, the Prepetition Loan Documents, applicable law or otherwise. The failure or delay on the part of any of the DIP Secured Parties or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Loan Documents, the Prepetition Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder or otherwise. No delay on the part of any party in the exercise of any right or remedy under the Interim Order, this Final Order, the DIP Loan Documents or the Prepetition Loan Documents shall preclude any other or

further exercise of any such right or remedy or the exercise of any other right or remedy. Except as expressly set forth herein or in the DIP Intercreditor Agreement, none of the rights or remedies of any party under the Interim Order, this Final Order, the DIP Loan Documents and the Prepetition Loan Documents shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the requisite parties under the DIP Loan Documents and the requisite parties under the Prepetition Loan Documents, as applicable. No consents required hereunder by any of the DIP Secured Parties or the Prepetition Secured Parties shall be implied by any inaction or acquiescence by any of the DIP Secured Parties or the Prepetition Secured Parties (as applicable).

24.    *Carve Out.*

(a)    *Carve Out.* As used in this Final Order, the term "**Carve Out**" means the sum of (i) all unpaid fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717, (ii) all unpaid reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code, (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (excluding any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors) (the "*Allowed Professional Fees*") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "*Debtor Professionals*") and the Official Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "*Committee Professionals*", and together with the Debtor Professionals, the "*Professional Persons*") at any time before or on the date of delivery by any DIP Agent, at the direction of the ABL DIP Required Lenders or the Term DIP Required Lenders, as applicable, of

a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice, and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $3.0 million incurred after the date of delivery by any DIP Agent, at the direction of the ABL DIP Required Lenders or the Term DIP Required Lenders, as applicable, of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this underline clause (iv) being the "***Post-Carve Out Trigger Notice Cap***"); *provided, however*, that nothing herein shall be construed to impair the ability of any party in interest to object to the fees, expenses, reimbursement, or compensation described in clauses (i) through (iv) of this paragraph 24(a) on any grounds. The "***Carve Out Trigger Notice***" shall mean a written notice delivered by email (or other electronic means) by any DIP Agent (at the direction of the ABL DIP Required Lenders or the Term DIP Required Lenders, as applicable) to counsel to the other DIP Agents, the Debtors, the U.S. Trustee and counsel to the Official Committee, which notice may be delivered following the occurrence and during the continuation of a DIP Termination Event, stating that the Post-Carve Out Trigger Notice Cap has been invoked.  For the avoidance of doubt, the foregoing clause (a) shall not constitute a cap on the amount of allowed fees, expenses and disbursements of Professional Persons that may be asserted as administrative expense claims against the Debtors.

(b)     Not later than the 15th calendar day after the end of each month starting with July 15, 2022 (each a "***Monthly Reporting Date***"), each Professional Person shall deliver to the Debtors and the DIP Agents (which, with respect to the Term DIP Agents, shall be through delivery to the financial or legal advisors to the Term DIP Agents and the Term DIP Lenders) a statement (each such statement, a "***Monthly Statement***") setting forth (i) the actual amount of fees and expenses (collectively, "***Fees and Expenses***") incurred during the preceding month by such

Professional Person through the last day of such month (the "***Calculation Date***"), (ii) the actual amount of such fees and expenses that have been paid by the Debtors for such month and (iii) an updated good faith non-binding estimate of the amount of fees and expenses to be incurred in the upcoming three (3) month period immediately following the Calculation Date; *provided*, that within seven (7) calendar days of the occurrence of the Termination Declaration Date, each Professional Person shall deliver to the Debtors and the DIP Agents (which, with respect to the Term DIP Agents, shall be through delivery to the financial or legal advisors to the Term DIP Agents and the Term DIP Lenders) one additional statement (the "***Final Statement***") setting forth the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Monthly Statement has been delivered and concluding on the Termination Declaration Date.  If any Professional Person fails to deliver a Monthly Statement to the Debtors and the DIP Agents by the Monthly Reporting Date, such Professional Person's entitlement (if any, and as to itself only and not as to any other Professional Person) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the month preceding such Calculation Date for which such Professional Person failed to deliver such Monthly Statement (the "***Unreported Period***") shall be limited to the aggregate unpaid amount of Allowed Professional Fees estimated for such Unreported Period in the most recently delivered Monthly Statement by such Professional Person pursuant to <u>clause (b)(iii)</u> in this paragraph (or, to the extent an estimate for the Unreported Period is not included in a previously delivered Monthly Statement, the estimated amount for such Unreported Period for such Professional Person set forth in the Approved Budget) (each an "***Unreported Period Amount***"); *provided, however,* if such Professional Person subsequently delivers a Monthly Statement ("***Subsequent Monthly Statement***") to the DIP Agents after the

Monthly Reporting Date for such Unreported Period, such Professional Person's entitlement to the funds in the Carve Out Reserves with respect to the aggregate unpaid amount of Allowed Professional Fees for such Unreported Period will be updated to be the actual Fees and Expenses set forth in such Subsequent Monthly Statement so long as the Specified ABL Reserve Amount (as defined below) is adjusted concurrently with the DIP Agents' receipt of such Subsequent Monthly Statement, whereupon such amount shall no longer be deemed to constitute an "Unreported Period Amount" as used herein. Copies of the Monthly Statements and the Final Statements shall be provided to the Official Committee, as and when required to be delivered hereunder.

(c)    *ABL Reserves*. For the avoidance of doubt, the DIP ABL Agent shall be entitled to maintain at all times a reserve against the amount of ABL DIP Loans available under the ABL DIP Facility (the "***Specified ABL Reserve***") as set forth in this paragraph 24(c) hereof (the "***Specified ABL Reserve Amount***").[16] The "***Specified ABL Reserve Amount***" shall mean (i) each Professional Person's fees and expenses estimated in the Approved Budget to be incurred during the month of June 2022, (ii) plus the amounts contemplated under paragraphs 24(a)(i) and 24(a)(ii) of this Final Order, plus (iii) the Post-Carve Out Trigger Notice Cap.  On July 1, 2022, and the first Business Day of each subsequent calendar month thereafter, the Specified ABL Reserve Amount shall be increased by the amount of each Professional Person's fees and expenses estimated to be incurred in the Monthly Report most recently delivered by such Professional Person for such month (or, to the extent an estimate for such month is not included in the most recently delivered Monthly Statement, the estimated amount for such month set forth in the Approved Budget) (the amount of such increase, the "***Added Monthly Estimate***"), and the amount

---

[16]    The Specified ABL Reserve shall constitute the "Carve Out Reserve" for purposes of the ABL DIP Loan Agreement.

of the Added Monthly Estimate <u>plus</u> the then existing Specified ABL Reserve Amount shall become the new Specified ABL Reserve Amount. On the fifteenth (15th) calendar day of each calendar month or the first Business Day thereafter (or as soon thereafter as such information is available), the Specified ABL Reserve Amount will be adjusted such that the prior calendar month's estimated Professional Persons' fees will be replaced with actual Fees and Expenses set forth in the Monthly Report (such adjustment, the "***Monthly True-Up***"). Upon actual payment in cash to a Professional Person of accrued and unpaid amounts reserved for in the Specified ABL Reserve (as reported by the Debtors to the DIP Agents), the Specified ABL Reserve Amount shall be reduced dollar-for-dollar by the amount of such payment. Not later than 5:00 p.m. New York time on the fifteenth (15th) day after the end of each calendar month starting with July 15, 2022, the Debtors shall deliver to the DIP ABL Agent and the DIP Term Agent a report setting forth a calculation of the Specified ABL Reserve Amount (the "***Fee Report***"), and, in setting the Specified ABL Reserve and calculating the Professional Fee Carve Out Cap (as defined below), the ABL DIP Agent and ABL DIP Lenders shall be entitled to rely upon such reports in accordance with the ABL DIP Loan Agreement and all amounts set forth in the Fee Reports shall be deemed conclusive evidence therefor. The ABL DIP Agent and ABL DIP Lenders, in their reasonable discretion, shall be permitted to increase the amount of the Specified ABL Reserve to the extent of any discrepancy between the information contained in the Fee Report and any other information received by the ABL DIP Agent (including, without limitation, increases with respect to any Unreported Period Amounts as a result of any Monthly Statement delivered after the Monthly Reporting Date).

(d)    *Carve Out Reserves.*  On the day on which a Carve Out Trigger Notice is delivered in accordance with paragraph 24(d) of this Final Order, (the "***Termination Declaration***

*Date*"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash (including Cash Collateral) on hand as of such date (net of any amounts held on retainer by any Professional Persons) and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees accrued on and prior to the Termination Declaration Date (the "***Pre-Carve Out Trigger Notice Reserve***"); *provided*, *however*, the amount of the Pre-Carve Out Trigger Notice Reserve shall be limited to the sum of (i) the aggregate unpaid amount of Fees and Expenses included in all Monthly Statements of all Professional Persons received by the Debtors and the DIP Agents prior to the Termination Declaration Date, *plus* (ii) all Unreported Period Amounts of all Professional Persons, *plus* (iii) the aggregate unpaid amount of Fees and Expenses included in the Final Statements received by the Debtors and the DIP Agents (such amount, the "***Professional Fee Carve Out Cap***"). On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors as of such date to utilize all cash (including Cash Collateral) on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve up to the Professional Fee Carve Out Cap, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "***Post-Carve Out Trigger Notice Reserve***" and, together with the Pre-Carve Out Trigger Notice Reserve, the "***Carve Out Reserves***"). The Carve Out Reserves shall be deposited in segregated accounts to be held in escrow by Baker Botts L.L.P. and used solely to satisfy Allowed Professional Fees benefitting from the Carve Out in accordance with the terms hereof until such Allowed Professional Fees are paid in full. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in <u>clauses (i)</u> through <u>(iii)</u> of the definition of Carve Out set forth above (the "***Pre-Carve Out Amounts***"), until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been

reduced to zero, to pay the Post-Carve Out Amounts (as defined below) up to the Post-Carve Out

Trigger Notice Cap, and then, to the extent the Post Carve Out Trigger Notice Cap has been paid

in full, to pay the applicable DIP Agents, each for the benefit of itself and the applicable DIP

Secured Parties, for application to the DIP Obligations in accordance with the DIP Intercreditor

Agreement, unless and until the DIP Obligations are Paid in Full (unless the Required DIP Lenders

have otherwise agreed in writing), in which case, any remaining excess shall be paid to the

Prepetition Notes Agents, each for the benefit of itself and the applicable Prepetition Notes Secured

Parties in accordance with the Prepetition Intercreditor Agreements (unless the requisite

Prepetition Notes Secured Parties, respectively, have otherwise agreed in writing in respect of the

applicable obligations owed to each of them). All funds in the Post-Carve Out Trigger Notice

Reserve shall be used first to pay the obligations set forth in <u>clause (iv)</u> of the definition of Carve

Out set forth above (the "***Post-Carve Out Amounts***"), until paid in full, and then, to the extent the

Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the applicable DIP

Agents, each for the benefit of itself and the applicable DIP Secured Parties, for application to the

DIP Obligations in accordance with the DIP Intercreditor Agreement, unless and until the DIP

Obligations are Paid in Full (unless the Required DIP Lenders have otherwise agreed in writing),

in which case, any remaining excess shall be paid to the Prepetition Notes Agents, each for the

benefit of itself and the applicable Prepetition Notes Secured Parties in accordance with the

Prepetition Intercreditor Agreements (unless requisite Prepetition Notes Secured Parties,

respectively, have otherwise agreed in writing in respect of the applicable obligations owed to each

of them). Notwithstanding anything to the contrary in the DIP Loan Documents, the Prepetition

Loan Documents or this Final Order, if either of the Carve Out Reserves is not funded in full in

the amounts set forth in this paragraph 24, then, any excess funds in one of the Carve Out Reserves

following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 2424, prior to making any payments to the DIP Agents, for themselves and for the benefit of the DIP Secured Parties, the Prepetition Notes Agents or any of the Debtors' creditors, as applicable. Notwithstanding anything to the contrary in the DIP Loan Documents, the Prepetition Loan Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agents and the Prepetition Notes Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but the DIP Liens and the Adequate Protection Liens shall automatically attach to any residual interest in the Carve Out Reserves (which liens shall be deemed automatically perfected senior liens), with any excess paid to the DIP Agents, for the benefit of themselves and the applicable DIP Secured Parties, for application to the DIP Obligations in accordance with the DIP Intercreditor Agreement, unless and until the DIP Obligations are Paid in Full (unless the Term DIP Required  Lenders or ABL DIP Required Lenders, as applicable, have otherwise agreed to in writing in respect of the applicable obligations owed to them), in which case, any remaining excess shall be paid to the Prepetition Notes  Secured Parties in accordance with the Prepetition Intercreditor Agreements (unless the requisite Prepetition Notes Secured Parties, respectively, have otherwise agreed in writing in respect of the applicable obligations owed to each of them); *provided*, *however*, if, to the extent and for so long as expressly permitted under the ABL DIP Loan Agreement, the ABL DIP Agent has exercised cash dominion or otherwise exercised rights under a deposit account control agreement (other than on account of clause (b) of the definition of "Cash Dominion Period" in the ABL DIP Loan Agreement pursuant to which the ABL DIP Agent has also elected to terminate the

"Commitments" under the ABL DIP Loan Agreement) prior to the Termination Declaration Date, the ABL DIP Agent shall not be required to cease such action and may continue to do so from and after the Termination Declaration Date, in each case, as, to the extent and for so long as expressly permitted under the ABL DIP Loan Agreement. Notwithstanding anything to the contrary in this Final Order, (a) disbursements by the Debtors from the Carve Out Reserves shall not constitute loans or indebtedness under the DIP Loan Documents or the Prepetition Loan Documents or otherwise increase or reduce the DIP Obligations or the Prepetition Secured Obligations, (b) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (c) nothing contained herein shall constitute a cap or limitation on the ability of the Professional Persons to assert a claim on account of Allowed Professional Fees that are due and payable by the Debtors.

(e)       *[Intentionally Omitted].*

(f)       *Payment of Carve Out on or After the Termination Declaration Date*. Any payment or reimbursement made after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

(g)       *No Direct Obligation to Pay Allowed Professional Fees.* None of the DIP Secured Parties or the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in the Interim Order, this Final Order or otherwise shall be construed to obligate the DIP Secured Parties or the Prepetition Secured Parties, in any way, to pay compensation to, or to

reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(h)     *Priority of Carve Out.* For the avoidance of doubt, notwithstanding anything to the contrary in this Final Order, the Carve Out shall be senior to all liens, security interests, and superpriority claims granted hereunder, under the DIP Loan Documents or the Prepetition Loan Documents, including the DIP Liens, the DIP Superpriority Claims, the DIP Obligations, the Adequate Protection Liens, the Adequate Protection Claims, the Adequate Protection Obligations and the Prepetition Secured Obligations.

25.     *Effect of the Debtors' Stipulations on Third Parties.*

(a)     The Debtors' Stipulations contained in paragraph F of this Final Order shall be binding upon the Debtors and any successor thereto in all circumstances and for all purposes immediately upon entry of the Interim Order. The Debtors' Stipulations contained in paragraph F of this Final Order shall be binding upon the Official Committee, all other creditors, and all other parties-in-interest (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) and each of their respective successors and assigns, in all circumstances and for all purposes, unless (i) the Official Committee (and, in the case of any potential Roll Up Challenge, only the Official Committee) or such other party-in-interest (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so) has timely and duly filed a motion for standing to pursue an adversary proceeding or contested matter (subject to the limitations contained herein) (each, a "***Challenge Proceeding***") by no later than the Challenge Deadline (as defined below), (A)  objecting to or alleging any basis to impair, restrict, deny or otherwise challenge the right of any of the Prepetition Secured Parties to credit bid, in whole or in

part, the Prepetition Liens or the Prepetition Secured Obligations under section 363(k) of the Bankruptcy Code or otherwise, (B) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens or the Prepetition Collateral, or otherwise objecting to or challenging any of the admissions, stipulations, findings or releases included in the Debtors' Stipulations (for the avoidance of doubt, any challenge to the value of any Prepetition Collateral for purposes of a chapter 11 plan, determining Diminution in Value or other valuation matter shall not be subject to the Challenge Period (as defined below)), (C) asserting or prosecuting any so-called "lender liability" claims, Avoidance Actions or any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action seeking reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery with respect to the Prepetition Liens, the Prepetition Secured Obligations or the Prepetition Loan Documents, (D) asserting or prosecuting any other claim or Cause of Action of any nature or description whatsoever, whether arising under the Bankruptcy Code, applicable law or otherwise, against any of the Prepetition Secured Parties or their Representatives (clauses (A)-(D), collectively, the "**Challenges**", and each, a "**Challenge**"), (ii) this Court enters an order granting the Official Committee or such other party-in-interest standing to pursue such Challenge, and (iii) there is entered a final non-appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such timely Challenge in any duly-filed Challenge Proceeding; *provided, however,* that (i) as to the Debtors, any and all such Challenges are hereby irrevocably waived and relinquished as of the Petition Date; *provided, further however*, that any pleadings filed in connection with any Challenge Proceeding, including any motion filed with the Court

seeking requisite standing and authority to pursue a Challenge, shall include a draft complaint attached thereto and shall otherwise set forth with specificity the basis for each such Challenge, and any Challenge not so specified in a Challenge Proceeding timely and properly filed prior to the Challenge Deadline shall be deemed forever, waived, released and barred.

(b)    If no such Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court does not rule in favor of the plaintiff in any such Challenge Proceeding (and such ruling becomes final and non-appealable), then, without further notice or order of the Court, (i) each of the admissions, stipulations, findings and releases contained in the Debtors' Stipulations shall be binding on all parties-in-interest, including, without limitation, the Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, and any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), (ii) the Prepetition Secured Obligations shall constitute allowed claims against each of the Debtors in the Chapter 11 Cases and any Successor Cases, and the Prepetition Liens shall be deemed to be legal, valid, binding, continuing, perfected and enforceable, as of the Petition Date, against each of the Debtors in the Chapter 11 Cases and any Successor Cases, (iii) the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Loan Documents shall not be subject to any other or further Challenge, contest, attack, objection, challenge, defense, claim, counterclaim, reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, by the Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including,

without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) (for the avoidance of doubt, any challenge to the value of any Prepetition Collateral for purposes of a chapter 11 plan, determining Diminution in Value or other valuation matter shall not be subject to the Challenge Period), and (iv) any and all claims, Causes of Action or Challenges against any of the Prepetition Secured Parties or any of their Representatives (in their capacities as such) shall be deemed forever waived, released and barred.

(c)        If any such Challenge Proceeding is timely filed by the Challenge Deadline, the Debtors' Stipulations shall nonetheless remain binding and preclusive on the Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, and any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), except to the extent that any of the admissions, stipulations, findings or releases contained in the Debtors' Stipulations were expressly challenged in such Challenge Proceeding (and solely as to the plaintiff party that timely filed such Challenge Proceeding and not, for the avoidance of doubt, any other party-in-interest).

(d)        The "***Challenge Deadline***" means the date that is (i) seventy-five (75) calendar days after the entry of the Interim Order, (ii) such later date as has been agreed to, in writing, by the requisite Prepetition Secured Parties and/or Prepetition Agents under the affected Prepetition Loan Documents, or (iii) such later date as has been ordered by the Court, for cause shown, upon a motion filed and served within the time period set forth in clause (i) of this paragraph 25(d) (such time period, the "***Challenge Period***"). In the event that, prior to the Challenge Deadline, the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy

Code or a chapter 11 trustee is appointed in these Chapter 11 Cases, the Challenge Deadline shall be extended for a period of up to thirty (30) days from the date of such appointment (or such later date as may be ordered by the Court) solely with respect to any such chapter 7 trustee or chapter 11 trustee. If the Official Committee files a motion seeking standing to commence a Challenge prior to the Challenge Deadline in accordance with the requirements set forth in paragraph 25(a) of this Final Order, the Challenge Deadline shall be extended (solely as to the Official Committee and solely as to the Challenges specifically identified in the complaint attached to such standing motion) until the earlier of (i) the date such standing motion is withdrawn, or (ii) entry of a final non-appealable order of the Court denying such standing motion.

(e)      For the avoidance of doubt, subject in the case of the Roll Up to paragraph 2(d) of this Final Order, the Debtors' stipulations, waivers, agreements and releases contained in paragraph E of this Final Order shall <u>not</u> be subject to Challenge, and shall be binding upon the Debtors and their estates, and any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or selected in any of the Chapter 11 Cases or any Successor Cases), the Official Committee, all other creditors and all parties-in-interest and each of their respective successors and assigns, in all circumstances and for all purposes, immediately upon entry of the Interim Order.

(f)      Nothing in this Final Order vests or confers on any person or entity, including the Official Committee, standing or authority to pursue any Challenge belonging to the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved.

26.      *Limitations on Use of DIP Collateral, Cash Collateral, Carve Out or Other Funds.* Notwithstanding anything contained in the Interim Order, this Final Order, or any other order of

the Court to the contrary, no DIP Collateral, Prepetition Collateral, DIP Loans, Cash Collateral, proceeds of any of the foregoing, or any portion of the Carve Out, may be used (nor shall any professional fees, costs or expenses be paid or applied in connection therewith) by any of the Debtors, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-interest (including without limitation any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), directly or indirectly, to:

(a)     investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, assert, initiate, commence, support or prosecute (or finance the initiation or prosecution of) any claim, counterclaim, cross-claim, Cause of Action, suit, arbitration, application, motion, contested matter, objection, defense, adversary proceeding, litigation or other proceeding of any nature or description (whether for monetary, injunctive, affirmative relief or otherwise) against any of the DIP Secured Parties or the Prepetition Secured Parties or their respective Representatives, including, without limitation, (i) any objection or challenge to the amount, validity, enforceability, extent, perfection or priority the DIP Loan Documents, the DIP Obligations, the DIP Liens, the DIP Collateral, the Adequate Protection Liens, the Adequate Protection Claims and the other Adequate Protection Obligations, the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens or the Prepetition Collateral, (ii) any Avoidance Actions, (iii) any so-called "lender liability" claims, (iv) any claim or Cause of Action seeking the invalidation, reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharging or recovery with respect to the DIP Liens, the DIP Obligations, the DIP Loan Documents, the DIP Collateral, the Adequate Protection Liens, the Adequate Protection Claims and the other Adequate Protection Obligations, the Prepetition Liens, the Prepetition Secured Obligations, the Prepetition Loan Documents or the Prepetition Collateral, (vi) any other claim or Cause of Action of any nature and description whatsoever, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against any of the DIP Secured Parties or the Prepetition Secured Parties or their respective Representatives; *provided* that the foregoing shall not apply to any issues related to valuation in connection with a chapter 11 plan, the quantification of any Diminution in Value or other valuation matter;

(b)     object to, appeal or otherwise challenge this Final Order , the DIP Facilities, the DIP Obligations, the DIP Liens, the DIP Loan Documents or the transactions contemplated hereunder or thereunder;

(c)     object to or seek to impair, modify or interfere with any of the rights, remedies, priorities, privileges, protections or benefits granted to the DIP Secured Parties or the Prepetition Secured Parties under the Interim Order, this Final Order, or the DIP

Loan Documents (other than to contest whether an asserted DIP Termination Event has occurred and is continuing);

(d)      object to or seek to prevent, hinder, interfere with or otherwise delay any of the DIP Secured Parties' or Prepetition Secured Parties' assertion, enforcement, exercise of remedies or realization upon any DIP Collateral or Prepetition Collateral (as applicable) in accordance with the Interim Order, this Final Order, the DIP Loan Documents or the Prepetition Loan Documents (as applicable) (other than to contest whether an asserted DIP Termination Event has occurred and is continuing);

(e)      seek or request authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to sections 364(c) or (d) of the Bankruptcy Code, or otherwise, unless such financing is sufficient to cause the Payment in Full of all DIP Obligations and all Adequate Protection Obligations contemporaneously with the closing of such financing (or as otherwise agreed in writing by the Required DIP Lenders and the requisite Prepetition Secured Parties, as applicable);

(f)      seek or request authorization to obtain superpriority claims or liens or security interests (other than liens or security interests expressly permitted under this Final Order or the DIP Loan Documents) in any portion of the DIP Collateral that are senior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens or the Adequate Protection Claims unless all DIP Obligations and Adequate Protection Obligations have been Paid in Full (or as otherwise agreed in writing by the Required DIP Lenders or the requisite Prepetition Secured Parties, as applicable); or

(g)      seek or request to use Cash Collateral or sell or otherwise dispose of DIP Collateral or Prepetition Collateral (without the prior written consent of the Required DIP Lenders or the requisite Prepetition Secured Parties, as applicable) other than as provided in this Final Order and in the DIP Loan Documents; or

(h)      seek to pay any amount on account of any claims arising prior to the commencement of these Chapter 11 Cases, unless such payments are agreed to in writing by the Required DIP Lenders (or are otherwise expressly included in the Approved Budget);

*provided, however*, that no more than an aggregate amount of $200,000 of the DIP Collateral, Prepetition Collateral, DIP Loans, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve Out or any other funds may be used for allowed fees and expenses incurred by the Official Committee prior to the Challenge Deadline to investigate (but not to litigate, contest, initiate, assert, join, commence, support or prosecute any claim, Cause of Action or Challenge, including by way of discovery, with respect to), the Debtors' Stipulations contained in paragraph F hereof; *provided, further,* that, for the avoidance of doubt, any such fees and/or expenses in

excess of $200,000 incurred by the Official Committee in connection with the foregoing and allowed by the Court under Sections 328, 330, 331 and/or 503(b) of the Bankruptcy Code shall constitute administrative expenses payable under any chapter 11 plan.

27.    *Limitation on Charging Expenses.* Except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any Successor Cases at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the DIP Secured Parties or the Prepetition Secured Parties, respectively, upon the DIP Collateral or the Prepetition Collateral, respectively, shall be charged against or recovered from the DIP Collateral as to DIP Secured Parties or the Prepetition Collateral as to the Prepetition Secured Parties, whether pursuant to section 506(c) of the Bankruptcy Code, any other legal or equitable doctrine (including unjust enrichment) or otherwise, without the prior written consent of the Required DIP Lenders with respect to the DIP Collateral or the requisite Prepetition Secured Parties under the applicable Prepetition Loan Documents with respect to the Prepetition Collateral, each in their sole discretion, and no such consent shall be implied, directly or indirectly, from anything contained in the Interim Order or this Final Order (including, without limitation, consent to the Carve Out or the approval of any budget hereunder) or from any other action, inaction, or acquiescence by any of the DIP Secured Parties or any of the Prepetition Secured Parties.

28.    *No Marshalling; Section 552(b) Waiver.* In no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition Collateral or the Prepetition Secured Obligations (as applicable), and all proceeds shall be received and applied in accordance with this Final Order, the DIP Loan Documents and the Prepetition Loan

Documents (subject to the Intercreditor Agreements), as applicable; *provided, however,* that the DIP Secured Parties and the Prepetition Secured Parties shall utilize commercially reasonable efforts to seek repayment of all DIP Obligations and Adequate Protection Obligations, *first*, from assets constituting DIP Collateral (other than Avoidance Action Proceeds) that are capable of being monetized within a commercially reasonable time frame, and, *second*, to the extent the DIP Obligations and Adequate Protection Obligations have not been Paid in Full, from Avoidance Action Proceeds (excluding, in the case of DIP Liens securing the DIP Roll Up Loans or DIP Obligations arising under the Roll Up Loans, the Specified Avoidance Action Proceeds). Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Parties or the Prepetition Collateral.

29.    *Right to Credit Bid.* Subject to section 363(k) of the Bankruptcy Code, (a) each of the ABL DIP Agent and the Term DIP Collateral Agent or its designee (in each case, acting at the request of the ABL DIP Required Lenders or the Term DIP Required Lenders, as applicable), shall have the right to credit bid all or any portion of DIP Collateral in accordance with the DIP Loan Documents (subject to the DIP Intercreditor Agreement), up to the full amount of the applicable DIP Obligations (subject in the case of the DIP Roll Up Loans to paragraph 2(d) of this Final Order), and (b) subject to paragraph 25 of this Final Order, each of the Prepetition Notes Agents or its/their designee(s) (in each case, acting at the request of the requisite Prepetition Notes Secured Parties under the applicable Prepetition Notes Loan Documents) shall have the right to credit bid all or any portion of the Prepetition Collateral in accordance with the applicable Prepetition Notes Loan Documents (subject to the Intercreditor Agreements) up to the full amount of the applicable Prepetition Notes Secured Obligations (as applicable), in the case of each of foregoing clauses (a)

and (b), without the need for further order of the Court authorizing same, whether in a sale under or pursuant to section 363 of the Bankruptcy Code, a Chapter 11 plan subject to confirmation under section 1129(b)(2)(A) of the Bankruptcy Code, a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code, or otherwise. Any DIP Agent (acting at the request of the ABL DIP Required Lenders or the Term DIP Required Lenders, as applicable) and the Prepetition Notes Agents (acting at the request of the requisite Prepetition Notes Secured Parties under the applicable Prepetition Notes Loan Documents), shall each have the absolute right to assign, transfer, sell, or otherwise dispose of their respective rights to credit bid (subject to the Intercreditor Agreements and this Final Order) to any acquisition vehicle formed in connection with such bid or other designee.

30.     *Binding Effect; Successors and Assigns*. From and after entry of the Interim Order, subject to paragraph 25 of this Final Order, the provisions of the DIP Loan Documents and this Final Order, including all findings and conclusions of law herein, were and shall hereby continue to be binding upon all parties in interest in the Chapter 11 Cases and any Successor Cases, including without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Official Committee or any other committee appointed or formed in the Chapter 11 Cases and any Successor Cases, and their respective successors and assigns (including any chapter 11 trustee or chapter 7 trustee or examiner appointed or elected in the Chapter 11 Cases or any Successor Cases, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of each of the Debtors, the DIP Secured Parties and the Prepetition Secured Parties and their respective successors and assigns; *provided, however,* that, for the avoidance of doubt, the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to make any loan, permit the use of DIP

Collateral or Prepetition Collateral (including Cash Collateral) or extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases.

31.     *No Modification of Final Order.* Until and unless the DIP Obligations and the Adequate Protection Obligations have been Paid in Full, the Debtors irrevocably waive the right to seek, and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the Required DIP Lenders, (i) any modification, stay, vacatur or amendment to this Final Order, (ii) the allowance of any claim against any Debtor in the Chapter 11 Cases or any Successor Cases equal or superior to the DIP Superpriority Claims (other than the Carve Out), (iii) the grant of any lien or security interest on any DIP Collateral with priority equal to or superior to the DIP Liens, except as expressly permitted hereunder or under the DIP Loan Documents, (iv) the entry of any order authorizing the use of DIP Collateral (including Cash Collateral) that is inconsistent with this Final Order, or (b) without the prior written consent of the Prepetition Notes Agents, acting at the direction of the requisite Prepetition Notes Secured Parties, (i) any modification, stay, vacatur or amendment to this Final Order that adversely affects the rights, remedies, benefits or protections of the applicable Prepetition Notes Secured Parties, (ii) the allowance of any claim against any Debtor in the Chapter 11 Cases or any Successor Cases equal or superior to the Adequate Protection Claims (other than the Carve Out and the DIP Superpriority Claims), or (iii) the grant of any lien or security interest on any DIP Collateral or Prepetition Collateral with priority equal to or superior to the Adequate Protection Liens, except as expressly permitted hereunder or under the DIP Loan Documents.

32.     *Proceeds of Subsequent Financings.* Without limiting the provisions of the immediately preceding paragraph, if at any time prior to the Payment in Full of all of the DIP

Obligations and the Adequate Protection Obligations, either the Debtors, the Debtors' estates, any chapter 11 trustee, chapter 7 trustee or examiner with enlarged powers, or any responsible officer subsequently appointed in any of the Chapter 11 Cases or any Successor Cases, shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Final Order or the DIP Loan Documents, then, unless otherwise agreed in writing by the Required DIP Lenders, (i) all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agents, for further distribution to the applicable DIP Secured Parties on account of their applicable DIP Obligations pursuant to the DIP Loan Documents in accordance with the DIP Intercreditor Agreement, and (iii) after the Payment in Full of all DIP Obligations (subject to paragraph 2(d) with respect to the DIP Roll Up Loans), upon further order of the Court, all of the cash proceeds derived from such credit or debt shall, subject to paragraph 25 of this Final Order, immediately be turned over to the Prepetition Notes Agents for further distribution to the applicable Prepetition Notes Secured Parties on account of their applicable Prepetition Notes Secured Obligations pursuant to the terms of this Final Order and the applicable Prepetition Notes Loan Documents (subject to the Intercreditor Agreements).

33.     *Preservation of Rights Granted Under Final Order.*

(a)     *Discharge Waiver.* The DIP Obligations, the DIP Superpriority Claims, the Adequate Protection Claims and the other Adequate Protection Obligations shall not be discharged by the entry of an order confirming any chapter 11 plan in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code (the Debtors having hereby waived such discharge pursuant to section 1141(d) of the Bankruptcy Code, which waiver is hereby approved), unless the DIP Obligations, the DIP Superpriority Claims, the Adequate Protection Claims and the other Adequate Protection Obligations have been Paid in Full on or

before the effective date of such confirmed plan (or as otherwise agreed in writing by the Required

DIP Lenders and/or the requisite Prepetition Notes Secured Parties in respect of the applicable

obligations owed to each of them). None of the Debtors shall propose or support any chapter 11

plan or sale of all or substantially all of the Debtors' equity or assets, or order confirming such

plan or approving such sale, that is not conditioned upon the Payment in Full of all DIP

Obligations, the DIP Superpriority Claims, the Adequate Protection Claims and the other Adequate

Protection Obligations on or prior to the earlier to occur of the effective date of such chapter 11

plan or sale, without the prior written consent of the Required DIP Lenders and the requisite

Prepetition Notes Secured Parties.

    (b) *Good Faith Under Section 364(e) of the Bankruptcy Code.* The DIP Secured

Parties and the Prepetition Secured Parties have acted in good faith in connection with the Interim

Order, this Final Order, the DIP Facilities and the DIP Loan Documents, and their reliance on the

Interim Order and this Final Order is in good faith. Based on the findings set forth in the Interim

Order and this Final Order and upon the record made at the Interim Hearing, the Final Hearing and

during these Chapter 11 Cases, the DIP Secured Parties and the Prepetition Secured Parties are

entitled to the full protections provided in section 364(e) of the Bankruptcy Code, and if any or all

of the provisions of this Final Order or the DIP Loan Documents are hereafter reversed or modified

by a subsequent judgment or order of this Court or any other court, any such reversal or

modification shall not affect (i) the validity or enforceability of advances previously made

hereunder or under the DIP Loan Documents by the DIP Secured Parties to the Debtors, (ii) the

validity or enforceability of any obligation, indebtedness or liability incurred under the Interim

Order, this Final Order or the DIP Loan Documents (including the DIP Obligations and the

Adequate Protection Obligations) to the DIP Secured Parties or the Prepetition Secured Parties,

(iii) the validity, enforceability, or perfection of any of the claims, liens, security interests, rights, privileges or benefits granted hereunder or under the DIP Loan Documents to the DIP Secured Parties or the Prepetition Secured Parties, or (iv) the payment of any fees, costs, expenses or other amounts under the Interim Order, this Final Order or the DIP Loan Documents, in the case of each of the foregoing, prior to the actual receipt of written notice by any DIP Agent and/or the Prepetition Agents (as applicable) of the effective date of such reversal or, modification. Notwithstanding any such reversal or modification, any such claim, lien, or security interest, right, privilege, remedy or benefit shall be governed in all respects by the original provisions of this Final Order, the Intercreditor Agreements and the DIP Loan Documents.

(c)      *Survival.* Notwithstanding anything contained herein or in the DIP Loan Documents to the contrary, the terms and provisions of this Final Order and the DIP Loan Documents (including, without limitation, all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits, and protections granted to the DIP Secured Parties and the Prepetition Secured Parties under this Final Order and the DIP Loan Documents), and any actions taken pursuant hereto or thereto, shall survive, shall continue in full force and effect, shall remain binding on all parties-in-interest, and shall be governed by the original provisions of this Final Order and maintain their priorities as set forth in this Final Order, and shall not be modified, impaired, or discharged by, entry of any order that may be entered (i) confirming any chapter 11 plan in any of the Chapter 11 Cases, (ii) converting any or all of the Chapter 11 Cases to a case (or cases) under chapter 7 of the Bankruptcy Code, (iii) dismissing any or all of the Chapter 11 Cases, (iv) pursuant to which the Court abstains from hearing any of the Chapter 11 Cases, or (v) approving the sale or disposition of any DIP Collateral (except as expressly permitted in the DIP Loan Documents or as otherwise contemplated by the DIP Intercreditor Agreement), in each

case, until all of the DIP Obligations, the Adequate Protection Obligations and the Prepetition Secured Obligations have been Paid in Full (unless the Required DIP Lenders and/or the requisite Prepetition Notes Secured Parties have otherwise agreed in writing in respect of the applicable obligations owed to each of them).

(d)      *Dismissal/Conversion.* If any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code (or otherwise) or converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), that (i) all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the DIP Secured Parties and the Prepetition Secured Parties hereunder and under the DIP Loan Documents shall continue in full force and effect and shall maintain their priorities as provided in this Final Order and the Intercreditor Agreements until all DIP Obligations, Adequate Protection Obligations and Prepetition Secured Obligations have been Paid in Full (and that all such claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections, notwithstanding such dismissal or conversion, shall remain binding on all parties in interest and shall not be affected), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing the Interim Order, this Final Order, the DIP Loan Documents, the Intercreditor Agreements and all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the DIP Secured Parties and the Prepetition Secured Parties hereunder or thereunder.

34.      *Loss or Damage to Collateral.* So long as the DIP Agents and the DIP Lenders comply with their obligations under the DIP Loan Documents, (a) the DIP Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral,

(ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne solely by the Debtors.

35.    *Proofs of Claim.* The DIP Secured Parties and the Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases or any of the Successor Cases in order to assert claims for payment in respect of the DIP Obligations, the Adequate Protection Obligations or the Prepetition Secured Obligations. The Debtors' Stipulations, acknowledgments and provisions of this Final Order are deemed sufficient to and do constitute timely filed proofs of claim in respect of such claims arising under the DIP Obligations, the Adequate Protection Obligations and the Prepetition Secured Obligations against each of the applicable Debtors. Any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Chapter 11 Cases shall not apply to the DIP Secured Parties, the Prepetition Secured Parties, the DIP Obligations or the Prepetition Secured Obligations; *provided, however,* that, notwithstanding any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, any DIP Agent (on behalf of itself or any of the DIP Lenders), or any of the Prepetition Agents (on behalf of themselves and the applicable Prepetition Secured Parties (as applicable)), in their discretion, may (but are not required to) file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or any Successor Cases, and any such proof of claim may (but is not required to be) filed as one consolidated master proof of claim in the Debtors' lead Chapter 11 Case against all of the Debtors, which shall be deemed to have been filed against each and every Debtor. Such consolidated or master proofs of claim shall not be required to attach any instruments, agreements or other

documents evidencing the obligations owing by each of the Debtors to the applicable party, which instruments, agreements or other documents will be provided upon reasonable written request to the DIP Agents (which, with respect to the Term DIP Agents, shall be through delivery to the financial or legal advisors to the Term DIP Agents and the Term DIP Lenders) or the applicable Prepetition Agents, as the case may be. Any proof of claim filed by or on behalf of any of the DIP Secured Parties or the Prepetition Secured Parties shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

36.   *Limitation of Liability.* Nothing in the Interim Order, this Final Order, the DIP Loan Documents or any documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or the Prepetition Secured Parties (in their respective capacities as such) of any liability for any claim arising from, in connection with or related to the prepetition or postpetition activities of the Debtors and their respective affiliates in the operation of their businesses, their restructuring efforts or in connection with the administration of these Chapter 11 Cases. In determining to make any loan or extension of credit, or permit the use of Cash Collateral, or in exercising any rights or remedies hereunder, under the DIP Loan Documents or the Prepetition Loan Documents, neither the DIP Secured Parties nor the Prepetition Secured Parties (in their respective capacities as such) shall (a) be deemed to be in control of the operations of the Debtors, (b) owe any fiduciary duty to the Debtors or their creditors, shareholders or estates, or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or any similar terms are used in the United States Comprehensive Environmental Response,

Compensation and Liability Act, 42, U.S. §§ 9601 *et seq*., as amended, or any similar federal or state statute).

      37.    *Intercreditor Agreements.*

      (a)    Pursuant to section 510 of the Bankruptcy Code, the Intercreditor Agreements, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Loan Documents (i) shall continue to remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including, for the avoidance of doubt, with respect to the Adequate Protection Liens) and DIP Secured Parties, and (iii) shall not be deemed amended, altered or modified by the terms of this Final Order, except to the extent expressly set forth herein.

      (b)    Notwithstanding anything contained herein to the contrary, upon the execution of joinders by the DIP Agents to the Prepetition ABL/Notes Intercreditor Agreement and upon the ABL Refinancing Effective Date, each of which occurred on June 6, 2022 (such date, the "***DIP Intercreditor Effective Date***"), without any further action by any other party, the terms of the Prepetition ABL/Notes Intercreditor Agreement were deemed automatically and immediately amended and modified as follows:

      (i)    the Term DIP Administrative Agent shall be deemed to constitute a "Notes Representative" and the "Designated Notes Representative", the Term DIP Liens and adequate protection liens granted to the Prepetition Senior Priority Notes Secured Parties and the Junior Priority Notes Secured Parties shall be deemed to constitute "Notes Liens", and the Term DIP Obligations and the Adequate Protection Obligations granted to the Prepetition Senior Priority Notes Secured Parties and the Junior Priority Notes Secured Parties shall be deemed to constitute "Notes Obligations";

      (ii)    the ABL DIP Agent shall be deemed to constitute the "ABL Representative", the ABL DIP Liens shall be deemed to constitute "ABL Liens", the ABL DIP Obligations shall be deemed to constitute "ABL Obligations and the ABL DIP Credit Agreement shall be deemed to constitute an "ABL Agreement";

(iii)     the following definitions shall be added to Section 1.2 in appropriate alphabetical order:

"Avoidance Actions" means any and all claims and causes of action of any Debtor's estate arising under Chapter 5 or section 724(a) of the Bankruptcy Code.

"Avoidance Action Proceeds" means the proceeds of or property recovered, whether by judgment, settlement or otherwise, from Avoidance Actions.

"Port Neches Insurance Proceeds" means any and all insurance proceeds (including, without limitation, from business interruption, property or casualty policies and any settlements, recoveries or proceeds therefrom) payable to or received by the Debtors in connection with the explosion of the Debtors' chemical plant in Port Neches, Texas in November, 2019.

"TPC Holdings Assets" means all assets, whether now owned or hereafter acquired, by TPC Holdings, Inc., a Delaware corporation.

(iv)     clause (k) of the definition of "ABL Facility Priority Collateral" set forth in Section 1.2 shall be amended and restated as set forth below:

(k)     (x) the TPC Holdings Assets, and (y) to the extent not otherwise included, all Proceeds (including without limitation, all insurance proceeds related to clauses (a) through (j) above and this clause (k)), Supporting Obligations and products of any and all of the foregoing described in clauses (a) through (j) above and this clause (k) and all collateral security and guarantees given by any Person with respect to any of the foregoing described in clauses (a) through (j) above and this clause (k); *provided*, that, notwithstanding anything contained herein, the ABL Facility Priority Collateral shall not include the Port Neches Insurance Proceeds, Avoidance Actions or Avoidance Action Proceeds.

(v)     clause (i) of the definition of "Notes Priority Collateral" set forth in Section 1.2 shall be amended and restated as set forth below:

(i)     (x) the Port Neches Insurance Proceeds, (y) all Avoidance Actions and all Avoidance Action Proceeds, and (z) to the extent not otherwise included, all Proceeds (including without limitation, all insurance proceeds related to the above and any identifiable proceeds of items (a) through (h) of this definition contained in any Deposit Accounts, Securities Accounts and Commodity Accounts that otherwise constitute ABL Facility Priority Collateral), Supporting Obligations and products of any and all of the foregoing and all collateral security and guarantees given by any Person with respect to any of the foregoing.

(vi)    the penultimate sentence of Section 4.3 shall be amended and restated as set forth below:

To the extent any insurance proceeds constituting ABL Facility Priority Collateral are received for business interruption (other than, for the avoidance of doubt, the Port Neches Insurance Proceeds), such proceeds shall first be applied to the ABL Obligations and then to the Notes Obligations.

(c)    From and after the DIP Intercreditor Effective Date, the Debtors, the DIP Agents, the DIP Secured Parties, the Prepetition Notes Agents and the Prepetition Notes Secured Parties each were and shall continue to be bound by and party to, and in all respects the DIP Facilities and Prepetition Notes Secured Obligations were and shall continue to be governed by, the DIP Intercreditor Agreement; *provided* that the DIP Intercreditor Agreement shall not be further amended or modified without the prior written consent of the Required DIP Lenders.

38.    *Chubb Reservation of Rights*. Nothing, including the DIP Loan Documents and/or this Final Order, alters or modifies the terms and conditions of any insurance policies or related agreements issued by Westchester Surplus Lines Insurance Company, Illinois Union Insurance Company, and/or any of their respective U.S.-based affiliates or successors (collectively, "*Chubb*"). The Debtors are authorized under the DIP Loan Documents to make all payments required by the Chubb Quotes dated May 27, 2022.

39.    *Reservation of Rights of Governmental Units*. Notwithstanding anything to the contrary in this Final Order or the DIP Loan Documents, nothing in this Final Order or the DIP Loan Documents shall: (i) relieve the Debtors of any obligations under federal, state or local police or regulatory laws or under 28 U.S.C. § 959(b) that are applicable to the Debtors; (ii) impair, adversely affect, or expand any right under applicable law of any Governmental Unit with respect to any interest of any Governmental Unit in any financial assurance, letter of credit, trust, surety bond, or insurance proceeds in place as required by the Governmental Unit under federal, state or

local police or regulatory laws; (iii) impair, adversely affect, or expand any Governmental Unit's rights, claims, and defenses under applicable law of set-off and recoupment, or those of any Governmental Unit's respective agencies, departments or agents, and all such rights, claims and defenses shall be preserved in their entirety; (iv) waive, impair, adversely affect, or expand any Governmental Unit's rights under applicable law, to refuse to provide its consent to the proposed assumption and/or assignment of any lease, executory contract, license, or permit; (v) limit any Governmental Unit in the exercise of its police powers in accordance with 11 U.S.C. § 362(b)(4); or (vi) impair or adversely affect the right of any Governmental Unit to object to any credit bid for cause; *provided*, that all rights, claims and defenses of the Debtors, the DIP Secured Parties and the Prepetition Secured Parties in connection with each of the foregoing, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, are expressly preserved.

40.    *Environmental Liabilities to Governmental Units*. Paragraphs E, F, 25 and 36 of this Final Order shall apply to or are made binding on environmental liabilities (if any) to any Governmental Unit only so long as the actions of the DIP Secured Parties, the Prepetition Secured Parties, or any successors or predecessors thereof have not constituted, and do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F) or (G), actual participation in the management or operational affairs of a vessel or facility owned or operated by the Debtors, or otherwise caused the status of owner or operator to exist under applicable federal, state, or local law. Each of the DIP Secured Parties and the Prepetition Secured Parties preserves and is not waiving any defenses they may have as to any claims set forth in 42 U.S.C. § 9601(20)(F) or (G) or comparable federal, state and local law.

41.    *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Secured Parties or the Prepetition Secured Parties pursuant to the DIP Loan Documents, the

Intercreditor Agreements, the Interim Order, this Final Order or any subsequent order of this Court shall be irrevocable (subject (a) in the case of certain professional fees, to the fee review procedures set forth in paragraph 12 of this Final Order, (b) in the case of the DIP Roll Up Loans, to paragraph 2(d) hereof, and (c) in the case of certain adequate protection payments made hereunder, to paragraph 11(f)), received free and clear of any claim, charge, assessment or other liability, including without limitation, any claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code (whether asserted or assessed by, through or on behalf of the Debtors), the equities of the case exception under section 552(b) of the Bankruptcy Code or otherwise.

42.     *Joint and Several Liability.* Nothing in the Interim Order or this Final Order shall be construed to constitute or authorize a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for all obligations (including all DIP Obligations and all Adequate Protection Obligations) under this Final Order and the DIP Loan Documents.

43.     *Third Party Beneficiary.* Except as expressly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

44.     *Final Order Controls.* In the event of any conflict or inconsistency between or among the terms or provisions of this Final Order and any of the DIP Loan Documents, unless such term or provision in this Final Order is phrased in terms of "defined in" or "as set forth in" the DIP Loan Agreements or DIP Loan Documents, the terms and provisions of this Final Order shall govern and control. Notwithstanding anything contained in any other order entered by this Court to the contrary, any payment made pursuant to, or authorization contained in, any other order

entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order and the DIP Loan Documents, including, without limitation, the Approved Budget (subject to Permitted Variances).

45.      *Effectiveness.* This Final Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable effective as of the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014, any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

46.      *Bankruptcy Rules.* The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

47.      *Headings.* Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order. When used in this Final Order, the word "including" shall not imply limitation.

48.      *Necessary Action.* The Debtors are authorized to take any and all such actions as are necessary, required or appropriate to implement and effectuate the terms of this Final Order, the DIP Loan Documents and the transactions contemplated hereunder and thereunder.

49.      *Retention of Jurisdiction.* The Court retains jurisdiction to hear, determine and, if applicable, enforce the terms of any and all matters arising from or related to the DIP Facilities, the DIP Loan Documents, the Intercreditor Agreements, the Interim Order and this Final Order, and the Court's jurisdiction shall survive confirmation and consummation of any Chapter 11 plan

for any of the Debtors notwithstanding the terms or provisions of any such Chapter 11 plan or any order confirming any such Chapter 11 plan.

50.    *Notice of Entry of Final Order.* The Debtors shall promptly serve copies of this Final Order to the parties that have been given notice of the Final Hearing, to any party that has filed a request for notices with this Court and to the Official Committee; the list of the top thirty (30) general unsecured creditors; all parties known to the Debtors to be asserting liens against or security interests in, any of the Debtors' property; all state taxing authorities in the states in which the Debtors have any tax liabilities; any federal or state regulatory authorities governing the Debtors' industry; the Securities and Exchange Commission, the U.S. Attorney's Office; the Delaware Attorney General; and the United States Trustee.

51.    *Texas Taxing Authorities.* Notwithstanding anything in this Final Order to the contrary, any valid, properly perfected, enforceable, senior, and non-avoidable liens as of the Petition Date for prepetition ad valorem taxes payable to Galena Park Independent School District, Pasadena Independent School District, Clear Creek Independent School District, City of Houston, Chambers County, Barbers Hill Independent School District, City of Mont Belvieu, La Porte Independent School District, City of La Porte, Spring Branch Independent School District, Dickinson Independent School District, Cypress-Fairbanks Independent School District, Dallas County, Galveston County, Gregg County, Harris County, Jefferson County, Polk County and Texas City Independent School District (the "***Tax Authorities***"), in each case, arising under state law on any DIP Collateral (such liens, the "***Tax Liens***" and such taxes, the "***Taxes***") shall not be primed nor subordinated by any liens granted under this Order.  All parties' rights to object to the extent, priority, validity and enforceability of such liens, or the amount of the claims securing such liens, are hereby expressly preserved.  The prepetition and postpetition Tax Liens shall attach to

the proceeds of the sale of any of the Debtors' assets to the same extent and with the same priority as such Tax Liens attached to the Debtors' assets immediately prior to the closing of such sale and the Debtors shall not pay to the DIP Agents and/or DIP Lenders any proceeds from the sale of any assets subject to a Tax Lien without a reserve for any such Tax Lien (in an amount equal to the Taxes then owing to the applicable Tax Authority).

52.     *Plan Confirmation Reservation of Rights*.   Nothing in this Final Order shall prejudice the rights of any party to advance any argument in favor of or in opposition to confirmation of the Debtors' proposed plan of reorganization.


Dated: August 2nd, 2022
Wilmington, Delaware

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**