**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| **TPC GROUP INC.**, *et al.*, | ) | Case No. 22-10493 (CTG) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF PORT NECHES PLANT EXPLOSION CLASS CLAIMANTS'**
**OMNIBUS MOTION FOR CLASS CERTIFICATION (I) APPROVAL**
**AND RATIFICATION OF FILING OF CLASS PROOFS OF CLAIM AND**
**(II) CERTIFICATION OF CLASSES**

**SULLIVAN · HAZELTINE · ALLINSON LLC**
William D. Sullivan (No. 2820)
Elihu E. Allinson III (No. 3476)
919 North Market Street, Suite 420
Wilmington, DE  19801
Tel: (302) 428-8191
Fax: (302) 428-8195
Email : bsullivan@sha-llc.com
zallinson@sha-llc.com

-- and –

Mark Sparks, Esq.
**THE FERGUSON LAW FIRM, LLP**
350 Pine Street, Suite 1440
Beaumont, Texas 77701
Tel: 409+832-9700
Email: mark@thefergusonlawfirm.com

-- and --

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp, (6248). Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77002.

Richard L. Coffman, Esq.
Texas State Bar No. 04497460
**THE COFFMAN LAW FIRM**
Edison Plaza
350 Pine Street, Suite 700
Beaumont, TX 7770 I
Telephone: (409) 833-7700
Facsimile: (866) 835-8250
Email: rcoffman@coffmanlawfirm.com

-- and –

Mitchell A. Toups, Esq.
Texas State Bar No. 20151600
**MITCHELL A. TOUPS, LTD.**
2615 Calder Ave., Suite 400
Beaumont, TX 77702
Telephone: (409) 832-1800
Facsimile: (409) 832-8577
Email: matoups@wgttlaw.com

-- and --
Darren L. Brown, Esq.
**PROVOST UMPHREY LAW FIRM, L.L.P.**
350 Pine Street, Suite 1100
Beaumont, TX 77701
Tel: (409) 835-6000
Fax: (409) 813-8630
Email: dbrown@provostumphrey.com

-- and --

Troy O'Brien, Esq.
**FARRAR & BALL LLP**
1117 Herkimer St
Houston, TX 77008
Tel:  713-221-8300
Fax: 713-221-8301
Email: troy@fbtrial.com

-- and --

Brent Coon, Esq.
Lori K. Slocum, Esq.
**BRENT COON & ASSOCIATES**
215 Orleans
Beaumont, TX 77701
Telephone: 409-835-2666
Facsimile: 409-835-1912
brent@bcoonlaw.com
Lori.Slocum@bcoonlaw.com

*Counsel for Port Neches Plant Explosion
Class Claimants*

Dated: August 30, 2022

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................... 1

II. JURISDICTION AND VENUE ........................................................................ 3

III. BACKGROUND .............................................................................................. 4

IV. ARGUMENT ................................................................................................... 6

    A. THE COURT SHOULD EXERCISE ITS DISCRETION TO APPLY RULE 23 TO APPROVE AND RATIFY THE FILING OF THE PNO CLASS PROOFS OF CLAIM. 7

        1. Applying Rule 23 Would Benefit the Claims Administration Process ..................... 7

            (a) The *Musicland* Factors Favor the Court's Exercise of its Discretion to Extend Rule 23 to the Claims Administration Process ................................................. 8

                (i) Whether the Class was Certified Pre-Petition. ..................................... 8

                (ii) Whether the Members of the Class Received Notice of the Bar Date. 9

                (iii) Whether Class Certification Will Adversely Affect the Administration of the Estate. ....................................................... 11

        2. As Demonstrated In The Remainder Of This Argument, The Requirements of Rule 23 Have Been Satisfied. ........................................................................ 12

    B. THE COURT SHOULD EXERCISE ITS DISCRETION TO APPLY RULE 23 TO CERTIFY THE PUTATIVE PNO CLASS. ................................................................... 12

        1. The PNO Class Claims Are Best Managed Collectively Through Designated Representatives and Designated Counsel. ........................................................ 12

            (a) Class Members Are So Numerous That Their Joinder for Purposes of Individual Participation in Contested Claims Proceedings is Impracticable .......................................................................... 13

            (b) The Claims Present Common Questions of Law and Fact. ..................... 14

             (c) The Claims of Representative Claimants Are Typical of the Claims of Other Class Members. .......................................................................... 14

             (d) The Proposed Representative Claimants Will Fairly and Adequately Protect the Interests of the Class. ......................................................... 16

i

(i)     Named Plaintiffs' Counsel is Competent to Represent the Class. 16

(ii)    Whether There Exists Any Conflict of Interest Between the Named Plaintiffs and the Rest of the Class. ................................................ 17

2.    The PNO Claims May be Certified Under Fed. R. Civ. P. 23(b)(1). ................. 24

(a)    The Risk of Inconsistent or Varying Adjudications Would Establish Incompatible Standards of Conduct for the Debtors................................. 24

(b)    Separately Adjudicating the Claims of Individual Class Members Would, as a Practical Matter, be Dispositive of the Interests of the Other Members. ...................................................................................... 25

(c)    Separately Adjudicating the Claims of Individual Class Members Would Substantially Impair or Impede the Other Members' Ability to Protect Their Interests. .................................................................................. 26

3.    The PNO Claims May be Certified Under Fed. Civ. P. 23(b)(2)..................... 26

4.    The PNO Claims May be Certified Under Fed. R. Civ. P. 23(b)(3). ................. 27

(a)    Common Questions Predominate. ............................................... 27

(b)    Adjudication Through Representative Claimants and Representative Counsel is the Superior Method for the Fair and Efficient Adjudication of the Claims. ............................................................................. 29

(i)    The Interest of Members of the Class in Individually Controlling the Prosecution or Defense of Separate Actions.......................... 29

(ii)    The Extent and Nature of any Litigation Concerning the Controversy Already Commenced by or Against Members of the Class. ........................................................................... 30

(iii)   The Desirability of Concentrating the Litigation of the Claims in the Particular Forum. .................................................... 30

(iv)   The Difficulties Likely to be Encountered in the Management of a Class Action. ............................................................. 32

V.  CONCLUSION ...................................................................................... 34

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................. 13. 27. 30

*Day v. NLO*, 851 F.Supp. 869 (S.D. Ohio 1994) .......................................................... 26

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).................................................... 13

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) .................................. 15

*Gentry v. Siegal*, 668 F.3d 83 (4th Cir. 2012) ......................................................... 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................... 14, 16, 27, 30

*Hill v. Western Elec. Co., Inc.*, 672 F.2d 381 (4th Cir. 1982) ....................................... 16

*Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912 (3d Cir. 1992).................................... 15

*In re Agent Orange Prods. Liability Litig.*, 818 F.2d 145 (2d Cir. 1987)............................. 14, 15

*In re American Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988) .......................................... 7, 30, 31

*In re Badger Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693 (W.D. Wash. 1992)............ 27

*In re Birting Fisheries, Inc.*, 92 F.3d 939 (9th Cir. 1996) ........................................... 12

*In re Chapparral Energy, Inc.*, 571 B.R. 642 (Bankr. D. Del. 2017)....................................... 7, 8

*In re Connaught Group, Ltd.,* 491 B.R. 88 (Bankr. S.D.N.Y. 2013)............................................ 9

*In re Kaiser Group Intern., Inc.,* 278 B.R. 58 (Bankr. D. Del. 2002) ................................ 9, 11, 13

*In re MF Glob. Inc.,* 512 B.R. 757 (Bankr. S.D.N.Y. 2014) .............................................. 9

*In re Musicland Holding Corp.*, 362 B.R. 644 (Bankr. S.D.N.Y. 2007)....................................... 7

*In Re Prudential Ins. Co. America Sales Practice Litig.,* 148 F.3d 283 (3d Cir. 1998) ......... 14, 27

*In re Whittaker*, 882 F.2d 791 (3d Cir. 1989) ........................................................... 12

*In re Zenith Laboratories. Inc.*, 104 B.R. 569 (D.N.J. 1989) ...................................... 30

*Johnston v. HBO Film Management, Inc.*, 265 F.3d 178 (3d Cir. 2001)................... 14, 15, 16, 29

*Linney v. Cellular Alaska*, 151 F.3d 1234 (9th Cir. 1998)............................................ 26

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) ......................................... 30

*Probe v. State Teachers Retirement*, 780 F.2d 776 (9th Cir. 1986)........................................ 26

*Rodriguez v. Carlson*, 166 F.R.D. 465 (E.D. Wash. 1996) .............................................. 13, 28

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001)........................................................ 13, 14, 15

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)................................... 14

**OTHER AUTHORITIES**

5 Newberg on Class Actions (3d ed. 1992), § 20.01, at 20-2 ....................................................... 12

**RULES**

Fed. R. Bankr. P. 3001 ................................................................................................................ 4

Fed. R. Bankr. P. 7023 ........................................................................................................ 4, 7, 9

Fed. R. Bankr. P. 9011(a) ......................................................................................................... 30

Fed. R. Bankr. P. 9014 ........................................................................................................... 4, 7

Fed. R. Civ. P. 11 .................................................................................................................... 31

Fed. R. Civ. P. 23 ........................................................................................................ 4, 6, 7, 8, 12

Fed. R. Civ. P. 23(a) .................................................................................................. 12, 13, 24, 26

Fed. R. Civ. P. 23(a)(1) ............................................................................................................ 13

Fed. R. Civ. P. 23(a)(2) ............................................................................................................ 14

Fed. R. Civ. P. 23(a)(3) ............................................................................................................ 15

Fed. R. Civ. P. 23(a)(4) ............................................................................................................ 16

Fed. R. Civ. P. 23(b) ........................................................................................................... 12, 13

Fed. R. Civ. P. 23(b)(1) ............................................................................................................ 24

Fed. R. Civ. P. 23(b)(2) ............................................................................................................ 26

Fed. R. Civ. P. 23(b)(3) ................................................................................................... 27, 29, 30

**STATUTES**

11 U.S.C. § 105(a) ...................................................................................................................... 4

# I.  <u>INTRODUCTION</u>

On November 27, 2019 -- the day before Thanksgiving – the citizens of Port Neches, Texas lived a nightmare.  In the dead of night, at approximately 1:00 a.m., the Debtors' 1,3 butadiene plant located in Port Neches, Jefferson County exploded.

The mushroom cloud of flames and smoke, followed by a shockwave and sonic boom, rocked the City of Port Neches and Groves, Texas, and surrounding areas.  The plant was engulfed in an inferno of flames. Toxic and poisonous gases and vapors, including 1,3-butadiene, a highly-explosive and potent carcinogen, spewed into the air of the surrounding neighborhoods and community.

The explosion sent several plant workers to the hospital and caused significant physical damages to homes and businesses in the surrounding areas. The massive blast was felt for miles around, beyond Jefferson County and well into neighboring Orange County.  The initial explosion shattered windows, collapsed roofs and ceilings in homes, and blew doors out.  The blast wave and heat from the fire also melted and warped doors to the point where such were inoperable. Several smaller explosions were reported as attempts were made to get the fire under control.

The area within a half a mile of the facility was put under a mandatory evacuation order. A shelter-in-place order was issued for locations outside of that half-mile radius but within a mile of the plant.  Later that day, at approximately 3:00 p.m., about an hour and a half after a second explosion occurred, a second wider evacuation was ordered.

The second blast caused a tower to fall, emitting a boom heard across several Southeast Texas counties, and caused more damage to houses, businesses, and other structures.  Late in the afternoon of November 27, local officials, fearing a new round of explosions and concussive shock

1

waves, ordered a third mandatory evacuation of about 30,000 people in Jefferson County within four miles of the Port Neches chemical plant.

All told, over the Thanksgiving holiday weekend, well in excess of 5,000 people -- and perhaps as many as 50,000 - 60,000 -- were displaced. Not only did they suffer unbudgeted out-of-pocket expenses related to travel, food, and lodging, many were deprived of the use of their property and businesses, resulting in lost profits over the crucial Thanksgiving Holiday shopping week, including Black Friday and Cyber Monday.

In the *Declaration of Robert A. Del Genio in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 27] (the "First Day Declaration"), the Debtors acknowledge approximately 7,800 litigation claims arising out of the so-called PNO ["Port Neches Operations"] Incident, consisting primarily of personal injury, property damage, and business interruption claims. [*Id.* ¶ 39]. Class representatives also asserted evacuation claims and medical monitoring claims. According to the First Day Declaration, the Debtors have approximately $15 million in aggregate unpaid property damage settlements entered into pursuant to the Debtors' Voluntary Claims Program. [*Id.* ¶ 40]. There exists another estimated $12 million in property damage claims asserted under the Voluntary Claims Program for which settlement agreements were never executed. [*Id.* ¶ 40]. The First Day Declaration offers no estimates of the Debtors' potential liability on personal injury claims.

The Debtors do note, however, that approximately 190 private civil actions, involving some 322 individual plaintiffs, are pending in Texas state court. [*Id.* ¶¶ 49, 51]. In addition, over 7,000 individual plaintiffs have claims pending in the Multidistrict Litigation pending before the Texas Multi-District Litigation Panel. [*Id.* ¶ 50]. The Debtors consider all so-called PNO Claims that have not been dismissed or abated pursuant to their Voluntary Claims Program to be contingent

and disputed, with the vast majority remaining unliquidated. [*Id.* ¶ 39]. Lumped together with approximately $144 million in accrued and unpaid trade obligations, [*Id.* ¶ 41], plus the 10.5% Notes Deficiency Claims in unspecified amount, the PNO Claims are categorized under the Plan as Class 4 General Unsecured Claims. The Plan proposes to provide a paltry $5 million (plus another potential $5 million if the Debtors hit certain performance targets in 2024) to allocate amongst the pool of Class 4 claims *if* Class 4 votes to accept the Plan. [*Disclosure Statement* dated June 16, 2022 [D.I. 217, p. 7]; *Plan* [D.I. 216, p. 11]. If they vote to reject, they get nothing. [*Id.*] Trade claims would be paid in full in the ordinary course. [*Id.*]

The *Joint Chapter 11 Plan of TPC Group Inc. and its Debtor Affiliates* (the "Plan") [D.I. 216] contains general "Procedures for Disputed Claims" in Article VII, by which the Debtors can file claim objections to Disputed Claims through the Effective Date of the Plan, [Plan § 7.2], after which the authority passes to the GUC Trustee, [Plan § 5.17]. Rather than piecemeal claims adjudication (at least as to the non-personal injury claims over which this Court has subject matter jurisdiction), the process of ascertaining and fixing claims would be simplified, expedited, and rendered more just by proceeding on a collective basis through representative PNO claimants and appointed class counsel. Collective treatment also fosters the potential of a negotiated resolution of all PNO Claims at once. This Court should secure these benefits by certifying a PNO class, including six sub-classes for the six types of claims asserted by class claimants, by appointing representatives of that class for each sub-class, and by appointing class counsel for each sub-class.

## II. JURISDICTION AND VENUE

The Court has jurisdiction over the accompanying Motion pursuant to 28 U.S.C. §§ 157 and 1334. This accompanying Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (B). The statutory predicates for relief sought by way of the accompanying

Motion are 11 U.S.C. § 105(a), Federal Rules of Bankruptcy Procedure 3001, 9014(c) and 7023, and Federal Rule of Civil Procedure 23.

The PNO Plaintiffs and potential Class Members respectfully decline to grant their consent pursuant to Del. Bankr. L. R. 9013-1(f) to the entry of a final order by the Court in connection with the accompanying Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

### III.  <u>BACKGROUND</u>

Pre-petition, the PNO claimants filed five class certification petitions before the District Court of Jefferson County, Texas, 136th Judicial District.  The name of the putative class representatives and the primary nature of their putative class claims, by general category, are as follows:

- *Roger Wallace, Individually and on Behalf of All Similarly Situated Persons v. TPC Group, Inc., and Joshua Nehlig*, Cause No. D-204940 (Tex. Dist. Ct.) (Property Damage, Personal Injury – Acute, Personal Injury – Chronic), filed November 27, 2019.

- *Weber Real Estate, LLC, Faith Shoemaker, and Scott Morvant v. TPC Group, Inc., TPC Holdings, Inc., and TPC Group, LLC*, Cause No. B-205293 (Tex. Dist. Ct.) (Property Damage, Business Interruption, Evacuation - Expenses, Evacuation – Private Nuisance), filed February 6, 2020.

- *Todd and Brook Womack (now David and Teri Wilson), et <u>al</u>. v. TPC Group LLC*, Cause No. D-204937 (Tex. Dist. Ct.) (Property Damage), filed November 27, 2019, amended April 7, 2020.

- *Brian Lange, on Behalf of Himself and All Others Similarly Situated v. TPC Group, Inc. and TPC Group, LLC, Nalco Co., and Suez WTS, Inc.*, Cause No. B-205280 (Tex. Dist. Ct.) (Evacuation – Expenses, Evacuation – Private Nuisance), filed February 3, 2020, amended November 24, 2021.

- *Oscar and Keeli Galvan, a Married Couple; on Behalf of Themselves and All Others Similarly Situated v. TPC Group, LLC and TPC Group, Inc D/B/A/ TPC Group (Holding) Inc.*, Cause No. E-204939 (Tex. Dist. Ct.) (Evacuation - Expenses), filed November 27, 2019.

The class certification petitions were transferred to the District Court of Orange County, Texas, and consolidated for pre-trial purposes by the Texas Multi-District Litigation Panel, and are currently subject to the automatic stay.

In compliance with the Bar Date Order, the five proposed class representatives timely filed class proofs of claim in this Court on or before August 5, 2022.  Notice of Bar Date [D.I. 370]. Copies of these filed class proof of claims are attached to the Appendix hereto as Exhibits A through E.

A review of the Affidavit of Service [D.I. 420] suggests that direct service of the Notice of Bar Date was made on in excess of 46,000 persons.

A review of the aggregate general unsecured claims spreadsheets submitted by proposed class counsel on behalf of their presently identified clients indicates that approximately 4,481 claims were filed by the Bar Date on behalf of present proposed Class Members claims, as follows:

| Proposed Class Counsel | Number of Claims |
|---|---|
| Ferguson Law Firm LLP | 1,631 |
| Farrar & Ball LLP | 192 |
| Brent Coon & Associates | 1,431 |
| Weller Green Toups & Terrell, LLP / Coffman Law Firm | 1,196 |
| Provost Umphrey Law Firm | 31 |

It is anticipated that many additional claimants exist whose claims are not included in this figure, such as: (i) those who did not file a proof of claim either because they were unaware of the Bar Date or because they did not have the benefit of the advice of counsel in reviewing the claim requirements or weighing the economics of whether they should preserve and assert their rights, and (ii) those who reached settlements with the Debtors to be funded by their insurance coverage but whose settlements were either never executed or not fully funded before the coverage was exhausted. It is anticipated that the vast majority of these additional potential claimants are not represented by counsel.

## IV.  ARGUMENT

Resolution of PNO Claims through one or more designated class representatives and designated class counsel, pursuant to Federal Rule of Civil Procedure 23, secures legal representation for, and permits meaningful participation of, all PNO claimants in contested claims proceedings. It also would secure finality for Debtors and other creditor constituencies as to PNO Claims. Class certification further achieves significant judicial efficiency by streamlining the management of thousands of PNO Claims and by facilitating the orderly resolution of core legal and factual issues underlying the allowance of PNO Claims. Finally, it aids the Court in carrying out its responsibilities by affording the Court with counsel to whom it can turn, and on whom it can rely, regarding the representation of PNO claimants' interests.

This Court, pursuant to Rule 23, should provide for the collective prosecution, defense and resolution of the PNO Claims by certifying a class of PNO claimants, and six sub-classes for each type of claim asserted by class representatives, and appointing appropriate representative claimants and class counsel to represent the common legal interests of PNO claimants in the claim filing and adjudication process.

A.    **THE COURT SHOULD EXERCISE ITS DISCRETION TO APPLY RULE 23 TO APPROVE AND RATIFY THE FILING OF THE PNO CLASS PROOFS OF CLAIM.**

Bankruptcy proceedings, in their nature, are class-like.  Bankruptcies aggregate claims against a debtor into a single forum and provide for the treatment of claims of similar types in a similar way.  The class-like features of bankruptcy, however, do not automatically extend to the filing or defense of creditors' claims, although the bankruptcy rules explicitly permit the extension of class procedures to such matters.

Federal Rule of Bankruptcy Procedure 9014(c) permits the application of Federal Rule of Bankruptcy Procedure 7023 (which incorporates Federal Rule of Civil Procedure 23) to any contested matter, including contested claim proceedings.  *See In re American Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988).

When a bankruptcy court considers whether to exercise its discretion to apply Rule 23 to the claims process, it engages in a two-step analysis to consider (i) whether doing so would be beneficial to the claims administration process, and (ii) whether the provisions of the Rule have been satisfied.  *In re Chaparral Energy, Inc.*, 571 B.R. 642, 647 (Bankr. D. Del. 2017).

1.    **Applying Rule 23 Would Benefit the Claims Administration Process.**

As to the first step, courts have developed a three-factor framework to help guide the court's exercise of its discretion.  *Id.*  They are: (1) whether the class was certified pre-petition; (2) whether the members of the putative class received notice of the bar date; and (3) whether class certification will adversely affect the administration of the estate.  *Id.* (citing *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007)).  No one factor is dispositive, although one factor may take on more or less importance in any given case.  *Chaparral Energy*, 571 B.R. at 646.

(a)     **The *Musicland* Factors Favor the Court's Exercise of its Discretion to Extend Rule 23 to the Claims Administration Process.**

### (i) Whether the Class was Certified Pre-Petition.

The five putative class representatives filed their original petitions for class certification in the District Court of Jefferson County, Texas, between November 27, 2019, and February 6, 2020. Thereafter, the cases were transferred to the District Court of Orange County, Texas, and consolidated for pre-trial purposes by the Texas Multi-District Litigation Panel. The cases became subject to the automatic stay upon the filing of the Debtors' voluntary petitions on June 1, 2022 (the "Petition Date"). Since then, the class plaintiffs have pursued litigation before the District Court of Orange County, Texas (the MDL transferee court) solely regarding certain non-Debtor defendants. None of the proposed classes were certified by the MDL transferee court prior to the Petition Date.

In *Chaparral Energy*, this Court recently exercised its discretion to apply Rule 23 to the claims adjudication process even though despite plaintiffs' efforts, the putative class had not actually been certified pre-petition. 571 B.R. at 642.

*Chaparral* dealt with whether the debtor had failed to properly report, account for, and distribute oil and gas lease royalty interest payments. *Id.* at 644. The putative class plaintiffs had filed a motion with the U.S. District Court for the Western District of Oklahoma seeking class certification, but before that court could rule, the voluntary bankruptcy petition was filed. *Id.* The debtors and putative class plaintiffs agreed to relief from the automatic stay to enable the class certification to go forward in the Oklahoma District Court. *Id.* The putative class plaintiffs filed proofs of claim in this Bankruptcy Court, after which a certification order was eventually entered by the Oklahoma District Court, which restricted the class to a certain type of lease. *Id.* at 645.

Shortly thereafter, the debtors filed a claim objection to the class claims in the Bankruptcy Court. *Id.* at 647.

Judge Silverstein looked beyond the fact that the class had not been certified pre-petition, finding that the circumstances of the case outweighed that consideration. She wrote:

> The first *Musicland* factor weighs against applying Bankruptcy Rule 7023 to the Class Claim, as the Putative Class was not certified prepetition. Nonetheless, the Court would not be alone in exercising its discretion to apply Bankruptcy Rule 7023 in these circumstances. *See, e.g., In re Kaiser Group Intern., Inc.,* 278 B.R. 58, 62-63 (Bankr. D. Del. 2002) (allowing the filing of a class proof of claim where class not certified pre-petition); *see also, Gentry v. Siegel,* 668 F.3d 83, 91 (4th Cir. 2012) (same); *In re MF Glob. Inc.,* 512 B.R. 757, 763-765 (Bankr. S.D.N.Y. 2014) (same); *In re Connaught Group, Ltd.,* 491 B.R. 88, 98-100 (Bankr. S.D.N.Y. 2013) (same).

*Id.*

The facts of this case are analogous. Although the class certification petitions were filed pre-petition, they were not heard before the automatic stay took effect. The Court should exercise its discretion to apply Bankruptcy Rule 7023 in these circumstances.

### (ii)    Whether the Members of the Class Received Notice of the Bar Date.

As to the second *Musicland* factor, the Debtors served the Bar Date Notice on more than 46,000 persons. *Affidavit of Service* [D.I. 420].

A review of the claims register maintained by the Debtors' claims and noticing agent indicates that approximately 11,602 general unsecured proofs of claim were filed in the individual cases of the three Debtors who may bear primary potential liability to Class Members -- TPC Group Inc., (Case No. 22-10493); TPC Holdings, Inc. (Case No. 22-10494); and TPC Group LLC (Case No. 22-10495) -- as follows:

| Debtor | Total GU Claims Filed (as of 8/18/22) |
|---|---|
| TPC Group Inc. | 4,245 |
| TPC Holdings, Inc. | 3,586 |
| TPC Group LLC | 3,771 |

While the Bar Date Order required that a separate claim be filed against each Debtor against whom a claim was asserted, such that many of the claims filed against separate debtors would be duplicative, there are at least 4,245 non-duplicative general unsecured claims potentially related to the plant explosion filed as a result of direct service (and publication notice) of the Bar Date. Although a detailed review of these claims to distinguish Port Neches plant explosion general unsecured claims from other general unsecured claims -- such as those filed by trade vendors -- has not been undertaken, an additional 4,481 general unsecured claims were filed via spreadsheet by proposed class counsel on behalf of their present clients and putative Class Members, suggesting that at least 8,700 non-duplicative Port Neches plant explosion damages general unsecured claims were filed by (i) present putative Class Members represented by proposed class counsel, (ii) other potential Class Members not presently represented by proposed class counsel, and (iii) trade vendors. As compared to direct service of the Notice of Bar Date on approximately 46,000 persons, these calculations -- albeit admittedly back-of-the-envelope -- suggest an approximately 20% response rate to the Notice of Bar Date (and publication notice) by all affected individuals and trade vendors.

While these calculations do not permit any firm conclusions, they suggest that compliance with the Bar Date by potential Class Members is limited to less than one in five. No one factor, however, is dispositive.

### (iii)    Whether Class Certification Will Adversely Affect the Administration of the Estate.

The number of PNO claimants in this case is potentially large.  In these circumstances the most important *Musicland* factor is whether class certification would adversely affect the administration of the estate.  Here, as in *Chaparral Energy*, certifying the class offers substantial benefits to administration of the estate.  *See also*, *In re Kaiser Group International, Inc.*, 278 B.R. 58 (Bankr. D. Del. 2002) (class comprised of 47 members sufficiently numerous to be certified).

The issues in this case arose from the same course of conduct and -- regarding evacuation claims alone -- affected up to 50,000 - 60,000 people who were displaced from their homes and businesses for approximately one week.  Whether the aggregate number of property damage, business interruption, and personal injury claimants (including for medical monitoring) is subsumed within that evacuation claim estimate is unknown.  In any case, based on the estimated figure of at least 8,700 PNO Claims already filed, adjudication of all common issues once would promote efficiency, judicial economy, and the just disposition of claims.  Evacuation expense damages suffered by individual class members will likely be relatively small. The overall recovery for all Class 4 members who possess allowed general unsecured claims also will likely be fractional under the Plan as proposed, which is clearly designed to benefit the recovery for trade vendors at the expense of class members.  These circumstances would render prosecution of individual claims cost prohibitive as a practical matter.

Importantly, the purpose of the Code is equal treatment of similar creditors.  Obstacles dissuading mom-and-pop PNO claimants from pursuing their claims should be discouraged. Otherwise, larger creditors will help themselves to an outsized share of the pie.  *See, e.g., id.*  Such windfalls are unfair and ought to be avoided.

2. **As Demonstrated in the Remainder of this Argument, the Requirements of Rule 23 are Satisfied.**

Rule 23 is satisfied when the prerequisite conditions set forth in Rule 23(a) have been satisfied and at least one of the three scenarios set forth in Rule 23(b) applies.  Fed. R. Civ. P. 23.

As demonstrated below, in these circumstances, both provisions are satisfied.

B. **THE COURT SHOULD EXERCISE ITS DISCRETION TO APPLY RULE 23 TO CERTIFY THE PUTATIVE PNO CLASS.**

Class certification orders of bankruptcy courts have been frequently upheld by appellate courts.  *See In re Whittaker*, 882 F.2d 791, 793, n.1 (3d Cir. 1989) (declining to review bankruptcy court's class certification); *see also, In re Birting Fisheries, Inc.*, 92 F.3d 939, 939-940 (9th Cir. 1996) ("we conclude that the bankruptcy code should be construed to allow class claims," noting that "[t]hree circuits have previously considered the question and all have construed the code as we do.").

1. **The PNO Class Claims are Best Managed Collectively Through Designated Representatives and Designated Counsel.**

Bankruptcy courts avail themselves of Rule 23 because the rule serves the same salutary purposes inside bankruptcy that it does outside bankruptcy.  It gives collective voice to claimants whose rights cannot be meaningfully represented on an individual basis.  It assists the Court in its burden of managing numerous claims having common legal or factual bases.  Appropriate class treatment of bankruptcy claims, it has been observed, "can provide a single adjudication for many people as well as conserve judicial resources."  5 Newberg on Class Actions (3d ed. 1992), § 20.01, at 20-2.

Resolution of PNO Claims is best achieved through designation of representative claimants and representative counsel appointed to represent the legal interests of PNO claimants.  This is accomplished through Rule 23.  Certification under the rule is appropriate where the proposed

12

representatives have established all of the conditions of Rule 23(a) and at least one of the conditions of Rule 23(b).  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 611 (1997); *see also*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974).  The PNO claimants readily satisfy these elements.

> **(a)     Class Members are So Numerous that Their Joinder for Purposes of Individual Participation in Contested Claims Proceedings is Impracticable.**

Rule 23 requires that members of the class be so numerous that their joinder in the litigation is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  To meet this numerosity requirement:

> [P]laintiffs need not show that the number of class members is so large that it would be impossible to join all of them; impracticability does not mean impossibility…. [I]n addition to the mere number of plaintiffs, such factors as "geographical dispersion, degree of sophistication, and class members' reluctance to sue individually" are considered in determining the impracticability of joinder.

*Rodriguez v. Carlson*, 166 F.R.D. 465, 471 (E.D. Wash. 1996) (citations omitted).  Generally, where the potential number of plaintiffs exceeds 40, the numerosity test of Rule 23(a)(1) has been met.  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *In re Kaiser Group International, Inc.*, 278 B.R. 58 (Bankr. D. Del. 2002) (class comprised of 47 members was sufficiently numerous to be certified).

An estimated 8,700 PNO Claims have been filed to date. Considering this figure alone, the numerosity test is satisfied.  The lack of sophistication of PNO creditors also supports a finding that the numerosity test is satisfied.  The vast majority of PNO claimants are likely those who were forced to evacuate, including ordinary homeowners, primarily without current legal representation, whose claims are of such monetary value that it would be impossible, as a practical matter, for them to individually participate in contested claim proceedings.

Where claimants, as a practical matter, cannot litigate their claims on an individual basis, the "superiority" test is satisfied. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). The superiority test, therefore, is fully satisfied in this respect alone. "Superiority" is also demonstrated where class-wide litigation of common issues will reduce litigation costs and otherwise promote greater efficiency. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

### (b)  The Claims Present Common Questions of Law and Fact.

Rule 23(a)(2) requires that there be, "questions of law or fact common to the members of the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is satisfied if the claims of the proposed representatives share at least one question of fact or law with the grievances of the prospective class. *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001); *see also, In Re Prudential Ins. Co. America Sales Practice Litig.,* 148 F.3d 283, 310 (3d Cir. 1998). A single common issue may satisfy this requirement. *See, In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 145, 167 (2d Cir. 1987)

The concepts of "commonality" and "typicality" tend to merge in courts' class action analyses. *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Fuller discussion of the common legal and factual issues underlying the claims of each proposed PNO claimant class, therefore, is reserved for discussion below. It is sufficient, for present purposes, to note that any one of the common legal and factual issues identified below would readily satisfy the commonality test of Fed. R. Civ. P. 23(a)(2).

### (c)  The Claims of Representative Claimants are Typical of the Claims of Other Class Members.

Rule 23(a)(3) requires that, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

The typicality inquiry "centers on whether the interests of the named plaintiffs align with the interests of the absent members." *Stewart v. Abraham*, 275 F.3d at 227. A plaintiff's claims will be deemed typical if, "they are reasonably co-extensive with those of absent class members." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992) (holding claims to be typical when the same event or practice or course of conduct that gives rise to the claims of other class members is based on the same legal theory). A representative plaintiff is typical of the class where there is a "nexus" between the plaintiff's injury and the injuries suffered by the class members; such a nexus will be found where the named plaintiff's claims stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based on the same legal or remedial theory. *See, General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 (1982).

Factual differences, of course, may always be found between class members. However, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d at 923, quoted in *Stewart v. Abraham*, 275 F.3d at 227-28. So long as, "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Johnston v. HBO*, 265 F.3d at 184.

The proposed representatives are members of the proposed PNO creditor class and sub-classes they seek to represent. Their claims arise from the same events and course of conduct -- the Port Neches plant explosion -- and are based on the same legal theories as other PNO claimants. The typicality requirement, therefore, is satisfied.

    **(d)**    **The Proposed Representative Claimants Will Fairly and Adequately Protect the Interests of the Class.**

Rule 23(a)(4) states that the representative plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The purpose of the adequacy of the representation requirement is to ensure that the class representatives and their counsel will be diligent and capable in protecting the interests of class members. *See, Hill v. Western Elec. Co., Inc.*, 672 F.2d 381, 389 n.3 (4th Cir. 1982). To determine whether this criterion has been met, courts look at two factors: (1) whether the named plaintiffs' counsel is competent to represent the class; and (2) whether there exists any conflict of interest between the named plaintiffs and the rest of the class. *See Hanlon*, 150 F.3d 1011, 1020 (9th Cir. 1998); *see also Johnston v. HBO,* 265 F.3d 178, 185 (3d Cir. 2001)*.*

    **(i)**    **Named Plaintiffs' Counsel is Competent to Represent the Class.**

Proposed class counsel have extensive experience managing class litigation, possess the resources to actively and vigorously represent the PNO claimants, and have demonstrated their preparedness to represent those interests through these bankruptcy proceedings. They have initiated class certification petitions in the District Court of Jefferson County, Texas, which have since been transferred and consolidated in the Orange County, Texas transferee court by the Texas MDL Litigation Panel, although the cases are now subject to the automatic stay. Nonetheless, counsel are continuing to press their claimants' claims against non-Debtor defendants before that panel. They timely filed putative class and individual class member proofs of claim in this Court. Now they are asking this Court to (i) approve and ratify the filing of those class proofs of claim, and (ii) certify the class. Accordingly, they have demonstrated their diligence and commitment to the PNO claimants. Named plaintiffs' counsel have manifestly demonstrated their competence to represent the class.

A curriculum vitae or other statement highlighting the expertise of the counsel who seek to represent the class and various subclasses, as set forth below, are attached to the Appendix as the following exhibits to this brief:

- The Ferguson Law Firm LLP, proposed class counsel to class representative Roger Wallace [CV attached to Appendix as Exhibit F];

- The law firm of Weller Green Toups & Terrell LLP and the Coffman Law Firm, proposed class counsel to class representatives Weber Real Estate LLC, Faith Shoemaker and Scott and Amanda Morvant [Declarations of Richard L. Coffman and Mitchell A. Toups are attached to Appendix as Exhibit G];

- The Provost Umphrey Law Firm, proposed class counsel to class representatives David and Teri Wilson [Experience Summary attached to Appendix as Exhibit H];

- The Farrar & Ball LLP law firm, proposed class counsel to class representatives Brian Lange and Chris Johnson [Summary of Qualifications and Professional Experience attached to Appendix as Exhibit I];

- Brent Coon & Associates, proposed class counsel to Oscar and Keeli Galvan [Summary of Qualifications and Experience attached to Appendix as Exhibit J].

### (ii)    Whether There Exists Any Conflict of Interest Between the Named Plaintiffs and the Rest of the Class.

No conflict of interest exists between the Plaintiffs named in the original class certification petitions and the other putative Class Members. As demonstrated below, each Plaintiff is an appropriate class representative on account of having been subject to the same course of conduct and the same proximate causation of the injuries they sustained to their persons, whether manifest or latent; damage to their property; interruption of their businesses; or having been forced to evacuate the area, as the rest of the class.

17

Collectively, the PNO claimants seek certification of six separate sub-classes based on the six categories of claims asserted by the plaintiffs, to be represented by the identified proposed class representatives asserting such claim:

**(1) <u>Evacuation -- Expenses</u>**

The Class Members for the **Evacuation – Expenses** sub-class are all residents, businesses, and public entities living in and around the Port Neches Plant, including persons in Jefferson and Orange County, who were forced to evacuate their home or business on or after November 27, 2019, as a result of the explosions at the Port Neches Plant which first occurred at approximately 1:00 a.m. Wednesday, November 27, 2019, and incurred expenses for food, lodging and other items as a result of the mandatory evacuation. The class excludes the Debtor and non-Debtor defendants and their respective immediate families, and legal counsel for all parties to this action, and members of their immediate families.

The proposed class representatives asserting claims for this sub-class are:

o Plaintiffs **Oscar and Keeli Galvan** live less than a mile from the TPC Group facility at 1720 10th St. Port Neches, TX. Oscar is a fire fighter and Keeli is a schoolteacher. According to their doorbell video monitoring system, the blast occurred at 12:58 am. They were awakened by the blast, and immediately checked their children, a four-month-old and a two-year-old. After silencing their alarm, they sheltered in place briefly in their home hallway. A few minutes later, because they did not know what the plant was releasing, they grabbed some basic necessities and headed to Beaumont to stay with a relative. They incurred expenses as a result of the mandatory evacuating, including travel costs, meals, and supplies.

18

- Plaintiffs **Brian Lange** and **Chris Johnson** were among as many as 60,000 residents of Jefferson County forced to evacuate on November 27, 2019, due to toxic fumes and debris released from the explosion. This initial mandatory evacuation lasted for two days, in which the proposed class incurred expenses for travel, food, and lodging. Both Plaintiffs suffered injuries that were common to the class due to living within the mandatory evacuation zone, with both their residences located less than 2 miles from the chemical plant. Five days later, December 4, 2019, an approximately 24-hour voluntary evacuation order was given, once again affecting the Plaintiffs and proposed class.

**(2) <u>Evacuation – Private Nuisance</u>**

The Class Members for the **Evacuation – Private Nuisance** sub-class are all residents, businesses, and public entities living in and around the Port Neches Plant, including persons in Jefferson and Orange County, who were forced to evacuate their home or business on or after November 27, 2019, and suffered inconvenience and the loss of use of their home for a period of time thereafter, as a result of the explosions at the Port Neches Plant, excluding the Debtor and non-Debtor defendants and their respective immediate families, and legal counsel for all parties to this action, and members of their immediate families.

The proposed class representatives asserting claims for this sub-class are:

- Plaintiffs **Brian Lange** and **Chris Johnson** were forced to evacuate their homes for an initial mandatory evacuation of two days and a later voluntary evacuation of around 24-hours as discussed above.  They assert claims for non-economic damages for (i) inconvenience and (ii) loss of use on account of having to leave their home due to mandatory evacuation orders.  They believe that proposed class

members asserting either or both such claims should receive one or more uniform vouchers in compensation for their damages. The proposed class would consist of individuals living within the zone of the mandatory and voluntary evacuation orders.

o   Plaintiff Faith Shoemaker owns property at 1415 Avenue F in Nederland, Texas, that suffered property damage due to the Port Neches Plant explosions, including damages to her slab, bricks, cracks in walls and sheetrock, broken support boards in the attic, damaged fencing, landscaping and stones, and other damages.  She was forced to evacuate her home for six (6) days and asserts claims for inconvenience and lack of use as a result of the mandatory evacuation orders.

**(3) <u>Property Damage</u>**

The Class Members are all persons who live in Jefferson or Orange County, Texas, who suffered property damage to their houses and/or other property as a result of the explosion on November 27, 2019 at the Port Neches Plant, excluding the Debtor, its subsidiaries and affiliates; all persons who make a timely election to be excluded from the proposed class; and governmental entities.

The proposed class representatives asserting claims for this sub-class are:

o   Plaintiff **Faith Shoemaker** owns property at 1415 Avenue F in Nederland, Texas, that suffered property damage due to the Port Neches Plant explosions, including damages to her slab, bricks, cracks in walls and sheetrock, broken support boards in the attic, damaged fencing, landscaping and stones, and other damages.

o   Plaintiffs **Scott Movant** and his wife, **Amanda Morvant**, own property at 803 South 14 ½ Street in Nederland, Texas, that suffered property damage due to the

Port Neches Plant explosions, which included cracks in the walls, ceilings, molding, floors and exterior of the home, as well as roof leaks.

o   Plaintiff **Weber Real Estate, LLC** owns five rental properties that suffered damage due to the Port Neches Plant explosions, including cracks in ceilings, walls, bathroom and floor tiles, crown molding, and floors, and damage to built-ins, brick pillars, ceiling joists, slab, soffits, siding and central air conditioning systems.

o   Plaintiffs **David and Teri Wilson** are residents of 326 Yorkshire Lane, Port Neches, Texas, which is located within one (1) mile of the Port Neches Plant property and explosions.  The Wilson's suffered property damage to their home including but not limited to damage to their doors, windows, roof, chimney, brick, motor and framing of their home due to the shockwave of the explosion on November 27,2019.  Their property damage exceeds $93,000.

o   Plaintiff **Roger Wallace** is a lifelong resident of Southeast Texas, in particular, Jefferson County, Texas., who himself has also worked within area refineries like that of the Port Neches Plant. Pertinently, Mr. Wallace's townhome is located 3,500 feet from the Port Neches Plant and has an unobstructed view of it.  Mr. Wallace's home suffered substantial structural damage, its garage door buckled, its front door and interior doors were ripped from their hinges, and molding was blown off the walls.  The home sustained damages in excess of $92,000, which loss has increased to approximately $140,000 due to increased material costs, not including emergency repairs, personal property damages, and other out-of-pocket expenses of approximately $25,000.

**(4) <u>Business Interruption</u>**

The Class Members are all persons or businesses who live or work in Jefferson or Orange County, Texas, and who suffered loss of business as a result of the explosions on November 27, 2019 at the Port Neches Plant, excluding the Debtor, its subsidiaries and affiliates; all persons who make a timely election to be excluded from the proposed class; and governmental entities.

The proposed class representative asserting claims for this sub-class are:

o   Plaintiff **Weber Real Estate, LLC** owns five rental properties that suffered damage due to the Port Neches Plant explosions. As a result of such damages, Plaintiff Weber Real Estate, LLC's business was interrupted, and it suffered lost revenue and profits in the form of lost rental income.

**(5) <u>Personal Injury:  Acute</u>**

The Class Members for the **Personal Injury--Acute** subclass are all individuals and entities who were exposed to toxic emissions arising out of the Port Neches Plant on November 27, 2019, and who sustained personal injuries and who received acute care, either on the day of the explosion or after-the-fact, excluding the Debtors, their employees, the District Courts of Jefferson and Orange Counties, Texas, and their personnel.

The proposed class representative asserting claims for this sub-class is:

o   Plaintiff **Roger Wallace** lives directly across from the Port Neches plant as noted in the Property Damage claim section above.  Following the explosions, Mr. Wallace was treated at Gerstenberg Clinic for ruptured blood vessels in his left eye, irritation and itching of throat, dizziness, burning eyes, headaches and difficulty sleeping. Chest x-rays and blood work were ordered. He also suffered nightmares, sciatica and panic attacks as a result of the explosions.

**(6) Personal Injury:  Chronic**

The Class Members for the **Personal Injury--Chronic** subclass are all individuals and entities who were exposed to toxic emissions arising out of the Port Neches Plant on November 27, 2019, regardless of whether they were aware of such exposure at the time, and whose injuries remain latent at this time, excluding the Debtors, their employees, the District Courts of Jefferson and Orange Counties, Texas, and their personnel.  The medical monitoring program should include a trust fund to pay for the monitoring and treatment of Plaintiffs and Class Members as frequently and appropriately as necessary.

- o  Plaintiff **Faith Shoemaker** suffered personal injuries and was treated at the Emergency Room and by her physician for breathing problems, congestion, drainage, and loss of hearing.  In the future, she may suffer severe and traumatic pain and/or other physical and/or mental health issues caused by toxic emissions released during the Port Neches Plant explosions.

- o  Plaintiff **Scott Morvant** resides near the Port Neches Plant whose property was damaged and who was forced to evacuate his home.  In the future, he may suffer severe and traumatic pain and/or other physical and/or mental health issues caused by toxic emissions released during the Port Neches Plant explosions.

- o  Plaintiff **Roger Wallace** lives across the street from the Port Neches Plant that experienced the large explosions, was exposed to toxic substances emitted by the explosions and fires, and suffered personal injuries, both acute and chronic, as described more fully in the Personal Injury – Chronic claim section.

Each of these Plaintiffs and proposed class representatives will require specialized testing, diagnosis, treatment, and monitoring for these serious potential physical and mental health issues.

The available monitoring regime is reasonably necessary according to contemporary scientific principles within the physical and mental health communities specializing in the diagnosis and treatment of physical and mental health issues caused by exposure to toxic chemical emissions.

Having demonstrated that they satisfy the prerequisites Rule 23(a) requires, movants must only satisfy one of the following three types of class actions set forth in Rule 23(b).  As demonstrated below, they satisfy all three.

### 2.    The PNO Claims May Be Certified Under Fed. R. Civ. P. 23(b)(1).

Rule 23(b)(1) defines, as applicable here, the first type of class action as one in which prosecuting separate actions by or against individual class members would create a risk of (i) inconsistent or varying adjudications that would establish incompatible standards of conduct for the Debtors, or (ii) adjudications that would as a practical matter be dispositive of the interests of the other members not party to the individual adjudications or would substantially impair their ability to protect their interests.  Fed. R. Civ. P. 23(b)(1).

### (a)    The Risk of Inconsistent or Varying Adjudications Would Establish Incompatible Standards of Conduct for the Debtors.

On these circumstances, many relatively unsophisticated claimants may not even know they have claims.  This may be especially true for persons who were exposed to toxins released by the fires.  Their injuries may be latent, in which case they may be either unaware of these bankruptcy cases or simply not pay attention.  On the other hand, there will be personal injury claimants who received acute care and whose damages will, therefore, be readily apparent to them. Without having the knowledge or means to advocate for the establishment of a medical monitoring program, the chronic group may find themselves excluded from receiving the future healthcare they may require.

As another example, it is believed that many residents returning to their homes after having been required to evacuate the area were presented with $250 compensation pursuant to the Debtors' Voluntary Claims Program.  For some, such compensation may have been adequate whereas others may not have been made whole thereby.

**(b)**    **Separately Adjudicating the Claims of Individual Class Members Would, as a Practical Matter, be Dispositive of the Interests of the Other Members.**

On these circumstances, there will be many unsophisticated claimants of limited resources with many relatively small claims that are subject to bankruptcy treatment under a proposed Plan that imposes a fractional recovery on the class.  Some of these claimants will be able to retain legal counsel to assist them understand the notices they will receive from the Bankruptcy Court and help them navigate the procedural intricacies of participating before, potentially, multiple separate tribunals.  Represented claimants will benefit from counsel regarding the strengths and weaknesses of their cases and appropriate legal strategy to best enforce their rights.  Those who cannot afford to retain counsel will not.

As a practical matter, members of the latter group will face the dilemma of having to choose between doing nothing and doing their best to self-advocate.  Those unrepresented claimants will be deprived of the benefit of being a Class Member with access to Class Counsel coordinating the litigation.  And yet, they may choose to soldier on.  While doing so, they may become subject to preclusive or contradictory findings that are dispositive of their interests.  Indeed, for those who cannot afford to retain their own counsel, there is a strong likelihood, as a practical matter, they will not succeed in advancing their interests and as a result will be unjustly denied fair compensation for the losses they have sustained.  As a practical matter, they will be unfairly excluded from participating in any recovery.

25

> **(c)** **Separately Adjudicating the Claims of Individual Class Members Would Substantially Impair or Impede the Other Members' Ability to Protect Their Interests.**

Likewise, those claimants who can afford to retain their own counsel will litigate in their own self-interest, and rightly so, without regard to the impact of the progress of their cases on other would-be "class members."  On the other hand, those who have chosen to "go it alone," will likely find it virtually impossible to intervene as individual parties-plaintiff in the individual actions filed by represented Plaintiffs and Class Counsel.  Consequently, their ability to protect and enforce their legal rights and interests will be substantially impeded or impaired as they become subject to preclusive or contradictory rulings that threaten to leave them without recourse.

### 3.    The PNO Claims Also May be Certified Under Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2) provides that class certification is also appropriate where the elements of Fed. R. Civ. P. 23(a) are satisfied and, "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole…."  Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2), in short, is reserved primarily for class actions seeking injunctive or equitable relief.  *Day v. NLO*, 851 F.Supp. 869, 885 (S.D. Ohio 1994).  Under this subsection, certification is appropriate where the class seeks injunctive relief across the entire class. *See Linney v. Cellular Alaska*, 151 F.3d 1234, 1240 n.3 (9th Cir. 1998); *Probe v. State Teachers Retirement*, 780 F.2d 776, 780 (9th Cir. 1986).

Injunctive relief is required to establish a medical monitoring program because of the toxic substances released by the Port Neches Plant explosions.  Plaintiffs and Class Members have no adequate remedy at law on this claim since monetary damages alone cannot (and would not) compensate them for suffering from serious physical and/or mental health issues.  Accordingly, Plaintiffs seek the establishment of a court-supervised medical monitoring program funded by the

Debtors, which will facilitate the diagnosis and treatment of Plaintiffs' and Class Members' physical and/or mental health issues (if any) directly and/or proximately resulting from toxic emissions released during the Port Neches Plant explosions.  Without such Court-directed medical monitoring, Plaintiffs and Class Members may suffer serious otherwise undetected physical and mental health issues that, in fact, could (and very well likely may) worsen.

### 4.    The PNO Claims Also May be Certified Under Fed. R. Civ. P. 23(b)(3).

To certify a class under Rule 23(b)(3), a court must find that:

> [t]he questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  Both criteria are met in this case.

### (a)    Common Questions Predominate.

The predominance inquiry tests, "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  In analyzing whether common questions predominate, the Court must evaluate whether proving the elements of the plaintiffs' claims can be accomplished through common questions or whether proof will be overwhelmed by issues affecting only individuals. *Hanlon*, 150 F.3d at 1022.

The predominance inquiry, "focuses on the relationship between the common and individual issues.  'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Hanlon*,150 F.3d at 1022 (internal citations omitted); *see also, In re Prudential Insurance Co. of America Sales Practices Litig.*, 148 F.3d 283, 314-15 (3d Cir. 1998) (certifying nationwide consumer fraud class); *In re Badger Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693, 697 (W.D. Wash. 1992)

("[w]here plaintiffs allege a common course of wrongdoing based on the same misrepresentations, individual issues of reliance do not preclude certification of the class."); *Rodriguez v. Carlson*, 166 F.R.D. 465, 479 (E.D. Wash. 1996) (any individual issues regarding damages were overshadowed by the "predominant common questions of liability")

Here, issues common to all PNO claimants would predominate proceedings regarding the allowance of PNO Claims.  These core common issues include:

- whether Debtors' wrongful actions constitute one or more of the following:  negligence, gross negligence, willful misconduct, or negligence *per se*; breach of applicable statutes, ordinances, or other laws; and/or the direct and/or proximate cause of Plaintiffs' and Class Members' injuries, harm, and damages.

- whether Debtors' wrongful actions constitute private nuisance -- either intentional, negligent, or strict liability.

- whether Plaintiffs and Class Members incurred expenses to evacuate the area surrounding the Port Neches Plant as a direct and/or proximate result of the plant explosions.

-  whether Plaintiffs and Class Members incurred damages to their homes, businesses, and other property as a direct and/or proximate result of the plant explosions.

- whether Plaintiffs and Class Members incurred business interruption losses and damages in their businesses as a direct and/or proximate result of the plant explosions.

- whether Plaintiffs and Class Members incurred personal injuries as a direct and/or proximate result of the plant explosions.

- whether Plaintiffs and Class Members are entitled to recover actual and consequential damages, attorneys' fees, litigation expenses, and court costs, and if so, the amount of the recovery.

- whether Plaintiffs and Class Members are entitled to declaratory and/or other equitable relief, including the establishment of a medical monitoring program for the testing, diagnosis. and treatment of Plaintiffs' and Class Members' ailments that may in the future

arise from having been exposed to the toxic chemicals released into the atmosphere by the plant explosions.

These common issues present a "significant aspect" of the determination of allowance of Plaintiffs' PNO Claims and may be resolved for all members of the PNO sub-classes in a single adjudication.   There is, therefore, clear justification for handling the allowance of PNO Claims on a representative basis, rather than on an individual basis, via a class action with the above six sub-classes pursuant to Rule 23(b)(3).

> **(b)** **Adjudication Through Representative Claimants and Representative Counsel is the Superior Method for the Fair and Efficient Adjudication of the Claims.**

This case also satisfies the second element of Rule 23(b)(3):   that collective class proceedings be, "superior to other available methods for the fair and efficient adjudication of the controversy."   Fed. R. Civ. P. 23(b)(3).   To assist in determining whether the class action mechanism is superior, courts consider the following nonexclusive list of factors: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;  (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.   Fed. R. Civ. P. 23(b)(3)(A)-(D); *Johnston v. HBO*, 265 F.3d at 186.

> **(i)** **The Interest of Members of the Class in Individually Controlling the Prosecution or Defense of Separate Actions.**

Factors affecting the fair and efficient adjudication of claims weigh heavily in favor of collective representative litigation.   This is particularly so because the unsophisticated individual with limited resources, as a practical matter, is incapable of advancing or defending the allowance of his or her PNO Claim.   As this nation's highest court has remarked:

While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." . . .  As concisely recalled in a recent Seventh Circuit opinion:

> "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."

*Amchem*, 521 U.S. at 617 (*quoting Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *see also Hanlon*, 150 F.3d at 1023 .

**(ii)     The Extent and Nature of any Litigation Concerning the Controversy Already Commenced by or Against Members of the Class.**

The putative class representatives filed their class certification petitions in the District Court of Jefferson County over two years ago.  After these actions were transferred to the MDL transferee court by the Texas MDL Panel, they were stayed.  The nature of the Orange County Court litigation is the same as the class certification component of this motion.

**(iii)    The Desirability of Concentrating the Litigation of the Claims in the Particular Forum.**

Protection of the solo small claimant animates the court's use of class procedures within bankruptcy.  As the Court noted in *In re Zenith Laboratories*: "Since there are significant opportunity costs associated with identifying and investigating claims and since many potential litigants with small claims are unaware of the full scope of their rights in bankruptcy, the class action may be the only practical means of permitting small claims to be brought. . . ." *Id.* 104 B.R. 569, 662-63 (D.N.J. 1989).

The court, in *In re American Reserve,* similarly reasoned:

[T]he opportunity costs of the time needed to investigate and decide whether to file may be substantial, especially because Bankruptcy Rule 9011(a) (a parallel to Fed.

> R. Civ. P. 11) requires every claimant to investigate the facts and do necessary legal research before filing. The combination of contingent claims (which many people may not identify as something they are entitled to pursue) and the effort needed to decide whether to pursue an identified claim means that for many small claims, it is class actions or nothing.

*Id.,* 840 F.2d at 489.

The monetary value of some individuals' homeowners' claims suggests that a great many of PNO Claims will lie dormant, absent recognition of a court-appointed representatives' authority to file a proof of claim on behalf of such homeowners.

There is obviously a gross inequality of legal talent between the unrepresented homeowner and a debtor represented by first-class teams of lawyers. Perhaps the Debtors can indeed discourage large numbers of homeowners from pursuing their claims by attempting to file an imposing gauntlet of omnibus objections. But that is precisely what should not be permitted to happen. Such an inequality of representation permits the process, not the merits, to dictate the outcome. This imbalance is precisely why class certification is needed. As the Seventh Circuit noted in *In Re American Reserve*, the fact that an individual homeowner may lack the practical ability to proceed with a relatively small individual claim is a strong argument for collective representation. *Id.,* 840 F.2d at 489.

Where, as here, the costs of prosecution may exceed expected individual recoveries, the "negative value" of individually pursued PNO Claims assures that PNO homeowners who do file a claim will be incapable of engaging (or unwilling to engage with) the Debtors in expensive contested proceedings over the allowance of the claim they filed.

### (iv)    The Difficulties Likely to be Encountered in the Management of a Class Action.

The Debtors' Plan incorporates general language permitting claim objections to be filed by the Debtors, or after the Effective Date of the Plan, by the proposed GUC Trustee.  Whether they plan to object to or settle claims, they will need to individually address in excess of 8,700 claims.

The numbers of PNO Claims are so large that individual contested claim proceedings would present this Court with severe case management challenges.  The Court would have to oversee various efforts by thousands of unrepresented PNO claimants to participate in allowance proceedings and refer the personal injury claims to a channeling trust.  As to medical monitoring, the Court would be called upon to somehow synchronize and reconcile ongoing proceedings involving thousands of pending PNO claimants with potentially thousands of emergent unrepresented PNO Claims that arise in the future.

Representative litigation, by contrast, achieves participation through appointed representative creditors and appointed counsel.  It avoids problems of coordination and reconciliation because class members are collectively represented, with the court's determinations binding each member of the class.  It similarly avoids the management difficulties associated with individual claims that emerge at various stages of the proceedings by affording all claimants with present representation authorized to advance the rights of the class.

The wisdom, indeed, necessity for class certification is apparent.  The Bar Date Notice was served on more than 46,000 persons.  At least as many as an estimated 8,700 non-duplicative PNO Claims have been filed to date.  History and practical experience teach that these claims can only be handled fairly and efficiently through a class.

Analysis and resolution of a potentially vast number of claims would demand huge commitment or time and resources by the Debtors, the GUC Trustee, their professionals, and the

Court, not to mention that of the claimants. Contrast this with the Court's and Debtors' ability to deal with appointed counsel having substantial practical experience in collectively resolving the claims of thousands of individuals who understand the strengths and weaknesses of the PNO Claims, who can retain experts and analyze class claims in bulk, and who can negotiate realistically for the claimants. Proposed Class Counsel have already negotiated a procedure whereby the claims of individual class members were submitted in this bankruptcy proceeding via spreadsheets. Proposed Class Counsel have the experience and expertise required to successfully manage a class action in this forum.

The interest of justice, the interest of claimants, and indeed the interest of the Debtors would be better served by avoiding the needless expense of the professional fees necessary to individually contest thousands of small claims, especially where expenses incurred by the GUC Trustee under the Plan would reduce the amount available to pay the PNO Claims. [Plan, §5.17(c)]. Absent class treatment, certain claimants would be faced with the choice of incurring wildly disproportionate attorneys fee expenses to contest any claim objection filed, or not contesting the claim objection and having their claim disallowed. The class claim process mitigates these problems by committing the limited resources available to unsecured claimants to the collective resolution and payment of meritorious claims.

The superior method for the fair and efficient adjudication of PNO Claims is certification of the above-described PNO sub-classes, appointment of appropriate representatives and Class Counsel, and adoption of a case management order that guides PNO Claims toward collective resolution.

## V.  **CONCLUSION**

The unique circumstances of unresolved PNO Claims warrant adoption of class procedures to insure the orderly resolution of those claims.  Plaintiffs respectfully request that this Court (i) approve and ratify the filing of class proofs of claim, (ii) certify a class and such sub-classes as the Court may deem advisable, (iii) appoint appropriate representatives of that class/sub-classes, and (iv) appoint Class Counsel to represent the interest of that class/subclasses.

Date:   August 30, 2022
Wilmington, DE

**SULLIVAN · HAZELTINE · ALLINSON** LLC

 /s/ William D. Sullivan         
William D. Sullivan (No. 2820)
Elihu E. Allinson, III (No. 3476)
919 North Market Street, Suite 420
Wilmington, DE  19801
Tel: (302) 428-8191
Fax: (302) 428-8195
Email: bsullivan@sha-llc.com
       zallinson@sha-llc.com

and

Mark Sparks, Esq.
**THE FERGUSON LAW FIRM, LLP**
350 Pine Street, Suite 1440
Beaumont, Texas 77701
Tel: 409+832-9700
Email: mark@thefergusonlawfirm.com

and

Richard L. Coffman, Esq.
Texas State Bar No. 04497460
**THE COFFMAN LAW FIRM**
Edison Plaza
350 Pine Street, Suite 700
Beaumont, TX 7770 I
Telephone: (409) 833-7700
Facsimile: (866) 835-8250
Email: rcoffman@coffmanlawfirm.com

and

Mitchell A. Toups, Esq.
Texas State Bar No. 20151600
**MITCHELL A. TOUPS, LTD.**
2615 Calder Ave., Suite 400
Beaumont, TX 77702
Telephone: (409) 832-1800
Facsimile: (409) 832-8577
Email: matoups@wgttlaw.com

and

Darren L. Brown, Esq.
**PROVOST UMPHREY LAW FIRM, L.L.P**.
350 Pine Street, Suite 1100
Beaumont, TX 77701
Tel: (409) 835-6000
Fax: (409) 813-8630
Email: dbrown@provostumphrey.com

and

Troy O'Brien, Esq.
**FARRAR & BALL LLP**
1117 Herkimer St
Houston, TX 77008
Tel: 713-221-8300
Fax: 713-221-8301
Email: troy@fbtrial.com

and

Brent Coon, Esq.
Lori K. Slocum, Esq.
**BRENT COON & ASSOCIATES**
215 Orleans
Beaumont, TX 77701
Telephone: 409-835-2666
Facsimile: 409-835-1912
brent@bcoonlaw.com
Lori.Slocum@bcoonlaw.com

*Counsel for Proposed Port Neches Plant
Explosion Class Claimants*